E-FILED
Monday, 09 April, 2018  01:09:57 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **Andrew Minik, Joel Valdez,** and **Blair Nelson,**<br><br>Plaintiffs,<br><br>vs.<br><br>**(1) Board of Trustees of the University of Illinois,** including Ramon Cepeda, Donald J. Edwards, Patrick J. Fitzgerald, Stuart C. King, Timothy Koritz, Edward L. McMillan, James D. Montgomery, Sr., Jill B. Smart, Trayshawn M.W. Mitchell, Karina Reyes, Edwin Robles, and Governor Bruce Rauner, **(2) Timothy Killeen**, President of the University of Illinois, in his official capacity, **(3) Robert J. Jones**, Vice-President of the University of Illinois and Chancellor for the University of Illinois Urbana-Champaign campus, **(4) Rony Die**, Assistant Dean of Students of the University of Illinois at Urbana-Champaign, in his official capacity; **(5) Tariq Khan,** Graduate Instructor in his official and individual capacity,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Andrew Minik ("Minik"), Joel Valdez ("Valdez"), and Blair Nelson ("Nelson") (collectively the "Students"), by and through counsel, Whitman H. Brisky and Noel W. Sterett of Mauck & Baker, LLC, and for their Complaint against Defendants, hereby states as follows:

### INTRODUCTION

1. The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. That marketplace depends on free, vigorous and non-violent debate among students and with faculty. That marketplace suffers when universities or

university officials engage in actions and enforce policies which restrict and chill the expressive and journalistic activities of students.

2. This case arises from the actions and policies of the University of Illinois at Urbana-Champaign (the "University") and the public officials employed by the University that have restricted, and continue to restrict, Plaintiffs' expressive rights.

3. This action is premised on the United States Constitution, and particularly the First, Fifth and Fourteenth Amendments thereto, and concerns the denial of the Plaintiffs' fundamental rights to free press, free speech, and due process.

4. The actions of the Defendants have deprived and will continue to deprive the Plaintiffs and other students of their paramount rights and guarantees under the Constitution.

5. Each and every act of Defendants alleged herein, except those actions of Tariq Khan acting as an individual and not as an employee and agent of the University, was committed by Defendants, each and every one of them, under the color of state law and authority and as agents of the University.

## JURISDICTION AND VENUE

6. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8. This Court has supplemental jurisdiction over the related state law claims because they are substantially related to the federal law claims. 28 U.S.C. § 1367.

9.  This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

### PLAINTIFFS

11. Plaintiff Andrew Minik ("Minik") is a senior at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Minik is attached hereto as **Exhibit A**.

12. Plaintiff Joel Valdez ("Valdez") is a freshman at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Valdez is attached hereto as **Exhibit B**. While Valdez is not currently enrolled in classes due to the reduction of his financial aid package, he remains an admitted student and intends to complete his education at the University.

13. Plaintiff Blair Nelson ("Nelson") is a freshman at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Nelson is attached hereto as **Exhibit C**.

14. The individual plaintiffs are students and campus journalists who seek to report on, engage with, discuss, and debate political, religious, social, cultural, and moral issues on and around the University campus in a non-violent way. They hold mainstream conservative views, support fiscal responsibility, free markets and limited government and reject violence, white supremacy and white nationalism.

15. Campus Reform, the organization for which they are correspondents, is a watch dog to the nation's higher education system exposing bias and abuse on college campuses, and reporting on the conduct and misconduct of university administrators, faculty, and students. It holds itself to rigorous journalism standards and strives to present each story with accuracy, objectivity, and public accountability.

## DEFENDANTS

16. Defendant Timothy Killeen ("Killeen") is, and was at all times relevant to this Complaint, the President of the University of Illinois, a public university organized and existing under the laws of the State of Illinois, and, with respect to the allegations herein, was acting as an agent of the University.

17. Defendant Robert J. Jones ("Jones") is, and was at all times relevant to this Complaint, the Chancellor for the University's Urbana campus and Vice-President of the three-campus system and, with respect to the allegations herein, was acting as an agent of the University.

18. Defendant Rony Die ("Die") is, and was at all times relevant to this Complaint, an Assistant Dean of Students of the University of Illinois at Urbana-Champaign and, with respect to the allegations herein, was acting as an agent of the University.

19. Upon information and belief, Defendant Tariq Khan ("Khan") is, and was at all times relevant to this Complaint, a Ph.D. student at the school and an employee and agent of the University. He was an instructor at the University during at least the 2016 – 2017 school year.

