E-FILED
Friday, 08 June, 2018  12:09:53 PM
Clerk, U.S. District Court, ILCD



# STUDENT CODE

## 2017-2018

University of Illinois at Urbana-Champaign



**UNIVERSITY EXHIBIT 1**

# PREFACE

This booklet contains Article 1 (Student Rights and Responsibilities) of the *Student Code*. Because Article 1 provisions are of particular importance to students, the University has authorized the separate printing and distribution of this booklet to all incoming students.

The full *Student Code*, which includes Article 1, Article 2 (General Policies and Regulations), and Article 3 (Academic Policies and Regulations), is available in print and online at studentcode.illinois.edu. The specific changes that were made from the 2015-2016 publication to this year's issue can also be found on the website.

Unless otherwise noted, the rules stated in this *Student Code* apply to all undergraduate, graduate, and professional students enrolled at the University of Illinois at Urbana-Champaign.

The symbol § means section.

iii

# CAMPUS INTEGRITY STATEMENT

The University of Illinois at Urbana-Champaign expects its faculty, staff, students and guests to conduct themselves in accordance with the community values of civility, respect and honesty; to maintain the highest level of integrity and exercise critical judgment in all dealings, decisions and encounters; and to maintain and strengthen the public's trust and confidence in our institution.

# CONTENTS

## ARTICLE I—STUDENT RIGHTS AND RESPONSIBILITIES

### PART 1. STUDENT RIGHTS
1-101  Preamble ................................................................................ 1
1-102  In the Classroom ................................................................. 1
1-103  Campus Expression ............................................................ 2
1-104  Privacy ................................................................................. 2
1-105  Student Records .................................................................. 3
1-106  Student Affairs .................................................................... 3
1-107  Religious Beliefs, Observances, and Practices ............... 4
1-108  Nondiscrimination Policy .................................................. 4
1-109  Statement on Consenting Sexual Relationships ............. 5
1-110  Policy for the Provision of Reasonable Accommodations for Students with Disabilities ...................................................... 5
1-111  Sexual Misconduct Policy .................................................. 6

### PART 2. GENERAL RESPONSIBILITIES OF STUDENTS
1-201  Responsibilities of Students ............................................. 8

### PART 3. STUDENT DISCIPLINE
1-301  Basis for Discipline—Source and Jurisdiction ............... 8
1-302  Rules of Conduct ................................................................ 10
1-303  Falsification of Documents ............................................... 12
1-304  Identification Cards ........................................................... 12
1-305  Policy on Drugs .................................................................. 13
1-306  Alcoholic Beverages—Preamble ...................................... 14
1-307  Alcoholic Beverages—General Rules .............................. 14
1-308  Alcoholic Beverages—Special Rules Relating to University Property ...... 15
1-309  Possession or Storage of Weapons .................................. 15
1-310  Unauthorized Use, Abuse, or Interference with Fire Protection Equipment, Building Security Systems, Security or Fire Personnel, or Warning Devices ............................... 16
1-311  Certain Consequences of Disciplinary Action ............... 16

### PART 4. ACADEMIC INTEGRITY POLICY AND PROCEDURE
1-401  Policy Statement; Application; Definitions ..................... 17
1-402  Academic Integrity Infractions ........................................ 17
1-403  Procedures ........................................................................... 19
1-404  Sanctions ............................................................................. 23
1-405  Reporting and Record Keeping ........................................ 23
1-406  Continuing Jurisdiction of the Senate Committee on Student Discipline ............................................................ 24

### PART 5. CLASS ATTENDANCE
1-501  All Students ......................................................................... 24
1-502  Student Athletes ................................................................. 26

# ARTICLE I—STUDENT RIGHTS AND RESPONSIBILITIES

## PART I. STUDENT RIGHTS

### § I-101  Preamble

(a)  A student at the University of Illinois at the Urbana-Champaign campus is a member of a University community of which all members have at least the rights and responsibilities common to all citizens, free from institutional censorship; affiliation with the University as a student does not diminish the rights or responsibilities held by a student or any other community member as a citizen of larger communities of the state, the nation, and the world.

(b)  Any rules or regulations considered necessary to govern the interaction of the members of the University community are intended to reflect values that community members must share in common if the purpose of the community to advance education and to enhance the educational development of students is to be fulfilled. These values include the freedom to learn, free and open expression within limits that do not interfere with the rights of others, free and disinterested inquiry, intellectual honesty, sustained and independent search for truth, the exercise of critical judgment, respect for the dignity of others, and personal and institutional openness to constructive change. The following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large.

### § I-102  In the Classroom

The instructor, in the classroom and in conference, should encourage free discussion, inquiry, and expression. Student performance should not be evaluated on opinions or conduct in matters unrelated to academic standards.

(a)  Students should be free to take reasoned exception to the data or views offered in any course of study and to reserve judgment about matters of opinion, but they are responsible for learning the content of any course of study for which they are enrolled.

(b)  Students should have protection through orderly procedures against prejudiced or capricious academic evaluation. At the same time, they are responsible for maintaining standards of academic performance established for each course in which they are enrolled.

(c)  Information about student views, beliefs, and political associations that instructors acquire in the course of their work as instructors, advisers, and counselors should be considered confidential. Protection against improper disclosure is a serious professional obligation. Judgments of ability and character may be provided under appropriate circumstances, normally with the knowledge or consent of the student.

(d)  The instructor is in charge of the orderly conduct of the class and may exclude a student or an auditor who does not comply with a reasonable request in this regard. If the student is registered for the course and if the disruption is repeated or so egregious as to violate other conduct regulations, (usually § 1-302(f)), the instructor, after consultation with the department head or designee and the Executive Director of the Senate Committee on

1

Student Discipline, may exclude the student from the class until such time as the disciplinary matter has been resolved. If the disciplinary matter is resolved in a manner that permits the student to return to class, the instructor, in consultation with the department head and the Executive Director of the Senate Committee on Student Discipline or designee, shall decide whether and to what extent the student will be permitted to make up course work missed while excluded from class.

(e) Should a student feel that his or her rights as a student have been violated, the student may discuss the matter, to the extent possible, with his or her instructor in the relevant course. If a resolution cannot be reached, the student may contact the head of the department in which the course is being offered. If further assistance is needed, the student may contact the dean's office of the college offering the course. Assistance navigating the process is available through the Student Assistance Center in the Office of the Dean of Students at (217) 333-0050 or helpdean@illinois.edu Monday-Friday between the hours of 8:30 a.m. and 5:00 p.m.

§ I-103 Campus Expression
(a) Discussion and expression of all views is permitted within the University subject only to requirements for the maintenance of order. Support of any cause by orderly means that are not in violation of law and that do not disrupt the operation of the University nor interfere with the rights of others is permitted.

(b) Members and organizations in the University community may invite and hear any persons of their own choosing, subject only to reasonable requirements on time, place, and manner for use of University facilities.

(c) The campus press and media are to be free of censorship. The editors and managers shall not be arbitrarily suspended because of student, faculty, administration, alumni, or community disapproval of editorial policy or content.

(d) The right of peaceful protest is recognized within the University community. The University retains the right to assure the safety of individuals, the protection of property, and the continuity of the educational process.

(e) Lawful picketing and other forms of peaceful protest are permitted on University premises except that lawful picketing is permitted only out-of-doors.

§ I-104 Privacy
(a) Members of the University community have the same rights of privacy as other citizens and surrender none of those rights by becoming members of the academic community. These rights of privacy extend to residence hall living. Nothing in University regulations or contracts shall give University officials authority to consent to a search by police or other government officials of offices assigned or living quarters leased to individuals except in response to a properly executed search warrant or search incident to an arrest.

(b) When the University seeks access to an office assigned or living quarters leased to an individual to determine compliance with provisions of applicable multiple dwelling unit laws, ordinances, and regulations, or for improvement or repairs, the occupant shall be notified of such action not less than twenty-four hours in advance. There may be entry without notice in emergencies where imminent danger to life, safety, health, or property is reasonably feared and for custodial service.

(c) The University may not conduct or permit a search of an office assigned or living quarters leased to an individual except in response to a properly executed search warrant or search incident to an arrest.

(d) The University shall not regulate the social life of students or their organizations except as such regulations may apply to use of University premises, facilities, or premises approved for student residences. Additional regulations for living units may be made by a democratically constituted student government for the unit.

(e) The University shall not regulate the hours individuals may keep.

§ I-105 Student Records
(a) The University and its subdivisions should have a carefully considered policy as to the information which should be part of a student's permanent educational record and as to the conditions of its disclosure. To minimize the risk of improper disclosure, academic and disciplinary records are normally separate. (See, however, § 3-704(a).) Access to the student's own records and files is guaranteed to each individual and is subject only to reasonable regulation as to time, place, and supervision.

(b) Transcripts of academic records should contain only information about academic status and conditions relating to the student's eligibility for continuing registration on this campus. Information from disciplinary or counseling files should not be available to unauthorized persons on campus, or to any person off campus without the express consent of the subject involved, except in cases where the student is not competent to grant such consent. In such cases, information will be made available only where the safety of persons or property is involved. No records should be kept which reflect the political activities or beliefs of students.

(c) Provisions should also be made for periodic routine destruction of noncurrent disciplinary records. Administrative staff and faculty members should respect confidential information about students which they acquire in the course of their work.

(d) The records and files of individuals no longer at the University shall continue to be subject to the provisions of this document.

§ I-106 Student Affairs
In student affairs, certain standards must be maintained if the freedom of students is to be preserved.
(a) Freedom of Association
Students bring to the campus a variety of interests previously acquired and develop many new interests as members of the academic community. They should be free to organize and join associations to promote their common interests.
(1) The membership, policies, and actions of a Registered Organization and Registered Student Organization usually will be determined by the vote of only those persons who hold bona fide membership in the college or University community.
(2) Affiliation with an extramural organization should not of itself disqualify a student organization from institutional recognition.
(3) Registered Organizations and Registered Student Organizations are not required to have campus advisors. However, if they chose to have one, each organization should be free to choose its own adviser and institutional recognition should not be withheld or withdrawn solely because of the inability of a student organization to secure an adviser. Campus advisers may advise organizations in the exercise of responsibility, but they should not have the authority to control the policy of such organizations.
(4) The name(s) and address(es) of an agent or agents, and /or officers of a Registered Organization and Registered Student Organization, are required as a condition of registration.
(5) Registered Organizations, including those affiliated with an extramural organization, shall not discriminate against a member or prospective member on the basis of race, color, religion, sex, sexual orientation including gender identity, national origin, ancestry, age, marital status, disability, unfavorable discharge from the military, or status as a disabled veteran or veteran of the Vietnam era, except as specifically exempted by law.