20. Khan is actively involved in public campus political activities and demonstrations.

21. Khan is affiliated with a number of extreme left-wing groups including the Black Rose Anarchist Federation, an "Antifa" group advocating revolution and expressly justifying political violence.

22. The University of Illinois at Urbana-Champaign is part of a three campus system and receives funding from the State of Illinois to operate.

## FACTUAL BACKGROUND

23. The University of Illinois is a public university with three campuses — Urbana-Champaign, Chicago, and Springfield— that is organized and exists under the laws of the State of Illinois and receives funding from the State in order to operate.

24. As an institution, the University is governed by its Board of Trustees which delegates certain authority and responsibilities to the individual Defendants in this matter.

25. The Students are all students at  the Urbana-Champaign campus.

26. The Students engage in constitutionally protected expressive and journalistic activities including reporting on and making photographic and video recordings of campus activities including, but not limited to, the activities of left-wing campus organizations and activists, and posting on social media.

### Plaintiffs Nelson and Valdez Are Assaulted by
### Defendant Tariq Khan on November 16, 2017.

27. On November 16, 2017, Valdez and Nelson, along with other students, went to observe and report on an "anti-Trump" rally organized by the Black Rose group, and to otherwise engage in public discourse in a non-violent way. Nelson and Valdez made no attempt to interfere with, shutdown, or silence the speakers at the Black Rose demonstration, including Khan.

28. During the course of the rally, Khan, who is or was an instructor or graduate assistant employed by the University as well as a Ph.D. student at the school, made the following remarks while using a bullhorn and speaking at the demonstration:

"F@#K Donald Trump. F@#k you guys [to Plaintiffs Valdez,
Nelson] . . . . I'm going to go tear down one of your flyers right
now."

29. In response to Khan's threat, Valdez responded:

"No one is scared of you 50 year old man. Don't you have kids to look after."

30. Khan then commenced into a verbal tirade falsely accusing Valdez and Nelson of
"threatening his kids." Khan also lunged at Nelson, who was filming the incident.[1]

31. Khan proceeded to threaten and assault Valdez and violently grabbed Valdez's phone
from his hand. Neither Valdez nor Nelson made any attempt to strike or assault Khan in any
way even when Khan violently approached Valdez until he was in physical contact with
Valdez, chest to chest, with Khan screaming in Valdez's face.

32. The altercation concluded after Khan shattered Valdez's phone on the ground and left
the scene.

33. The police were called and arrived after Khan had fled the scene. Upon information and
belief, he later turned himself in and was arrested for criminal damage to property and, upon
information and belief, his criminal matter is still pending.

34. Minik was not present during the incident but reported on it on November 18, 2017.
Minik's article can be found at www.campusreform.org/?ID=10171 and is also attached as
**Exhibit D.**

**The University's Unconstitutional Disciplinary Actions against the Students.**

35. Upon information and belief, the University has not taken any disciplinary action
whatsoever against Khan, the aggressor in the incident, but instead Die, acting on behalf of the

---

[1] A video of the altercation can be viewed at https://www.campusreform.org/?ID=10171

University, conspired with Khan to impose discipline on the victims of his assault and upon Minik for accurately reporting on the assault and Khan's other activities on campus.

36. The University, acting by and through Die, has taken disciplinary actions, which are still in effect, against each of the Students, even Minik who was not even at the November 16, 2017 rally and was guilty only of writing, accurately, about it.

37. On December 12, 2017, the University, with no notice or hearing, issued each of the Students restraining orders. **Exhibit E, No Contact Orders**, which effectively ban the Students from observing, reporting on or videoing Khan or his activities on campus.  Nor could the Students, in the exercise of proper journalistic ethics, even contact Khan for his reaction and comment prior to publishing stories about him to assure balanced reporting. Upon information and belief, the video of the incident showing Khan to be the aggressor and Valdez and Nelson to be innocent, was known to Die *before* Die issued the restraining orders rendering the decision to impose the orders, at a minimum, arbitrary and capricious.

38. On December 14, 2017, Minik met with Die to discuss the restraining order. At that meeting, Die informed Minik that the restraining order against him was requested by Khan as a result of the Campus Reform article Minik had written.  Minik was instructed that the restraining order was a "probationary measure" to ensure that he would not contact Khan. In addition, Die recommended that if Minik and Khan happened to be at the same public event, the second to arrive should leave. **Exhibit F, Dec. 14 Email.**  As set forth below, however, Die later told Nelson that the No Contact Orders did not apply to "public places, at all"

39. Die also told that Minik that if he wanted "the situation to improve" he should stop writing about Khan, *id.*, apparently threatening Minik that, if Minik did not stop writing about Khan, Die would continue to impose discipline upon Minik.