(b) Freedom of Inquiry and Expression
(1) Students, Registered Organizations and Registered Student Organizations should be free to examine and to discuss all questions of interest to them, and to express opinions publicly and privately. They should always be free to support causes by orderly means which do not disrupt the regular and essential operation of the institution. At the same time, it should be made clear to the academic and the larger community that in their public expressions or demonstrations, students or student

organizations speak only for themselves.

(2) Students should be allowed to invite and hear any person of their own choosing. Those routine procedures required by an institution before a guest speaker is invited to appear on campus should be designed only to ensure that there is orderly scheduling of facilities, adequate financial underwriting for costs of services to be provided by the University, adequate preparation for the event, and that the occasion is conducted in a manner appropriate to an academic community. The University's control of campus facilities should not be used as a device of censorship. It should be made clear to the academic and larger community that sponsorship of guest speakers does not necessarily imply approval or endorsement of the views expressed either by the sponsoring group or the institution.

§ I-107  Religious Beliefs, Observances, and Practices

(a) Illinois law requires the University to reasonably accommodate its students' religious beliefs, observances, and practices in regard to admissions, class attendance, and the scheduling of examinations and work requirements. (See § I-501; Article 3, Part 2.)

(b) Any student may appeal in writing an instructor's decision on a request based on religious beliefs, observances, and practices to the dean of the academic unit offering the course. Before taking action, the dean or director should request that the instructor explain his or her decision in writing.

§ I-108  Nondiscrimination Policy

(a) The commitment of the University to the most fundamental principles of academic freedom, equality of opportunity, and human dignity requires that decisions involving students and employees be based on individual merit and be free from invidious discrimination in all its forms.

(b) It is the policy of the University not to engage in discrimination or harassment against any person because of race, color, religion, sex, pregnancy, disability, national origin, citizenship status, ancestry, age, order of protection status, genetic information, marital status, sexual orientation including gender identity, arrest record status, unfavorable discharge from the military, or status as a protected veteran and to comply with all federal and state nondiscrimination, equal opportunity, and affirmative action laws, orders, and regulations. This nondiscrimination policy applies to admissions, employment, and access to and treatment in the University programs and activities. Complaints of invidious discrimination prohibited by University policy are to be resolved within existing University procedures.

(c) For additional information on the equal opportunity, affirmative action, and harassment policies of the University, please contact the Director of The Office of Diversity, Equity, and Access (ODEA) at:

1004 South Fourth Street
Champaign, IL 61820
(217) 333-0885
diversity@illinois.edu
diversity.illinois.edu

(d) For additional information on Title IX, ADA, or 504, please contact the Title IX Coordinator at the Title IX and Disability Office at:

703 South Wright Street, Third Floor
Champaign, IL 61820
(844) 616-7978
titleixcoordinator@illinois.edu
wecare.illinois.edu/titleix

§ I-109  Statement on Consenting Sexual Relationships

University guidelines on responsible professional conduct state that individuals assessing the work of others should base their assessments on appropriate professional criteria. Due to the inherent conflicts of interest, no individual should initiate or participate in institutional or educational decisions involving a direct benefit or penalty to a person with whom that individual has or has had a sexual relationship. Where supervisory or student teacher relationships exist between husband and wife, members of a couple, whether married or not, it is the responsibility of the teacher or supervisor to alert his/her supervisor so that appropriate arrangements can be made.

§ I-110  Policy for the Provision of Reasonable Accommodations for Students with Disabilities

(a) The University provides reasonable accommodations to students with disabilities admitted to study at the University in accordance with the following procedures. As the term is used herein, "reasonable accommodations" refer to those academic adjustments, services, and aids provided to otherwise qualified students with disabilities to facilitate equal access to University programs and activities. The Division of Disability Resources and Educational Services (DRES) or the Center for Wounded Veterans in Higher Education (CWVHE), as applicable, coordinates the provision of these reasonable accommodations. DRES and CWVHE will consult as necessary to facilitate the processing of requests for reasonable accommodations.

(b) In general, students are responsible for informing the University of their status as a person with a disability and their need for reasonable accommodations. Students with disabilities who are not veterans should direct their requests for reasonable accommodations to the DRES Student Services Office by phone at (217) 333-4603, or disability@illinois.edu. Student with disabilities who are veterans of the U.S. armed forces should direct their requests for reasonable accommodations to the CWVHE at (217) 300-3515 or cwvhe@ahs.illinois.edu. The applicable unit will determine what is a reasonable accommodation based upon an individual student's needs. For academic accommodations, DRES or CWVHE, as applicable, will consult with the faculty member for whose course the accommodations are sought. The University may decline requests for accommodations that impose an undue hardship on the campus or that require the fundamental alteration of academic standards, programs, or coursework.

(c) In order to be considered for reasonable accommodations, the student must meet the following requirements:

(1) The student must submit a completed Application for Services to DRES or CWVHE, as applicable. Students may obtain applications from:

DRES: in person at 908 West Nevada Street, Urbana, IL, or online at disability@illinois.edu.

CWVHE: in person at the Rehabilitation-Education Center at 1207 South Oak Street, Champaign IL, or online at woundedveterans.illinois.edu/.

(2) The student must have a disability and provide documentation of a disability in accordance with the applicable documentation criteria.

(d) To facilitate timely review of a student's request for reasonable accommodation, the student or prospective student who is requesting accommodations to access University programs and activities must submit a completed Application for Services to DRES or CWVHE, as applicable, as soon as possible. Some accommodations, such as interpreter, real-time captioning services, or the conversion of print-based educational materials to alternative accessible formats can require substantial lead time to schedule or prepare. Therefore, it is recommended that the student return the DRES or CWVHE Application for Services and discuss accommodation needs with DRES or CWVHE personnel at least six weeks before the date on which the student may first require the accommodations.

(e) A student may appeal to the Director of DRES or CWVHE, as applicable:

(1) an accommodation recommendation by DRES or CWVHE if the student deems such recommendation to be unsatisfactory;

(2) implementation of a DRES or CWVHE accommodation recommendation if the student deems such implementation ineffective. A student may appeal a determination of the

DRES Director or the CWVHE Director to the Dean of the College of Applied Health Sciences.

(f) A student may also direct questions or concerns regarding accommodation decisions by DRES or CWHVE or other campus units to the Office of Diversity, Equity, and Access (ODEA), which is located at 1004 South Fourth Street, Champaign, IL or by phone at (217) 333-0885.

§ 1-111 Sexual Misconduct Policy

(a) The University of Illinois at Urbana-Champaign ("University") is committed to providing a safe and welcoming campus environment free from discrimination based on sex, which includes sexual assault, sexual exploitation, stalking, sexual harassment, dating violence, and domestic violence (collectively referred to as sexual misconduct). The University prohibits and will not tolerate sexual misconduct because such behavior violates the University's institutional values, adversely impacts the University's community interest, and interferes with the University's mission. The University also prohibits retaliation against any person who, in good faith, reports or discloses a violation of this policy, files a complaint, or otherwise participates in an investigation, proceeding, complaint, or hearing under this policy. On the University becomes aware of an incident of sexual misconduct, the University will promptly and effectively respond in a manner designed to eliminate the misconduct, prevent its recurrence, and address its effects.

(b) This policy applies to (1) all students, Registered Student Organizations, Registered Student Organizations, and others subject to student discipline pursuant to § 1-301 of the Student Code; (2) all University employees; (3) other affiliated individuals, including but not limited to, for purposes of this policy, visiting faculty, visiting scholars, and post-doctoral fellows; and (4) third parties, including, but not limited to contractors, subcontractors, volunteers, and visitors. Any person asserting a violation may invoke this policy. This policy applies regardless of actual or perceived sexual orientation or gender identity. This policy covers conduct that occurs on University premises or property, as well as conduct that does not occur on University premises or property that substantially affects the University community's interest.

(c) Definitions:

(1) Sexual misconduct includes sexual harassment, sexual assault, sexual exploitation, stalking, dating violence and domestic violence.

(2) Sexual assault is any sexual contact that does not involve the knowing consent of each person, including (A) any form of sexual penetration without consent; and (B) any intentional or knowing touching or fondling by either person, directly or through clothing, of the sex organs, buttocks, or breasts of the other person for the purpose of sexual gratification or arousal of either person without consent.

(3) Consent is informed, freely and actively given, mutually understandable words or actions that indicate a willingness to participate in mutually agreed upon sexual activity. A person can withdraw consent at any time. There is no consent when there is force, threats, intimidation, or duress. A person's lack of verbal or physical resistance or manner of dress does not constitute consent. Consent to past sexual activity with another person does not constitute consent to future sexual activity with that person. Consent to engage in sexual activity with one person does not constitute consent to engage in sexual activity with another person. A person cannot consent to sexual activity if such person is unable to understand the nature, fact, or extent of the activity or give knowing consent because of circumstances including without limitation the following: (A) the person is asleep or unconscious; (B) the person is incapacitated due to the use or influence of alcohol or drugs; (C) the person is under the legal age to provide consent; or (D) the person has a disability that prevents such person from having the ability or capacity to give consent.

(4) Sexual exploitation is the use of another person's nudity or sexual activity without consent for the purpose of sexual gratification, financial gain, personal benefit, personal advantage, or any other non-legitimate purpose. Sexual exploitation includes, but is not limited to: (A) without the knowledge and consent of all participants, observing, recording, or photographing nudity or sexual activity of one or more persons in a location where there is a reasonable expectation of privacy, allowing another to observe, record, or photograph nudity or sexual activity of one or more persons, or otherwise distributing recordings, photographs, or other images of the nudity or sexual activity of one or more persons; and (B) sending sexually explicit materials of another person without consent of the recipient.