40. Finally, Die threatened Minik that a violation of the restraining order could result in expulsion from the University. *Id.*

41. On December 15, 2017, Minik followed up with Die via email concerning claims made by Khan and his wife two days earlier on December 13, 2017. Khan, who was not present at the time, claimed that Minik and a friend entered a building generally open to the public to harass Khan's wife with whom Minik was not then acquainted, and would not have recognized and who may or may not have ever been present in the building. Minik provided Die an audio recording demonstrating that Khan and/or his wife with Khan's participation had fabricated the claims and explained that they were attending a 3D printing lab presentation in an area of the building remote from the event Khan's wife was supposedly attending and had no idea what other events were scheduled or who would be in attendance. **Exhibit G, Dec. 15 Email.**

42. Because of the restraining order, the building director ordered Minik to leave the premises and he complied. As a result, Minik was prevented from attending the presentation open to other University students not subjected to discipline.

43. On January 16, 2018, Die contacted Minik by email (**Exh. H**) concerning a Facebook post in which Minik sarcastically "tagged" Khan on a meme of Donald Trump stating "Get him out of here . . . beat the shit out of him . . . I'll pay the legal fees." Defendant Die subsequently communicated with Minik that he understood it was a joke and no discipline was appropriate against Minik. Nevertheless, Die's email to Minik was calculated to inform Minik and the other Students that they, and even their social media posts, were being scrutinized far more than would be possible for all active students at the University in an attempt to further chill the Students' expressive and journalistic activities.

44. On February 26, 2018, Nelson received an email from the University alleging that he violated the restraining order and sections 1-302.0.1 and 1-302.g of the Student Code which prohibit, in relevant part:

> "failing to comply with reasonable directions of a member or agent of the University . . ." (Section (g))

> "(1) failure to obey the directive of a disciplinary body or University officials in performance of their duties (Section (o)).
> **Exh. I, Feb. 26 Nelson Email.**

45. These allegations stemmed from a protest Nelson attended at the State Farm Center before and during a basketball game against Purdue University. While peacefully filming the public protest for Campus Reform, supporters of Khan approached Blair and accused him of violating the restraining order simply because he was in the same public space.

46. In a meeting between Die and Nelson, Die informed Nelson that the no contact order did not apply to public places and that he would not proceed further with discipline, but also did not rescind the February 26 email or apologize to Nelson for issuing the same without cause. As with the January 2018 Die email to Minik it served as a further warning and threat against the Students chilling their expressive and journalistic activities.

47. Nor did Die insure that Khan and his supporters were aware of the limitations of the no contact order because on February 27, 2018, Nelson attended and reported on another protest in a public place by a graduate teachers union of which Khan is a member. Once again, Khan supporters approached Nelson and accused him of violating the restraining order.

48. Nelson has never had any contact with Khan since the initial altercation.

49. The restraining orders issued to the Students cannot be appealed or contested, nor do they  permit a hearing or an opportunity to be heard before going into effect.

50. Upon information and belief, the University, and defendants Killeen and Jones, do not provide any criteria to its officials to use when deciding whether to issue a restraining order.

51. The University, and defendants Killeen and Jones, grant unbridled discretion its officials to determine whether to issue a restraining order.

52. The restraining orders in this case were not used as a shield to protect student victims but as a sword to chill and suppress the Students' journalistic and expressive activities on campus.

53. The restraining order, and Die's subsequent actions in beginning disciplinary actions in cases that were clearly unjustified and then not proceeding with them, and in issuing contradictory oral interpretations thereof, cause the no contact orders to be vague and ambiguous and could trap the Students into arguably violating the written orders when relying upon the contradictory oral interpretations of Die.

54. On February 26, 2018, Valdez received an email from Die in which he, on behalf of the University and with no hearing or opportunity to be heard, confront witnesses or present evidence or arguments, determined that Valdez had violated the student code of conduct. Die's finding was that three months earlier, on November 21, 2017, Valdez "liked" a post from a friend of Valdez residing in Chicago who commented that he could "beat his ass for you bro [Emoji with smiley face puffing air]" — a reference to Khan. Valdez replied sarcastically with a Facebook heart icon stating "Do it ASAP." **Exh. J, Feb. 26 Valdez Email.** The post and Valdez's "like" would not, in the ordinary course, be viewed by anyone other than "Facebook friends" of Valdez and his Chicago friend and could only be found by Khan or Die if they had intentionally been looking for a reason to discipline Valdez.