(5) Sexual harassment is unwelcome sexual, sex-based, or gender-based conduct, whether verbal, written, electronic and/or physical in nature:

(A) that is (1) sufficiently severe or pervasive; and (2) objectively offensive; and (3) unreasonably interferes with, denies, or limits a person's ability to participate or benefit from educational and/or employment opportunities, assessments, or status at the University; or

(B) by a person having power or authority over another in which submission to such conduct is made explicitly or implicitly a term or condition of educational and/or employment opportunities, participation, assessments, or status at the University.

(6) Stalking is two or more acts directed at a specific person that would cause a reasonable person to fear for her, his, or others' safety, or to suffer substantial emotional distress, and includes, but is not limited to, following, monitoring, surveilling, or threatening a person; initiating or continuing contact with a person without consent; or interfering with or damaging a person's property.

(7) Dating violence is violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim, and the existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of the relationship, and the frequency of the interaction between the persons involved in the relationship.

(8) Domestic violence is felony or misdemeanor crimes of violence committed by: (A) a current or former spouse or intimate partner of the alleged victim; (B) a person with whom the alleged victim shares a child in common; (C) a person who is cohabitating with, or has cohabitated with, the alleged victim as a spouse or intimate partner; (D) a person similarly situated to a spouse of the alleged victim under the domestic or family violence laws of the State of Illinois; or (E) any other person against an adult or youth alleged victim who is protected from that person's acts under the domestic or family violence laws of the State of Illinois.

(d) Retaliation is any action, or attempted action, directly or indirectly, against any person(s), who, in good faith, reports or discloses a violation of this policy, files a complaint, and/or otherwise participates in an investigation, proceeding, complaint, or hearing under this policy. Retaliation includes, but is not limited to harassment, discrimination, threats, job termination, adjustment in pay, or negative impact on an academic program. Actions associated with retaliation may include a materially adverse effect on the working, academic, or living environment of a person; or if they hinder or prevent the person from effectively carrying out their University responsibilities. Any person or group within the scope of this policy who engages in retaliation is subject to a separate complaint of retaliation under this policy.

(e) The Lead Title IX Coordinator is responsible for coordinating the University's efforts to comply with and carry out its responsibilities under Title IX of the Education Amendments of 1972 (Title IX), including sexual misconduct, past sexual misconduct, in education programs and activities for institutions that receive federal financial assistance, as well as retaliation for the purpose of interfering with any right or privilege protected by Title IX. The Lead Title IX Coordinator oversees the University's response to all reports and complaints of sexual misconduct to monitor outcomes, identify and address any patterns or systemic problems, and to assess their effects on the campus climate. The Lead Title IX Coordinator also evaluates requests for confidentiality by those who report or complain about sexual misconduct in the context of the University's responsibility to provide safe and welcoming campus environment for all students free from discrimination based on sex. Following a report or complaint of sexual misconduct, the University is required to conduct an adequate, reliable, impartial, equitable, and prompt investigation, including: (1) determining whether the report or complaint alleges conduct that may, upon further investigation, constitute prohibited sexual misconduct; (2) appointing an investigative team to conduct that investigation; (3) determining whether reports and complaints are

handled properly in a prompt and timely manner; (4) informing all parties regarding the disciplinary process; (5) confirming that all parties have been notified of a decision and the right to, and procedures for, an appeal, if applicable; (6) maintaining information and documentation related to the investigation in a secure manner, consistent with the University's obligations to disclose information during the discipline process; and (7) monitoring compliance with timeframes set forth in the applicable procedures.

(f) Danielle Morrison serves as the University's Title IX and Disability Coordinator and can be contacted at the Title IX and Disability Office, 703 South Wright Street, Third Floor, Champaign, IL 61820; by phone at (844) 616-7978; or by email at titleixcoordinator@illinois.edu.

(g) A person should contact the Lead Title IX Coordinator or a Deputy Title IX Coordinator to: (1) seek information or training about rights and available actions to resolve reports or complaints involving potential sex discrimination, including sexual misconduct; (2) file a complaint or make a report of sex discrimination, including sexual misconduct; (3) notify the University of an incident, policy or procedure that may raise potential Title IX concerns; (4) get information about available resources (including confidential resources) and support services relating to sex discrimination, including sexual misconduct; and (5) ask questions about the University's policies and procedures related to sex discrimination, including sexual misconduct.

## PART 2. GENERAL RESPONSIBILITIES OF STUDENTS

### § 1-201  Responsibilities of Students

(a) Students are responsible for knowing and complying with the regulations of the University, their college, and the departments from which they take courses, and for fulfilling the requirements for a particular degree. Regulations applicable to given colleges may be obtained from the respective deans.

(b) It is expected that students enrolled in the University will conduct themselves at all times in accordance with accepted principles of responsible citizenship and with due regard for the rights of others.

## PART 3. STUDENT DISCIPLINE

### § 1-301  Basis for Discipline—Source and Jurisdiction

(a) By authority of the Board of Trustees, the Urbana-Champaign Senate Committee on Student Discipline is responsible for the administration of student discipline for acts involving the violation of campus or University regulations. These regulations are formulated by a variety of sources, including, but not limited to, the Conference on Conduct Governance, the Senate, the Chancellor, the President, and the Board of Trustees.

(b) It is in the best interest of the University and all those who are students or who may desire to become students at the Urbana-Champaign campus that the basis for discipline at this campus be clearly defined. The University discipline system recognizes that not all violations of law will involve a violation of the University community, and the discipline system accepts jurisdiction only in those instances in which the University community's interest is substantially affected. On the other hand, the University may take disciplinary action for incidents that violate the University's rules of conduct even though such conduct is not prosecuted in the courts. All members of the University community are expected to obey the law and to maintain standards of integrity and ethical behavior. The University discipline system may take action only upon the following basis:
(1) all actions that are violations of law or Board of Trustees' action or any University rule of conduct and that occur on University premises or property
(2) all actions that violate any of the laws or regulations cited in section (a) above and that substantially affect the University community's interest, even though such actions

do not occur on University premises or property (for further information about the criteria used by the Senate Committee on Student Discipline in determining the kinds of conduct covered by this jurisdiction, see www.conflictresolution.illinois.edu or contact the Office for Student Conflict Resolution)
(3) all cases referred to the discipline system following interim suspension by the Chancellor
(4) academic violations
(5) appeals and referrals from student judiciaries arising from violations of regulations
(6) violations of University vehicle or bicycle regulations

(c) Individuals subject to student discipline include but not limited to all persons:
(1) taking courses at the University;
(2) who cancel, withdraw, or graduate after committing behavior which may violate the code;
(3) who are not officially enrolled for a particular term but have a continuing relationship with the University and
(4) who have been notified of, and accepted their admission.
This definition includes but is not limited to individuals between academic terms and persons who consent to participating in the student discipline process.

(d) The actions of a Registered Organization and Registered Student Organization in University-approved activities or University-sponsored activities that are in violation of University regulations for organizations may result in disciplinary action against that organization. In addition, individuals involved may also receive disciplinary action as well.

(e) The University reserves the right to deny admission to any person because of previous misconduct that may substantially affect the interest of the University, or to admit such a person on an appropriate disciplinary status. The admission of such a person will not be approved or denied until the case has been heard by the appropriate disciplinary committee. (This applies to a person not now enrolled in the University who might apply for admission, or to a person who has pre-enrolled whether or not the applicant has paid a deposit.) A favorable action of the appropriate disciplinary committee does not abrogate the right of any dean or director to deny admission on the basis of scholarship. (See § 1-303.)

(f) The University reserves the right to withhold authority to register to any student or former student because of previous misconduct that may substantially affect the interests of the University or to assign appropriate disciplinary status to the student or former student. Permission to register will not be approved or denied until the case has been heard by the appropriate disciplinary committee. A favorable action by the appropriate disciplinary committee does not abrogate the right of any dean or director to deny the authority to register on the basis of scholarship. (See § 1-303.)

(g) Students admitted to or enrolled in the Graduate College or any of the professional schools or colleges are subject to any additional conduct regulations of those units. Regulations will be available in printed form to those students.

(h) The University will take disciplinary action for conduct violating §§ 1-302 to 1-311 below. Disciplinary action also is taken for violation of other sections. Examples include but are not limited to: (1) § 1-102(a) (Orderly Conduct of Classes); (2) § 2-402 (Library Regulations); (3) § 2-404 (Picketing); (4) § 2-405 (Solicitation and Commercial Activity in University Residence Halls); (5) § 2-406 (Posting and Distribution of Handout Materials); and (6) § 2-606 (Use of In-line Skates, Roller Skates, and Skateboards).

(i) Alleged violations of the Student Code noted in (h) above are resolved through procedures developed and approved by the Senate Committee on Student Discipline, its Subcommittees on Student Conduct, and Disciplinary Officers approved by the Senate Committee on Student Discipline. These procedures include: Disciplinary Officer Procedures (informal resolution); Procedures for Appeal from the Action of Disciplinary Officers; Procedures for the Subcommittee on Undergraduate Student Conduct; and Procedures for Appeal to the Senate Committee on Student Discipline. These procedures may be found at www.conflictresolution.illinois.edu or by contacting the Office for Student Conflict Resolution. Other procedures available at the Office for Student Conflict Resolution include

procedures for the subcommittees for graduate students, law students, and veterinary medicine students. Among other rights delineated in these procedures, the right to written notice of charges and an opportunity to respond to those charges are guaranteed.