55. Valdez's comment was constitutionally protected speech and made prior to the restraining order.

56. Die, acting for the University, nevertheless, found that Valdez violated section 1-302.r of the Student Code which prohibits "[i]nciting, aiding, or encouraging others to engage in a behavior which violates the Student Code." Since Valdez's friend was not a student at the University he could not engage in conduct which violates a code that does not apply to him.

57. Die, acting for the University, issued Valdez a "censure" and required him to write a 1,000 word paper reflecting on his actions and directing that its content, rather than containing a true reflection of Valdez's views, include statements that, in effect, falsely admit his alleged misconduct and prohibit statements that justify his conduct or its constitutionally protected nature. Furthermore, the instructions, much as the question "When did you stop beating your wife", imply that any answer must admit that there were "negative outcomes" associated with the conduct even though, under the circumstances, there were none.

58. The essay assignment under threat of disciplinary action was an unconstitutional attempt to compel Valdez's written communication of things with which he did not agree and required false admissions of improper conduct which could be used against him by Die and the University and could potentially include a false admission by Valdez that might be used against him in a criminal prosecution even though his activities were clearly constitutionally protected.

59. Valdez was subjected to further discipline for failing to comply with Dies' unconstitutional order as shown on **Exhibit K, March 19 Email,** attached hereto, which order is still in effect, and remains subject to further discipline.

60. On April 04, 2018, Nelson was also notified via e-mail from Defendant Die that he too was now subject to a disciplinary proceeding based on false allegations the Office for Student

Conflict Resolution had received falsely claiming that he had violated the restraining order at multiple public events and that if proven, the University would subject him to further discipline under Student Code/1-302.o.1 and Student Code/1-302.g. This e-mail is contrary to Die's statement to Nelson that the restraining order did not apply to public events. **Exhibit L, April 4 Email**.

61. Nelson's disciplinary hearing is scheduled for Friday, April 13, 2018, at 1:00 p.m. in Room 344 of the Student Services Building, 610 E. John St., Champaign, IL.

62. Killeen and Jones knew or should have known of the unconstitutionally vague and overbroad nature of the policies, codes and practices of the University as set forth above and nevertheless continued them in effect and permitted Die and other agents of the University to enforce them.

63. Upon information and belief, Killeen and Jones knew or had reason to know, that Die was unconstitutionally enforcing the University's policies, codes, and practices as set forth above.

### Specific Violations of the Students' Constitutional Rights.

64. The University, through Die, has taken disciplinary actions against the Students, which are still in effect and ongoing, simply because they engaged in protected journalistic and speech activities, in Valdez's case, even though he was the victim of Khan's assault and in Minik's case simply because he reported on the incident.

65. Furthermore, Minik has been issued a restraining order even though he was not even present during the altercation with Khan. Minik's only role was to write a truthful article reporting on the altercation. Yet, at the behest of Khan, the University, through Die, has disciplined Minik restricting and chilling his journalistic and speech activities.

66. The University has prohibited Minik from engaging Khan in any form of discourse in perpetuity, or at least so long as Minik is a student. Even more, Minik was removed from the Urbana Independent Media Center and prohibited from attending a talk on 3D printing on account of the restraining order. Minik has also been cited by Die for engaging in protected speech on social media. The University has even gone as far as to threaten Minik that, "if he wants this to go away" he should no longer write about Khan and leave any public place at which Khan is present.

67. Minik's journalistic and freedom of speech activities have been chilled and his ability to engage in campus activity restricted and chilled by force of the University's baseless restraining order.

68. Valdez and Nelson have also had their journalistic and speech activities restricted simply because they sought to report on, video and engage in public discourse at a public rally. Although Khan was the aggressor, the University has retaliated against Valdez and Nelson with unfounded restraining orders.

69. As a result, Nelson, as part of what appears to be a conspiracy by Die and Khan to harass the Students and chill their First Amendment rights, has been accused of violating his restraining order simply for attending public protests to report on and document the events, and Valdez has been sanctioned for protected activity on social media.

70. The Students cannot speak freely, report on or even attend certain events, or walk about the campus without fear of potentially violating their respective restraining orders.