## § 1-302  Rules of Conduct

Students enrolling in the University assume an obligation to conduct themselves in a manner compatible with the University's function as an educational institution and suitable to members of the academic community. Conduct for which students are subject to discipline includes, but is not limited to, the following:

(a) Conduct that threatens the health or safety of any person, including but not limited to:
(1) causing bodily harm to an individual
(2) making physical contact of an insulting or provoking nature with an individual
(3) reckless disregard for the health or safety of any person
(4) any threat or physically threatening behavior which creates a reasonable fear for a person's safety
(5) engaging in behavior which is so persistent, pervasive, or severe as to deny a person's ability to participate in the University community

(b) Conduct that violates the University's sexual misconduct policy, including:
(1) sexual assault, as defined in § 1-111(c)(2)
(2) sexual harassment, as defined in § 1-111(c)(5)
(3) sexual exploitation, as defined in § 1-111(c)(4)
(4) dating violence, as defined in § 1-111(c)(7)
(5) domestic violence, as defined in § 1-111(c)(8)
(6) retaliation, as defined in § 1-111(d)

(c) Stalking: two or more acts directed at a specific individual that would cause a reasonable person to fear for her, his, or others' safety, or to suffer substantial emotional distress. Relevant acts include, but are not limited to, following, monitoring, surveilling, or threatening a person; initiating or continuing contact with a person without consent; or interfering with or damaging a person's property. (See also § 1-111(c)(6) of the Student Code.)

(d) Hazing: any action taken or situation created (1) for the purpose of initiation into, admission into, affiliation with, or as a condition of continued membership in, a group or organization; and (2) to produce physical discomfort or injury, mental discomfort, embarrassment, or ridicule. Such actions and situations may include but are not limited to the following: use of alcohol; personal servitude; paddling in any form; creation of excessive fatigue; physical and psychological shocks; wearing of apparel which is conspicuous or not in good taste; engaging in public stunts; degrading or humiliating games and activities; or any activities which are not consistent with the academic mission, organizational ritual or policy, or applicable state or local law. Hazing may occur regardless of a person's willingness or consent to participate in the activity.

(e) The use of force or violence, actual or threatened, to willfully deny, impede, obstruct, impair, or interfere with any of the following:
(1) the freedom of movement of any person, including entering or leaving property or facilities
(2) the performance of institutional duties by a member of the University or
(3) by knowingly occupying or remaining in or at any property or facility owned or controlled by the University after receiving due notice to depart.

(f) Any conduct that substantially threatens or interferes with the maintenance of appropriate order and discipline in the operation of the University. Without excluding other situations, examples include shooting, noise making, obstruction, and other disruptive actions designed or intended to interfere with or prevent meetings, assemblies, classes, or other scheduled or routine University operations or activities.

(g) Providing false or misleading information to a member or agent of the University acting in the performance of his or her duty; or failing to comply with reasonable directions of a

member or agent of the University acting in the performance of his or her duty.

(h) Providing false or misleading information to a University or other law enforcement official acting in the performance of her or his duty; or failing to comply with the reasonable directions of a University or other law enforcement official acting in the performance of her or his duty.

(i) Participation in a disruptive or coercive demonstration. A demonstration is disruptive or coercive if it substantially impedes University operations, substantially interferes with the rights of others, or takes place on premises or at times where students are not authorized to be. There is no requirement that University authorities order students to cease participation in a disruptive or coercive demonstration.

(j) Theft, unauthorized use, or unauthorized possession of property or services of another; or knowing possession of stolen property.

(k) Intentional or reckless destruction or damage of University, public, or personal property of another.

(l) Indecent exposure of the body, including, but not limited to urination or defecation in public.

(m) Unauthorized entry to or use of University, public, or private premises.

(n) Abuse of computers where the University community's interest is substantially affected, including, but not limited to:
(1) unauthorized entry into a file for any purpose
(2) unauthorized transfer of a file
(3) unauthorized use of another individual's identification, account, or password
(4) knowingly disrupting the work of another person or the normal operation of the University computing system
(5) accessing child pornography
(6) the use of computing facilities and resources in violation of copyright laws.

(o) Abuse of the University disciplinary system including, but not limited to:
(1) failure to obey the directive of a disciplinary body or University officials in performance of their duties
(2) knowingly falsification, distortion, or misrepresentation of information before a disciplinary body
(3) deliberate disruption or interference with the orderly conduct of a disciplinary proceeding
(4) knowingly initiating a disciplinary proceeding without cause
(5) attempting to influence the impartiality of a member of a disciplinary body prior to, or during the course of, the disciplinary proceeding
(6) harassment or intimidation of any participant in the disciplinary system
(7) failure to comply with the sanction(s) imposed under the Student Code

(p) Making, attempting to make, or distributing a sound or visual recording of any person(s) in bathrooms, showers, bedrooms, locker rooms, or any other premises where there is a reasonable expectation of privacy, without the knowledge and consent of all participants subject to such recordings.

(q) Violation of published University policies, rules, or regulations.

(r) Inciting, aiding, or encouraging others to engage in a behavior which violates the Student Code.

(s) Committing or attempting to commit any act which would be a violation of local, state, or federal law on or off University property, when such behavior is detrimental to the University community's interest.

(t) Sale or Distribution of Lecture Notes or Course Materials. No student shall sell, deliver or distribute copyrighted lecture notes or other course materials without the express permission of the copyright holder. An example of an infraction would include posting on a website or selling instructor copyrighted slides, lecture notes or other expressions fixed in a medium. (See also the University General Rules, Art. III, §4 regarding copyright policy.)

§1-303 Falsification of Documents

(a) Any student who, for purposes of fraud or misrepresentation, falsifies, forges, defaces, alters, or mutilates in any manner any document or representation thereof may be subject to discipline when this action, substantially affects the University community's interest. Some examples of documents covered by this regulation include identification cards, program requests, change slips, receipts, transcripts of credits, library documents, petitions for reclassification of residency status, etc.

(b) Any applicant who withholds information pertinent to the admissions decision or gives false information while making application for admission to the University will be declared ineligible for admission. In cases discovered after admission has occurred but prior to initial registration, the admission will be canceled. If the falsification led to admission that would not have been granted based on the person's academic record, the student enrolled will have his or her registration canceled. The appropriate action will be invoked by the Director of Undergraduate Admissions, Director of Graduate and Professional Admissions and Recruiting or the Registrar and the dean of the college involved. Cases in which admission or registration cancellation is contested in writing by the applicant or student within ten working days after notification will be reviewed by the Office of the Provost or a designee.

If, however, the person would have been admissible based on his or her true record, the registered student will be referred for possible disciplinary action, including dismissal, to the Senate Committee on Student Discipline.

(c) Upon admission and prior to degree conferral, students are responsible to disclose and provide complete, official transcripts from any post-secondary work completed outside the University of Illinois system, including all international, non-domestic coursework for the purpose of considering transfer articulation. It is recommended that students receive appropriate advising from their college prior to undertaking outside coursework to be sure it will transfer for specific curricular needs. Failure to disclose information may result in the rescission of an offer of admission, cancellation of registration or disciplinary action at the discretion of the Dean of Students, college, and/or Director of Graduate and Professional Admissions and Recruiting.

(d) Any student who knowingly withholds information or gives false information in any document or materials submitted to any member or agent of the University may be subject to discipline.

§1-304 Identification Cards

(a) Each new student is issued a photo identification card, which must be retained by the student while he or she is registered at the University. The ID card remains the property of the University and should be returned to the Campus ID Center upon leaving the University.

(b) Any person who alters or intentionally mutilates a University ID card (including but not limited to punching holes in the card, applying stickers, etc.) or who uses the ID card of another or allows his or her ID card to be used by another, may be subject to discipline. (See §1-303.)

(c) The University ID card must be presented for identification purposes at the request of an agent of the University when the agent is acting in the performance of his or her supervisory or security function (for example, examination proctor, University police officer, residence hall director or adviser, recreational facility supervisor, ticket takers, ushers). Any student refusing to provide the University ID card when requested by an agent of the University

may be subject to discipline.

(d) An ID card may be confiscated by an agent of the University when acting in the performance of his or her duties if:
(i) the ID card is in the possession of an individual other than the one to whom the ID was issued and that individual attempts to use the card to represent himself or herself as a duly registered student; or
(2) the ID card is presented by the individual to whom it was issued but is not valid for the term of registration at the time and the individual attempts to represent himself or herself as a duly registered student.

(e) If a card is lost or stolen, a student should immediately notify the Campus ID Center to deactivate the online functionality of the ID card (e.g., meal plan, door access, etc.). Until the ID Center is notified, the student may be held responsible for unauthorized use of the ID card. If a confiscated, surrendered, lost, stolen, or otherwise damaged card has a balance on the value stripe, there is no guaranteed refund on the unused balance on the card.

(f) A charge is made for replacing each lost, mutilated, confiscated, or stolen student ID card.

(g) Card data, including but not limited to the UIN, card number, and photo, may be used for University purposes in accordance with Article 3, Part 6 of the Student Code.

(h) An ID card is non-transferable and does not authorize the card holder to obligate the University of Illinois in any way.

(i) A student who links an i-card to an authorized, contracted University service provider (e.g., for banking services) understands and agrees that he or she is releasing the UIN (as part of the card number) to said service provider. A student is responsible for notifying all said service providers if a linked card is lost or stolen.

(j) By accepting possession of the i-card, cardholder agrees to hold harmless the Board of Trustees of the University of Illinois, and its officers, employees, representatives, or agents, from and against any claims, damages, costs, expenses, including an amount equal to reasonable attorney's fees or liabilities, including for loss or damage to any property or for death or injury to any person or persons, arising out of or in any way connected with any incorrect or outdated phone numbers that may be listed on the i-card.

§1-305 Policy on Drugs

(a) The University seeks to inform all students about drugs and their effects. To this end, it is the policy on this campus to provide educational programs and counseling to drug users and those affected by the drug use of others, to discourage illicit drug use, to eliminate dealing in or providing of illegal drugs, and to uphold the law in these matters. Various local agencies on campus can provide help. These include the Counseling Center, Student Services Building, 610 East John Street, Champaign, IL 61820, (217) 333-3704, and the Health Education Department, Drug and Alcohol Educator, McKinley Health Center, 1109 South Lincoln Avenue, Urbana IL 61801, (217) 333-2816.

(b) Violations of the University's policy on drugs by a University student raises the question of a student's fitness to continue at the University of Illinois.