71. The Students desire to engage in peaceful journalistic and expressive activities on campus.

72. The Students have been targeted with these restraining orders and Khan given a pass based on their respective viewpoints and political views.

73. As a result of the restraining orders, the Students are subject to a range of ongoing disciplinary actions, which may result in expulsion, which chills their engagement in protected journalistic and expressive activities.

74. The restraining orders are in effect a "double secret probation" kind of speech code exercised at Dean Die's discretion, involving multiple and contradictory interpretations, leaving them no ability to effectively determine the conduct for which they could be disciplined or to conform their conduct to the restraining orders.

75. The provisions of the Student Code they are accused of violating, **Exhibit M**, are so vague and overbroad as to be unconstitutional.

76. The Students face constant fear that their protected journalistic and expressive activities will expose them to disciplinary action, up to and including dismissal and expulsion, if they fail to comply with the University's ongoing disciplinary actions and procedures and/or fail to limit their speech and journalistic activities the Defendants consider appropriate.

## ALLEGATIONS OF LAW

77. At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Illinois—including Khan to the extent he was acting as an employee or agent of the University.

78. Defendants knew or should have known that by prohibiting constitutionally protected journalistic and expressive activities of students, including the Plaintiffs, the University and Die were and are violating the Plaintiffs' constitutional rights.

79. The Plaintiffs are suffering irreparable harm as a result of the University's unconstitutional disciplinary actions and restrictions on protected speech.

80. The Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

81. Unless the conduct of Defendants is enjoined, the Plaintiffs will continue to suffer irreparable injury by being deprived of the First Amendment rights to freedom of expression and Freedom of the Press.

82. Unless the discipline imposed on Valdez is reversed, he may be forced into either potentially incriminating himself (by effectively but incorrectly admitting, under compulsion, that his social media activities were not constitutionally protected) or being further disciplined by the University, all in violation of the Fifth Amendment to the United States Constitution.

83. The restraining orders deprived Students of their expressive and journalistic liberty and liberty of movement on campus, their properly right to an equal education at the University and, if further discipline is imposed, potentially their properly right in completing their education.

84. The provisions of the Student Code, under which Students are being disciplined, (**Exhibit M**), are so vague and overbroad that they are unconstitutional on their face.

**FIRST CLAIM**
**Violation of Plaintiffs' First Amendment Right**
**to Freedom of the Press**
**(42 U.S.C. § 1983)**

85.  The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-84 of this Complaint.

86. The First Amendment to the United States Constitution protects the freedom of the press.

87. The Students' freedom of the press activities include writing on, reporting on, or filming events of public interest around campus.

88. The University's actions have chilled and restricted the Students' ability to freely exercise their freedom of the press rights.  As Die's statements to Minik, and Die's other actions against Students make clear, Dies was motivated by an intention to chill or prevent Students from reporting on Khan's campus activities.

89. With respect to Minik, the University has placed a restraining order on him simply for reporting and publishing an article about Khan's assault on his peers. The University further prohibited Minik from contacting Khan for follow-up stories and recommended that Minik not write about Khan at all if he wanted the disciplinary process to "go away."

90. Likewise, the University has placed restraining orders on Valdez and Nelson who, as campus journalists, merely attended a political rally to film and report on the event and were assaulted by Khan during the same.

91. Even more, Nelson must now confront allegations that he has violated his restraining order simply by attending and filming various other public protests around campus.

92. As campus journalists, the Students' ability to freely report, write, or film public campus events has been chilled and restricted.

93. The Students are constantly fearful of engaging in press activities lest they violate their restraining orders or be subject to other disciplinary actions.

94.  Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their First Amendment right to freedom of press and a temporary and permanent injunction against Defendants' actions. Additionally, the Students are entitled to damages, compensatory damages, exemplary damages, and the reasonable costs of this lawsuit,

including their reasonable attorneys' fees.

## SECOND CLAIM
### Violation of Plaintiffs' First Amendment Right
### to Freedom of Speech
### (42 U.S.C. § 1983)

95.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–84 of this Complaint.

96.    Speech is entitled to comprehensive protection under the First Amendment.

97.    The First Amendment rights to free speech and press extend to campuses of state colleges.

98.    The Students' activities in the open, outdoor areas of the campus constitute expression that the First Amendment protects.

99.    The First Amendment prohibits the government from taking any retaliatory actions against persons because they exercised their constitutional rights.