(c) Drugs include controlled substances, alcohol, and substances that may be detrimental to health, even though not subject to state and federal laws.

(d) The illegal possession or use of drugs or drug paraphernalia is prohibited. While the use of medical marijuana has been legalized in the state of Illinois, the possession or use of prescribed medical marijuana is prohibited on campus property.

(e) The illegal distribution, sale, making or manufacture of drugs is prohibited.

(f) Drug use resulting in incapacitation that requires transportation to the hospital by emergency medical personnel, or refusal to accept such transportation when it is

recommended by emergency medical personnel, can trigger a mandatory assessment (see §2-102).

## § 1-306 Alcoholic Beverages—Preamble

(a) The University of Illinois at Urbana-Champaign expects all students to exhibit behavior compatible with membership in a community of scholars. Students shall conduct themselves in a civil and mature manner, respecting the rights and property of others. (See also §1-201.) Having consumed alcohol is not an excuse for failure to meet these expectations.

(b) Because of the University's concern for the health and rights of individuals and because the excessive consumption of alcohol frequently results in the user becoming either a violator or a victim, the University will respond when inappropriate alcohol-related behavior is demonstrated. These interventions will include a team approach involving, when appropriate, any or all of the following: the Division of Public Safety, the Office of Public Affairs, and Student Affairs units including the Dean of Students Office, the Office for Student Conflict Resolution (Student Judicial Affairs), Residential Life, the Alcohol and Other Drug Office, the Counseling Center, and McKinley Health Center.

(c) The following regulations apply to all University of Illinois at Urbana-Champaign students and Registered Organizations and Registered Student Organizations while on campus, while involved in University-related activities, while within the environs of Champaign County, or in other circumstances where a substantial University community interest exists. A "substantial University community interest" exists, but is not limited to, situations in which individual or group alcohol consumption results in actual or threatened injury to persons, damage to property, or disruption of a University-related event.

## § 1-307 Alcoholic Beverages—General Rules

(a) All students, wherever they happen to be, are expected to observe the liquor laws of the local jurisdiction. (See §1-201 below.) Under the liquor laws of the State of Illinois and the cities of Champaign and Urbana, and this rule:

(1) Possession or consumption of alcoholic beverages by students under twenty-one years of age is prohibited.

(2) No student may give or otherwise furnish alcoholic beverages to any person under twenty-one years of age. Additionally, no student may authorize or permit a residence which he or she occupies to be used for possession or consumption of alcohol by any person under twenty-one years of age.

(b) In determining appropriate sanctions for violations of subsection (a) above, communal alcohol (for example, in kegs or not in its original container, or the distribution of cups with open access to alcohol), drinking games (or other activities that promote unsafe or inappropriate drinking), and open parties may be considered aggravating factors.

(c) The fact that a student may have been drinking shall not be accepted as an excuse for disruptive behavior. In such instances, appropriate sanctions will be applied and referral for personal assistance may be indicated. (See §2-102 and §3-603 concerning Mandatory Assessment and Parental Involvement, respectively.)

(d) The transfer or alteration of identification cards, the use or sale of the identification card of another or a false or forged identification card, or the use of false information to obtain an identification card is prohibited. Additionally, presentation or possession of false identification in an attempt to enter a liquor establishment or to procure alcohol is prohibited.

(e) Alcohol use resulting in incapacitation that requires transportation to the hospital by emergency medical personnel, or refusal to accept such transportation when it is recommended by emergency medical personnel, can trigger a mandatory assessment. (See §2-102.)

(f) No minor (eighteen years of age or younger in Champaign; seventeen years of age or

14

younger in Urbana) is allowed to be present in a liquor establishment unless otherwise permitted by local ordinances. Additionally, holding or carrying open containers of alcoholic beverages out of a liquor establishment or in public areas, in violation of federal, state, and/or local law, is prohibited.

(g) Driving under the influence of alcohol or other drugs poses a substantial risk to the safety of the campus community and is prohibited. Substantial penalties exist in Illinois for the operation of a motor vehicle by a driver with a blood alcohol concentration (BAC) of .08 or greater. Arrests are also possible at lower levels if driving is impaired. Drivers under twenty-one years of age with any trace of alcohol in their systems can lose their driving privileges. Transporting open alcohol containers in a motor vehicle or allowing an intoxicated person to operate a vehicle are also punishable under Illinois law.

## § 1-308 Alcoholic Beverages—Special Rules Relating to University Property

Persons twenty-one years of age or older may possess or consume alcoholic beverages on the following property under control of the University:

(1) Property at which the University furnishes the alcohol and holds a State of Illinois liquor license or local catering license. These include, for example, Willard Airport, the Levis Faculty Center, Krannert Center for the Performing Arts, Illini Union, Spurlock Museum, Beckman Institute, and Allerton House.

(2) Property used for specifically designated functions approved by the appropriate Vice Chancellor, dean or director of the academic or administrative unit sponsoring the event, or by the Chancellor. In cases governed by this subsection, furnished alcohol may be sold only if the provider holds a valid caterer's license.

Other than as outlined above, no person may possess or consume alcoholic beverages on any property under the control of the University.

(b) Possession and consumption of alcoholic beverages in University certified student housing is governed as follows:

(1) University Residence Halls. Persons twenty-one years of age or older may only possess and consume alcoholic beverages in their rooms or the room of another person twenty-one years of age or older, with the door closed. No alcoholic beverages are permitted in public areas. (Also see the "Hallmarks" handbook - http//www. housing.illinois.edu/hallmarks)

(2) University Family or Graduate Housing: Persons twenty-one years of age or older may possess and consume alcoholic beverages in their room/apartment or the room/apartment of another person twenty-one years of age or older. Requests to allow consumption of alcoholic beverages for events/activities in public areas are to be directed to University Housing administration. Any approved functions must be in accordance with all applicable laws and ordinances.

(3) Other Certified Housing: Persons living in privately owned and/or operated certified housing, including fraternities and sororities, must abide by the decision of the owner-operator in accordance with all applicable laws and ordinances with regard to the consumption of alcoholic beverages; total prohibition may be required. In certified housing units where the possession and consumption of alcoholic beverages is allowed by those twenty-one years of age or older, all applicable laws and ordinances must be followed. The Board of Fraternity Affairs and the Board of Sorority Affairs also promulgate rules and regulations that apply to fraternity and sorority certified housing units.

## § 1-309 Possession or Storage of Weapons

(a) Except as provided in subsection (c), possession or storage of weapons by students is prohibited on any property owned or controlled by the University, including University certified housing areas.

(b) Prohibited weapons include but are not limited to any: (1) firearm, firearm ammunition, BB gun, pellet gun, paintball gun (except as part of Registered Organization or Registered Student Organization activity), tear gas gun, stun gun, taser, or other dangerous or deadly device of similar type; (2) knife with a blade of at least 3 inches in length (except an ordinary eating utensil), dagger, dirk, switchblade knife, stiletto, ax, hatchet, or other

deadly or dangerous weapon or instrument of similar type; (3) bludgeon, blackjack, slingshot, sandbag, sand club, metal knuckles, billy club, throwing star, nunchaku, or other dangerous or deadly weapon of similar type; (4) bomb, bombshell, grenade, firework, bottle or other container containing an explosive, toxic, or noxious substance, unless under academic/classroom supervision, other than an object containing a nonlethal noxious liquid, gas, or substance designed solely for personal defense possessed by a person 18 years of age or older; and (5) souvenir weapon or other weapon that has been rendered permanently inoperative.

(c)  With appropriate approval possession of a weapon on nonresidential University property may be permitted when it is used as a prop or accessory in situations such as (1) a University class; (2) a University-sponsored or sanctioned artistic performance; or (3) a activity of a Registered Organization or Registered Student Organization. Such weapons may not, however, be stored on University property, except in a facility approved for that purpose by the University.

(d)  Subsections (a) to (c) above apply to possession or storage, not use of a weapon. Use of a weapon that results in harm or threat of harm to any person or property is governed by §1-302, and subsection (e) below.

(e)  In determining appropriate sanctions for violations of the student discipline rules contained in this Part (Article I, Part 3), the use or threatened use of any object (whether or not defined as a weapon in this section) while committing the violation may be considered an aggravating factor.

§ 1-310  Unauthorized Use, Abuse, or Interference with Fire Protection Equipment, Building Security Systems, Security or Fire Personnel, or Warning Devices
(a)  The unauthorized use, abuse, or interference with fire protection equipment, firefighting personnel, or warning devices may result in death, injury, or substantial property damage. It is critically important that all fire protection equipment be in its place and in proper working condition if the safety and welfare of the members of the University community are to be assured.

(b)  It is a violation of Illinois criminal law to willfully or maliciously cut, injure, damage, tamper with, or destroy any fire hydrant, fire hose, fire engine, or other public or private firefighting equipment or any apparatus pertaining to such equipment or firefighting personnel, or to intentionally open any fire hydrant without proper authorization. It is also a violation of Illinois criminal law to knowingly, without authorization, damage any property supported in whole or in part with state funds or federal funds administered or granted through a state agency. Other Illinois laws may also relate to the unauthorized use, abuse, or interference with fire protection equipment or warning devices.

(c)  A violation of any federal, state, or local law concerning fire protection equipment or firefighting personnel may result in suspension or dismissal from the University.

(d)  Tampering with locks, other door hardware, cameras or other equipment used to provide security on campus (including the unauthorized propping of doors) may result in suspension or dismissal from the University.

(e)  Enabling unauthorized access to campus facilities by providing keys or access cards or by other means may result in suspension or dismissal from the University.

§ 1-311  Certain Consequences of Disciplinary Action
(a)  (a) Sanctions may be imposed for violations of the student discipline rules stated in this part (Article 1, Part 3.)

(b)  The Senate Committee on Student Discipline has the right to withhold privileges of the academic community, including the conferral of the degree itself, at any point prior to the conferral of the degree. In instances in which dismissal is a possibility for disciplinary infractions, the conferral of the degree is withheld until the disciplinary action has been

resolved. (See §3-313 and §§3-701 to §3-704.)