100.  By imposing restraining orders on the Students, and by arranging for the Students to be investigated for alleged violations of the Student Code, Defendants by policy and practice have retaliated against the Students because of their free expression and deprived them of their ability to express their views freely on campus.

101.  Defendants have knowingly and intentionally harassed and punished the Students for persisting in their protected expression.

102.  Defendants' actions to impede, harass, and punish the Students for exercise of their free speech rights constitute adverse actions that would chill a student of ordinary firmness from exercising his free speech rights in the future.

103.  Defendants' actions to impede the Students' activities and to harass and punish them for those activities are substantially motivated as a response to the Students' exercise of their

First Amendment rights.

104. Defendants have unbridled discretion in determining whether and how to impose restraining orders on students.

105. Defendants' took actions to impede the Students' activities and are taking the actions to harass and punish the Students for those activities as a function of the unbridled discretion Die as a University official has with respect to restraining orders.

106. A public college's ability to restrict speech—particularly student speech—in a public forum is limited and does not include any of the Students' activities as set for the above.

107. The First Amendment's Free Speech Clause prohibits censorship of political expression.

108. These grants of unbridled discretion to Defendant officials violate the First Amendment because they create a system in which speech is restricted without any standards, thus giving students no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

109. Defendants' actions chill, deter, and restrict the Students from freely engaging in expressive conduct.

110. Defendants' actions violate the Students' right to free speech as guaranteed by the First Amendment to the United States Constitution.

111. Because of Defendants' actions, the Students have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

112. Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and a temporary and

permanent injunction against Defendants' and actions. Additionally, the Students are entitled to damages, compensatory damages, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### THIRD CLAIM
### Violation of Plaintiffs' Fourteenth Amendment Right
### to Due Process of Law
### (42 U.S.C. § 1983)

113.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–84 of this Complaint, as if set forth fully herein.

114.    The Fourteenth Amendment to the United States Constitution guarantees the Students the right to due process of law.

115.    The University has deprived the Students of their journalistic and expressive liberties without notice or an opportunity to be heard.

116.    The Students cannot contest or appeal the imposition of the restraining orders and are bound by them at the discretion of University officials, including Die.

116A.    Defendants Killen and Jones continue to impose and direct enforcement of the facially invalid provisions of the Student Code on **Exhibit M** against all students of the University.

117.    The government may not regulate speech or journalism based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

118.    Because of Defendants' actions, the Students have suffered, and continue to suffer irreparable harm. They are entitled to an award of monetary damages and equitable relief.

119.    Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their Fourteenth Amendment right to due process of law

and a temporary and permanent injunction against Defendants' policy and actions. Additionally, the Students are entitled to actual and exemplary damages and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FOURTH CLAIM
### Defendant Tariq Khan's Assault and Damage to VALDEZ'S PROPERTY

120.     The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–84 of this Complaint, as if set forth fully herein.

121.     Defendant Tariq Khan had the intent to cause a harmful or offensive contact with Plaintiff Valdez.

122.     Defendant Tariq Khan actually made unauthorized and offensive physical contact with Plaintiff Valdez that was harmful.

123.     Plaintiff Valdez suffered damage to his cellphone which he was holding and which Defendant Khan took without permission and destroyed.

124.     Defendant Tariq Khan's actions caused the damage.

125.     Valdez in entitled to an award of damages against Khan for damages including economic loss for the destruction of the cell phone and exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

(A)     A declaratory judgment, that the provisions of the Student Code on **Exhibit M** are facially invalid and that Defendants' actions violate the Students' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution;

(B)     A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the provisions of the Student Code on **Exhibit M** against Students and the restraining orders on the Students, or taking any further disciplinary action against them for constitutionally protected activities;

(C)     An award of all damages proximately caused by Defendants' violation of the Students' First and Fourteenth Amendment rights, including exemplary damages;

(D)     An award of Damages, including exemplary damages, to Plaintiff Valdez against Defendant Tariq Khan for the assault, battery, and unlawful destruction of property;

(E)     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(F)     All other further relief to which Plaintiffs may be entitled.

DATED this 9th day of April 2018.

s/     Noel W. Sterett
Noel W. Sterett, IL ARDC No. 6292008
Whitman H. Brisky
Mauck & Baker, LLC
One N. LaSalle Street, Suite 600
Chicago, IL 60602
(312) 726-1243
(866) 619-8661 Fax
nsterett@mauckbaker.com
wbrisky@mauckbaker.com

*Attorneys for Plaintiffs*