(c)  Students dismissed or suspended from the University for disciplinary reasons may be excluded from University classes, activities, facilities, buildings, and/or premises by the appropriate disciplinary authority. The same exclusions may be applied by the Chancellor in exercising the power to suspend students. (See §3-506 on refunds.)

(d)  Cancellation or withdrawal from the University does not abrogate the authority of the institution to pursue disciplinary action (see subsection 3-313(a)(3)).

PART 4. ACADEMIC INTEGRITY POLICY AND PROCEDURE

§ 1-401  Policy Statement; Application; Definitions
(a)  Policy Statement. The University has the responsibility for maintaining academic integrity so as to protect the quality of education and research on our campus and to protect those who depend upon our integrity.
   (1)  Expectations of Students. It is the responsibility of each student to refrain from infractions of academic integrity, from conduct that may lead to suspicion of such infractions, and from conduct that aids others in such infractions. Students have been given notice of this Part by virtue of its publication. Regardless of whether a student has actually read this Part, a student is charged with knowledge of it. Ignorance is not a defense.
   (2)  Expectations of Instructors. It is the responsibility of each Instructor to establish and maintain an environment that supports academic integrity. An essential part of each Instructor's responsibility is the enforcement of existing standards of academic integrity. If Instructors do not discourage and act upon violations of which they become aware, respect for those standards is undermined. Instructors should provide their students with a clear statement of their expectations concerning academic integrity.

(b)  Application. This Part contains the procedures for addressing course-based academic integrity infractions, including proficiency tests taken after enrollment, for all courses in all colleges except for courses in the College of Law, the College of Medicine, and the College of Veterinary Medicine. This Part does not apply to pre-enrollment infractions (see §1-301 and §1-303) or infractions of the Academic Integrity in Research and Publications Policy.

(c)  Definitions. For purposes of this Part, the following definitions shall apply:
   (1)  Business Day. Monday through Friday, excluding University and campus holidays and reduced service days.
   (2)  Consultant. A person with whom a student or Instructor may privately consult during the process. A Consultant may attend hearings with a student or Instructor, but may not participate in the hearings and may not serve as a witness. Each participant may be accompanied by only one Consultant.
   (3)  Dean. The dean of the college or head of the equivalent academic unit in which a course or examination is conducted or his/her designee.
   (4)  Executive Officer (EO). The executive officer or head of the department or unit in which a course or examination is conducted or his/her designee.
   (5)  Instructor. A faculty member or authorized staff member who supervises any academic endeavor.
   (6)  Notice. A written communication conveying information to or from a participant in the process. E-mail notices are strongly encouraged.
   (7)  Record. The Instructor's Allegation Notice, written Student Response, any materials relied upon by the Instructor to make the Instructor's decision, the course syllabus, and the Instructor's Decision Notice.

§ 1-402  Academic Integrity Infractions
(a)  Cheating. No student shall use or attempt to use in any academic exercise materials, information, study aids, or electronic data that the student knows or should know is

§ I-402  STUDENT CODE

unauthorized. Instructors are strongly encouraged to make in advance a clear statement of their policies and procedures concerning the use of shared study aids, examination files, and forms of assistance. Such advance notification is especially important in the case of take-home examinations. During any examination, students should assume that external assistance (e.g., books, notes, calculators, and communications with others) is prohibited unless specifically authorized by the Instructor. A violation of this section includes but is not limited to:

(1) Allowing others to conduct research or prepare any work for a student without prior authorization from the Instructor, including using the services of commercial term paper companies.

(2) Submitting substantial portions of the same academic work for credit more than once or by more than one student without authorization from the Instructors to whom the work is being submitted.

(3) Working with another person without authorization to satisfy an individual assignment.

(b) Plagiarism. No student shall represent the words, work, or ideas of another as his or her own in any academic endeavor. A violation of this section includes but is not limited to:
(1) Copying: Submitting the work of another as one's own.
(2) Direct Quotation: Every direct quotation must be identified by quotation marks or by appropriate indentation and must be promptly cited. Proper citation style for many academic departments is outlined in such manuals as the MLA Handbook or K.L. Turabian's A Manual for Writers of Term Papers, Theses and Dissertations. These and similar publications are available in the University bookstore or library. The actual source from which cited information was obtained should be acknowledged.
(3) Paraphrase: Prompt acknowledgment is required when material from another source is paraphrased or summarized in whole or in part. This is true even if the student's words differ substantially from those of the source. A citation acknowledging only a directly quoted statement does not suffice as an acknowledgment of any preceding or succeeding paraphrased material.
(4) Borrowed Facts of Information: Information obtained in one's reading or research that is not common knowledge must be acknowledged. Examples of common knowledge might include the names of leaders of prominent nations, basic scientific laws, etc. Materials that contribute only to one's general understanding of the subject may be acknowledged in a bibliography and need not be immediately cited. One citation is usually sufficient to acknowledge indebtedness when a number of connected sentences in the paper draw their special information from one source.

(c) Fabrication. No student shall falsify or invent any information or citation in an academic endeavor. A violation of this section includes but is not limited to:
(1) Citing information not taken from the source indicated. This may include the incorrect documentation of secondary source materials. For example, it would be improper, for example, to analyze one sample in an experiment and covertly invent data based on that single experiment for several more required analyses.
(2) Altering the answers given for an exam after the examination has been graded.
(3) Providing false or misleading information for the purpose of gaining an academic advantage.

(d) Facilitating Infractions of Academic Integrity. No student shall help or attempt to help another to commit an infraction of academic integrity, where one knows or should know that through one's acts or omissions such an infraction may be facilitated. A violation of this section includes but is not limited to:
(1) Allowing another to copy from one's work.
(2) Taking an exam by proxy for someone else. This is an infraction of academic integrity on the part of both the student enrolled in the course and the proxy or substitute.
(3) Removing an examination or quiz from a classroom, faculty office, or other facility without authorization.

(e) Bribes, Favors, and Threats. No student shall bribe or attempt to bribe, promise favors to, or make threats against any person with the intent to affect a record of a grade or evaluation of academic performance. This includes conspiracy with another person who then takes

---

STUDENTS RIGHTS AND RESPONSIBILITIES  § I-403

the action on behalf of the student.

(f) Academic Interference. No student shall tamper with, alter, circumvent, or destroy any educational material or resource in a manner that deprives any other student of fair access or reasonable use of that material or resource.
(1) Educational resources include but are not limited to: computer facilities, electronic data, required/reserved readings, reference works, or other library materials.
(2) Academic interference also includes acts in which the student committing the interference personally benefits from the interference, regardless of the effect on other students.

§ I-403 Procedures
(a) Suspicion of Infraction – Initial Determination.
(1) Allegation. An Instructor who has reason to believe that a student has committed an academic integrity infraction shall notify the student in writing of the basis for the belief. E-mail notice is strongly encouraged. The Allegation Notice must contain sufficient information to permit the student to respond to the concern. A copy of the Allegation Notice shall be provided to the department and college in which the course or examination is conducted. The college should, where applicable, submit a copy of the Allegation Notice to the college with which the student is affiliated (for graduate students, the Graduate College is always the applicable college).
(2) Response. The student has ten (10) business days from the date of the Allegation Notice to submit a written Response to the Instructor. The Response should include all relevant information, materials and witness statements the student wishes the Instructor to consider. Upon good cause shown, an extension may be requested in writing and may be granted by the executive officer (EO).
(3) Fact-Finder. The Instructor shall act as fact-finder and explore information relevant to the alleged infraction. The Instructor should consider all information provided by the student in the Response. The Instructor may collect additional relevant information to assist in making a determination. The Instructor will pay due regard to the Family Educational Rights and Privacy Act (FERPA) when making inquiries, including interviewing involved parties.
(4) Timing. The Instructor shall work to resolve the matter and make a determination on a timely basis.
(5) Instructor's Decision.
(A) If the Instructor concludes that the student did not commit an infraction, the student shall be permitted to:
(i) Continue in the course and be given whatever grade the student is entitled to without regard to the charge of an infraction; or
(ii) Drop the course at any time during the semester without a "W" on the transcript. However, to drop the course after the applicable drop deadline, the student must indicate his/her desire to drop the course within 10 business days of the Instructor's decision; or
(iii) Change sections in the course, if possible.
(B) If the Instructor concludes, based on available information, that it is more probably true than not true that the student has committed an infraction, the Instructor shall make a finding of a violation and impose a sanction as permitted in 1-404.
(C) In either case (A or B), Notice of the Instructor's decision shall be given to the student and to the department and college in which the course or examination was conducted. The college should, where applicable, submit a copy of the Instructor's Decision Notice to the college with which the student is affiliated (for graduate students, the Graduate College is always the applicable college). When an infraction is found, the Instructor's Decision Notice shall include at least (1) a finding of violation, (2) a brief explanation of the facts establishing the violation, (3) the sanction and the basis for the same, and (4) a statement such as: "You have the right to appeal this decision and/or sanction by [insert date, i.e. within five (5) business days from the date of the Instructor's Decision Notice] pursuant to 1-403(b) of the Student Code."
(6) Multiple students. When two or more students have been accused of cooperating in

an academic infraction, any fact-finding inquiries should establish their independent responsibility and the sanctions for each individual should be decided separately.

(7) Student not enrolled in course. If a student is not enrolled in the course affected, the Instructor shall not make an allegation but shall instead forward that student's case to the Senate Committee on Student Discipline for handling pursuant to its policies and procedures.

(8) Finality of Instructor's Decision. If a student does not appeal the Instructor's decision, it shall be final except to the extent the sanction includes a recommendation for suspension or dismissal from the University. A recommendation of suspension or dismissal will be handled pursuant to 1-403(d).

(9) Forwarding the Record. Once a decision has been made, the Instructor shall forward the Record to the department or unit executive officer for retention pursuant to applicable policy.

(b) Contested Determination or Sanction – Appeal.

(1) Timing and Content of Appeal. A student wishing to appeal an Instructor's decision must file a written appeal within five (5) business days from the date of the Instructor's Decision Notice, except as provided in 1-403(d)(1)(A). The appeal shall include at least the name of the student, the course involved, the name of the Instructor, the applicable grounds for appeal (see b.2 below), and an explanation for the basis of appeal. The appeal shall be submitted to the executive officer (EO) in the department or unit in which the infraction is alleged to have occurred.

(2) Burden of Proof; Grounds for Appeal. A student wishing to appeal bears the burden of establishing at least one of the following grounds for appeal:
(A) The Instructor did not follow these procedures as outlined in the Academic Integrity Policy and Procedures and the deviation resulted in significant prejudice against the student;
(B) The Instructor's decision was clearly not objectively reasonable based upon information available at the time of the Instructor's decision;
(C) The sanction was disproportionate to the violation; or
(D) New information exists that was not available at the time of the Instructor's decision, and that information makes it substantially more likely that the student did not commit the violation than that he or she did.

(3) EO handling of Appeal. Upon receipt of the appeal and Record, the EO shall:
(A) Schedule a departmental hearing if the highest sanction was a Category 2 as provided in 1-404. If the department consists of nine or fewer full-time faculty members, the appeal will be directed to a similarly constituted committee of the school or college.
(B) Refer the Record to the Dean of the college offering the course for a college level hearing if the highest sanction was a Category 3 as provided in 1-404.

(4) Automatic Review. A recommendation for suspension or dismissal by an Instructor shall be automatically reviewed pursuant to 1-403(d).

(c) Appeal Hearing Procedures.

(1) Configuration
(A) Departmental Level Appeal. The EO shall appoint a Chair, who shall serve as a non-voting member. The EO shall select a hearing committee which shall be composed of at least two faculty members and at least one student to hear and vote on the matter. Only faculty and students without a conflict of interest (as determined by the EO) shall serve.
(B) College Level Appeal. The Dean shall appoint a Chair who shall be a nonvoting member. The Chair shall select a hearing committee which shall be composed of at least two faculty members and at least one student member to hear and vote on the matter. Only faculty and students without a conflict of interest (as determined by the Chair) shall serve.
(C) Student Committee Members. The student members on the hearing committees shall be of the same status as the respondent(s) (undergraduate or graduate). In reviewing alleged violations by both an undergraduate and graduate student(s), both an undergraduate and a graduate student shall serve on the committee. The undergraduate committee member shall vote on the undergraduate respondent(s) and the graduate student committee member shall vote on the

graduate respondent(s).

(2) Notice of Hearing. Notice of Hearing shall be sent at least five (5) business days prior to the hearing, unless the student requests an expedited hearing and the request is granted.

(3) Attendance. Attendance is restricted to committee members and to the student(s), Instructor(s), and their Consultants. Both the student and the Instructor shall be permitted to be present throughout the hearing but are not required to attend. When multiple students are involved, their hearings may be combined except when discussing the educational record of each student with regard to sanctions. Students and Instructors shall represent themselves in the hearing. Any person, including a student or Instructor, who disrupts a hearing or who fails to adhere to the directives of the Chair may be removed from the hearing at the discretion of the Chair. All parties shall be excluded during committee deliberations.

(4) Information Considered. Appeals are intended to determine if the student has established the grounds for appeal. The student and the Instructor may each make a brief opening statement, and then respond to questions from the committee. The student and the Instructor may suggest questions to be asked of each other. The Chair shall decide whether or not to pose the questions. The committee, through the Chair, may solicit information or statements from any person it deems relevant to the matter in dispute, either at its own initiative or at the suggestion of the student or Instructor. All such information must be presented in the hearing and not in closed deliberation. The confidentiality of all information shall be preserved. Formal rules of evidence shall not apply.

(5) Deliberations and Disposition. The deliberations of the Committee are confidential. The decisions and recommendations of the committee must be agreed to by a simple majority of the voting members of the committee hearing the matter. The committee shall submit a written report to the EO (or Dean of the college offering the course in the case of a college level hearing) within five (5) business days from the date of the hearing. The report should include:
(A) A brief overview of the allegation(s) and response;
(B) A summary of the relevant information considered at the hearing;
(C) A statement as to whether the student has met the burden establishing the grounds for an appeal; and
(D) A recommendation. The recommendation may include upholding, overturning or adjusting the instructor's decision or sanction, or such other recommendation as may be appropriate. Failure by the Instructor, department or college to follow the procedures of this Part shall not absolve a student of his/her responsibility to refrain from violations of academic integrity. The committee may recommend that a matter be returned to the level where the error occurred for reconsideration.
The committee shall not recommend a sanction of a higher Category than the Instructor's original sanction. (See 1-404 of this Part.)

(6) EO or Dean's decision. Following the receipt of the Report and on a timely basis, the EO or Dean may do any of the following:
(A) If the EO or Dean accepts a committee recommendation to uphold the Instructor's decision and sanction, he or she shall inform the Instructor and the student of the same in writing.
(B) If the EO or Dean accepts a committee recommendation to overturn or adjust the Instructor's decision and sanction, the EO or Dean shall inform the Instructor and permit the Instructor five (5) business days to concur with the committee's recommendation or submit a statement of objection. If the Instructor objects, the EO or Dean shall take that objection into account when making a final decision in the case. No response from the Instructor within the allotted time shall be construed as no objection to the recommendation.
(C) If the EO or Dean disagrees with the committee's recommendation, the EO or Dean shall direct the committee to reconsider the matter. The specific errors or concerns shall be identified and the committee need only address the issues raised. The EO or Dean may then accept or decline the committee's recommendation in whole or in part.

(7) Finality of Decision. The decision of the EO or Dean shall be final, and shall be communicated to the student and Instructor in writing.

(d) Handling of a Recommendation for Suspension or Dismissal from the University
(1) Upon receipt of a recommendation for suspension or dismissal, the EO shall review the record and discuss the matter with the Instructor and with the student.
(A) If the EO declines to forward the recommendation for suspension or dismissal, the EO shall provide Notice declining the recommendation to the student and the Instructor. The Instructor's finding(s) and other sanction(s) remain in effect. The student shall have five (5) business days from the date of the EO's Decision Notice to appeal the Instructor's finding and/or sanctions, pursuant to the provisions of 1-403(b).
(B) If the EO agrees with the recommendation and the student waives his/her right to a college-level appeal hearing, the matter shall be forwarded to the Senate Committee on Student Discipline for review and action.
(C) If the EO agrees with the recommendation and the student does not waive his/her right to appeal, the EO shall forward the matter to the Dean for a hearing by the college in which the course or examination was offered. The college shall convene the hearing in accordance with 1-403(c) except, in the event the student is affiliated with a different college, the dean of the student's college shall be invited to name a representative from the student's college, who shall serve as a non-voting member of the committee. The hearing committee shall consider the facts of the case and make a judgment on whether suspension or dismissal is warranted. If the student also wishes to appeal the Instructor's finding(s) and/or other sanction(s), that appeal shall be heard at the same hearing. In that case, the burden rests with the student to establish that at least one of the grounds for appeal found in 1-403(b)(2) are present.
(2) If, after a hearing, the dean of the college in which the course or examination was offered accepts a recommendation for suspension or dismissal, the dean shall forward the recommendation to the Senate Committee on Student Discipline for review and action.
(3) The question before the Senate Committee on Student Discipline would be whether the breach of academic integrity in question is of such a nature as to warrant suspension or dismissal of the student. The Committee may take into consideration prior findings of academic integrity violations against the student when determining if suspension or dismissal from the University is warranted. If the hearing committee or the Senate Committee on Student Discipline does not concur with the recommendation of suspension or dismissal, it may impose a lesser formal sanction and/or educational sanction, pursuant to established sanction imposed by the Instructor. (See SCSD Student Disciplinary Procedures for permissible sanctions.) The Committee shall inform the Dean of its decision and the Dean shall notify the Instructor and EO of the unit in which the infraction occurred. The decision of the Senate Committee on Student Discipline shall be final.

(e) Student Status. While an academic integrity infraction is pending (from the date of the Allegation Notice until final resolution), no change in enrollment status in the course shall be permitted.
(1) The final deadline for reporting a grade occurs prior to the resolution of the case, the Instructor shall request that the student's college assign an "Incomplete" grade to the student for the course until final resolution.
(2) Upon a finding of no infraction and resolution of the case, the student shall have the options set forth in 1-403(a)(5)(A).
(3) Upon a finding of an infraction and resolution of the case:
(A) If the sanction is Category 1 or 2 as provided in 1-404, an undergraduate student may drop the course or change the course to Credit/No Credit status if he or she were otherwise eligible under section 3-311(d)(2) at the time of the infraction. Graduate students may drop the course provided the infraction occurred before the usual deadline for dropping a course. A record of the infraction will remain in the student's file even if the student drops the course.
(B) If the sanction is a Category 3 as provided in 1-404, the student may neither change the course to a Credit/No Credit status nor drop the course.

§ 1-404 Sanctions
(a) Authorized Sanctions. Authorized Sanctions for academic integrity violations are one or more of the following:
(1) Category 1 – Any sanction discussed and agreed to in writing by the Instructor and the student. A Category 1 sanction must also be reported pursuant to 1-405. A student who accepts a Category 1 sanction waives his or her right to appeal either the finding of a violation or the sanction under 1-403(b).
(2) Category 2 –
(A) A written warning
(B) Educational Sanctions including make-up assignments of a more difficult nature, assignments pertaining to academic integrity, and/or required attendance at a noncredit workshop or seminar on academic integrity.
(C) A reduced grade on the assignment
(D) A failing grade for the assignment
(E) A reduced grade for the course
(F) A denial of credit for the proficiency exam
(3) Category 3 – A failing grade for the course.
(4) In addition to any other sanctions imposed, an Instructor may also recommend suspension or dismissal from the University.
(5) If a combination of sanctions is imposed, the sanction from the highest Category shall determine to whom a Contested Determination or Sanction is forwarded in 1-403(c), except as provided by 1-403(d) for cases involving suspension or dismissal.

(b) General Guidance for Sanctions. The variety of academic settings encountered in the University precludes establishing uniform sanctions for all infractions. Instructors may use their judgment in light of the relevant discipline and the educational experience of the student, prior instructions or warnings the Instructor has given to the student, etc.
(1) Relevant aggravating and mitigating factors shall be considered in determining the sanction.
(A) Knowledge and intent are not necessarily factors in determining whether an infraction occurred, but shall be considered in determining an appropriate sanction. Instructors shall consider whether the student knew or should have known that an infraction was likely to occur based on the circumstances surrounding the incident. Careless conduct that results in an infraction should be sanctioned less severely than intentional conduct.
(B) Instructors shall consider aggravating factors, such as repeated violations within the same course in the same semester, cheating on the major work for the course, activity that was designed to hinder the academic performance of others, and similar conduct when determining an appropriate sanction.
(C) Violations in other courses or other semesters will be addressed by the Senate Committee on Student Discipline and shall not be considered by the Instructor when determining a sanction. See Section 1-406.

§ 1-405 Reporting and Record Keeping
(a) Report. Once a violation of academic integrity matter has been resolved (a finding of violation, sanction and completion of appeals process or expiration of time to appeal), the Instructor shall prepare a report on the case. The report shall include:
(1) the nature of the alleged violation of academic integrity;
(2) if applicable, the appeal procedures followed and the recommendation of any hearing committee; and
(3) the final decision and sanction(s) imposed.
(b) Transmittal. The EO shall send a copy of this report, including the student's name and University identification number, to the college in which the course or examination was conducted, to the college or equivalent academic unit in which the student is enrolled, and to the executive officer of the Senate Committee on Student Discipline within ten (10) business days of the resolution of a case.
(c) Record Retention. A record of the infraction will remain in the student's department and college files (both the student's college of enrollment and the college in which the course

or examination was conducted), pursuant to the University's record retention policy. The executive director of the Senate Committee on Student Discipline will retain the information pursuant to the University's records retention policy.

(d) Annual Report. The executive director of the Senate Committee on Student Discipline shall compile an annual report to the Senate on the number and severity of such infractions of academic integrity without identification of the individuals involved. The report shall be available to the public(c)

### § I-406 Continuing Jurisdiction of the Senate Committee on Student Discipline

Nothing contained herein shall be construed to limit or impair the jurisdiction of the Senate Committee on Student Discipline (SCSD) over student disciplinary matters. Departments that become aware of repeat offenders are encouraged to call these cases to the attention of their college. Colleges are encouraged to make special note of repeat offenders to the SCSD. The SCSD will address multiple violations of the academic integrity policy by the same student.

## PART 5. CLASS ATTENDANCE

### § I-501 All Students

(a) Regular class attendance is expected of all students at the University. The authority to excuse absences rests with the course instructors, subject to the requirement to reasonably accommodate class absences as set forth in this part (Article I, Part 5).

(b) Instructors are strongly encouraged to make a course syllabus available to all students prior to the deadline for an undergraduate student to add a course (see the Office of the Registrar Academic Calendars (http://registrar.illinois.edu/academic-calendars) for the current term for the specific date). A syllabus should include the instructor's course attendance policy, the due dates of all major assignments, quizzes, and examinations. The student is encouraged to inform the instructor of any known conflict as soon as possible, but no later than one week before the date of the quiz or examination or due date of the assignment. (Note that conflict policies stated in the syllabus take priority over this rule.) Students should notify the instructor in advance of missing any class or as soon as possible thereafter. If a student is unable to contact instructors due to hospitalization or other emergency, the student may contact the Student Assistance Center in the Office of the Dean of Students during business hours to request that email notification be sent.

(c) Students whose absences meet the criteria below may contact the Student Assistance Center in the Office of the Dean of Students to request an absence letter, if it is required by an instructor. Absence letters, however, do not excuse students from class or ensure that make-up work will be permitted. This authority rests with each instructor. These letters are intended to provide information to the instructors who require them and can be used to help the instructor determine whether or not to excuse the absence and allow make-up work. Except for absences related to religious beliefs/observances/practices, which are addressed in § I-501(c)(4) below, students should request absence letters as soon as possible after the student's return from the absence, but no later than 10 business days after the student's return to class. The Student Assistance Center will not provide letters requested outside of this timeframe.

An absence letter may be requested for documented absences resulting from:

(1) Prolonged illness or injury of student of 3 days or more. The illness must be formally verified by a health care provider who has provided the student treatment and must be on the provider's letterhead. Students with chronic health conditions and/or disabilities that may affect their class attendance should register with Disability Resources and Educational Services (DRES) if the students are not veterans or the Center for Wounded Veterans in Higher Education (CWVHE) if the students are veterans of the U.S. armed forces, in accordance with § I-110.

(2) Life threatening or serious illness or injury of an immediate family member including parents, legal guardian, spouse/partner, siblings, children, or grandparents. Relatives in law and step relatives in categories above are also included. The condition of the family member must be formally documented by the treating health care provider and must be on the provider's letterhead.

(3) Death of a family member (See Student Bereavement Guidelines http://www.odos.illinois.edu/studentAssistance/absence/bereavement.asp).

(4) A student's religious beliefs, observances, and practices. University policy and state law require that all instructors reasonably accommodate conflicts with class attendance and work requirements resulting from a student's religious beliefs, observances, and practices. (See § I-107.) Students seeking an excused absence for religious reasons should complete the Request for Accommodation for Religious Observances Form, which can be found on the Office of the Dean of Students website. The student should submit this form to the instructor and the Office of the Dean of Students by the end of the second week of the course to which it applies.

(5) A student serving as a volunteer emergency worker, as defined in the Volunteer Emergency Worker Job Protection Act. University policy and state law require that all instructors reasonably accommodate conflicts with class attendance and work requirements resulting from a student's serving as an volunteer emergency worker.

(6) Significant and compelling circumstances beyond a student's control. This may include medical treatment or surgery related to a prolonged illness or injury; pregnancy; legal matters; citizenship or naturalization processes; or acts of nature which cause destruction to the student's primary residence or which disrupt air travel such that a student is unable to return to campus as planned. These circumstances must be documented. Absence letters will not be approved for classes missed: (i) to attend family events such as weddings, graduations, or reunions; (ii) to be present for circumstances related to extended family members including illness; (iii) to secure or move to an apartment; and (iv) for other reasons which do not satisfy the standard of significant and compelling, as determined by the Student Assistance Center.

(d) University policy and state law require instructors to reasonably accommodate students whose class absences result from religious beliefs, observances, and practices or from serving as a volunteer emergency worker under the Volunteer Emergency Worker Job Protection Act.

(e) Instructors must also reasonably accommodate students whose class absence resulted from formal participation in scheduled activities of officially recognized registered groups such as athletic teams, performing groups, and the Urbana-Champaign Senate Policy governing class attendance of student athletes, as adopted by the Senate, is found in § I-502.

(f) Instructors shall hold all students who miss class for the reasons set forth in § I-501(d) and § I-501(e) to the same standard. Accommodating absences for some groups but not others amounts to invidious discrimination and is against University policy. (See § I-108.)

(g) For an absence to be excused and make up work to be accepted, the student must provide an explanation to the instructor and supply supporting evidence as required by the instructor, which may include an absence letter, when the absence meets the criteria outlined above. The student must make arrangements with the instructor to make up missed work expeditiously. (See § 3-201 for information about absence from final examinations and § 3-202 for information about absence from evening, midterm, and hourly examinations.) Any student may appeal in writing an instructor's decision regarding an absence to the executive officer of the academic unit offering the course. Before taking action, the executive officer should request that the instructor explain his or her denial in writing.

(h) The instructor decides when a student's attendance becomes irregular. In this case, the instructor may send oral, written, or electronic notice of the student's irregular attendance to the dean of the student's college. The dean shall then notify the student in writing, with a copy to the instructor. The notification may be in the following form:

_____ has notified this office that your attendance in _____ has become irregular. Please contact of an instructor immediately. The instructor may refuse to grade, return, or record any assignment, quiz, or examination until you have met with the instructor to discuss your attendance problem.

(i)   If, after receiving a notice described in subsection (h) above, a student's attendance continues to be irregular, the instructor may report this fact to the student's college dean. The dean of the student's college, in consultation with the instructor, may determine that the student's attendance has become so irregular that the student's scholarship is likely to be severely impaired. The dean may require the student to withdraw from the course with a grade of Withdrawal or Failure. (See § 3-312.)

(j)   General Provisions
(1)   A student may notify the Student Assistance Center in the Office of the Dean of Students if the student will be unavoidably absent from class because of illness, death in the family, or other emergency. The Student Assistance Center will pass this information along to instructors and the student's college as is appropriate. This communication is meant for information and does not certify the validity of the student's reason for absence.
(2)   Class absences before and after vacations are treated like any other absences during the semester.
(3)   Regularly scheduled classroom or laboratory work shall have precedence over instructional field trips except on the second Saturday of each month.
(4)   Because McKinley Health Center does not provide medical excuses, instructors should be aware that a student may not be able to provide formal documentation for minor illnesses of less than 3 days.

§ I-502  Student Athletes
(a)   The Athletic Board of the Urbana-Champaign Faculty-Student Senate has delegated authority to review and approve or disapprove schedules for all intercollegiate athletic contests that involve participants from the Urbana-Champaign campus to the Academic Progress and Eligibility Committee (APEC). Each athletic team schedule must adhere to APEC guidelines for approved absences and must be submitted to APEC for approval.

(b)   The maximum number of school days absent during a semester for each team cannot exceed ten, not including estimates for championship and other postseason events.
(1)   A school day is considered any day classes are scheduled during the semester, including Reading Day.
(2)   No way athletic events are allowed during final examination periods.
(3)   Any waivers of these regulations require the approval of the Athletic Board at the time of scheduling.

(c)   Questions about these policies should be directed to either the Division of Intercollegiate Athletics' Academic Service Office (333-2240) or the chair of the Academic Progress and Eligibility Committee.

Produced by Creative Services | Public Affairs for the Office of the Dean of Students. The University of Illinois at Urbana-Champaign is an equal opportunity, affirmative action institution. Printed on recycled paper with soy-based ink. 17.00