## STUDENT DISCIPLINARY PROCEDURES

TABLE OF CONTENTS

Article I: Background ................................................................................................................. 2

    Section 1.01: History ............................................................................................................... 2

    Section 1.02: Philosophy ........................................................................................................ 2

    Section 1.03: Scope ................................................................................................................ 2

    Section 1.04: Nature of System ............................................................................................. 3

Article II: Disciplinary Officer and Subcommittee Hearing Procedures ................................... 4

    Section 2.01: Definitions ........................................................................................................ 4

    Section 2.02: Disciplinary Officer Procedures ..................................................................... 4

    Section 2.03: Subcommittee Procedures ................................................................................ 5

    Section 2.04: Actions Possible in Individual Student Discipline Cases ................................. 8

Article III: Appeals ................................................................................................................... 11

    Section 3.01: In General ....................................................................................................... 11

    Section 3.02: Appeals to the Executive Director ................................................................. 11

    Section 3.03: Appeals to Subcommittee and SCSD ............................................................ 12

Article IV: Miscellaneous ........................................................................................................ 14

    Section 4.01: Subcommittee Member Selection and Removal............................................. 14

    Section 4.02: Student Petitions ............................................................................................ 15

    Section 4.03: Procedures in Cases of Interim Suspension by the Chancellor ..................... 17

    Section 4.04: Garrity Procedures......................................................................................... 18

    Section 4.05: Access to Records and Record Retention....................................................... 18

APPENDIX A: Subcommittee Selection and Quorum Requirements for BFA, BSA, and Veterinary Medicine Student Subcommittees........................................................................................... 19

APPENDIX B: Actions Possible Related to Organizational Discipline .................................. 21

APPENDIX C: Procedures of the Subcommittee on Student Conduct for Law Students........... 23

APPENDIX D: Student Conduct Protocol for Allegations of Sexual Misconduct.................... 31

## UNIVERSITY EXHIBIT 2

## Article I. BACKGROUND

### Section 1.01: History

The conduct governance system of the University of Illinois was established in the University Statutes by the Board of Trustees in 1931 and was reaffirmed in 1957.  In January, 1972, the Board of Trustees again affirmed the existing status of the university governance system and adopted recommendations for strengthening the system.  The Trustees asserted their belief in the concept that the university discipline system shall be separate from, but coexistent with, general systems established by society to deal with the conduct of citizens of society.  They emphasized again that, as provided by the Statutes in Article XI, section 2, the Senate Committee on Student Discipline (SCSD) shall have jurisdiction over the hearing and adjudication of the application of rules of student conduct to particular cases.  The committee shall not have responsibility for or right to make or define the rules or regulations or to concern itself with the responsibility of the Chancellor to exercise powers to meet an emergency, safeguard persons and property, and maintain educational activities.

### Section 1.02: Philosophy

As a community of scholars, the University of Illinois at Urbana-Champaign is committed to providing an environment that values academic excellence, personal integrity, justice, equity, and diversity in an orderly and peaceful environment.  Such an environment is essential for fostering the intellectual growth and personal development of all students.  All members of the academic community share responsibility for maintaining conditions which support the university's mission.

The community supports each member's right to study and work in a quiet, respectful, non-violent atmosphere that is conducive to the pursuit and acquisition of knowledge.  Students who voluntarily join this university community assume the obligation of abiding by the standards commonly held by that community.  Every student at the University of Illinois at Urbana-Champaign is therefore obligated to assume responsibility for their actions, to respect constituted authority, to be truthful, and to respect the rights of others, as well as to protect personal and public property.

The goal of the disciplinary system is to educate and discipline the individual as well as to protect the integrity and security of the university community and its mission by serving as a deterrent.

### Section 1.03: Scope

The university discipline system recognizes that not all violations of local, State, and Federal law affect the interests of the university community and the discipline system accepts jurisdiction in those instances where the university community's interest is substantially affected, regardless of whether the conduct in question occurs on or off campus.  The rules governing conduct may come under the jurisdiction of the legal system, but are typically and necessarily broader in coverage than statutes and ordinances.  The university discipline system is based on the most recent edition of the Student Code. Action taken through university disciplinary committees does not abrogate the right of any dean or director to deny admission or readmission on the basis of scholarship.

As students enrolled in the College of Law are preparing for careers in a profession demanding honesty and integrity, the College requires high standards of conduct specific to its students.  Therefore, The College of Law operates under an honor system and has special additional policies and procedures outlined in an appendix to this document.

**Section 1.04: Nature of System**

Our disciplinary system is not intended to be adversarial in nature and is substantially less formal than a court of law.  The majority of cases, in which severe sanctions are not likely to be considered, can and should be handled informally.  The objective of a system of student discipline is to promote responsible citizenship in a complex organizational or social setting.

## Article II. DISCIPLINARY OFFICER AND HEARING COMMITTEE PROCEDURES

### Section 2.01: Definitions

(a) Advisor.  A person intended to protect the rights of the student.  Since the Senate Committee on Student Discipline wants to retain the student committee dialogue, the advisor may not participate in that dialogue.

(b) Alleged Victim.  A person who claims to have been or is perceived to have been a victim of a crime of violence or non-forcible sex offense.

(c) Business Day.  Any weekday when university offices are open for official business.

(d) Complainant.  The university who alleges a complaint against a student that violates the Student Code.

(e) Disciplinary Officer (DO).  The staff or faculty member responsible for making an initial determination of whether or not a Code violation has occurred.  May also be referred to as a "Hearing Officer".

(f) Educational Sanction.  An assignment, requirement, or task educationally related to the violation.

(g) Director. The Director of the Office for Student Conflict Resolution or their designee.

(h) Executive Session.  Executive session includes the voting members of the committee and other non-voting parties at the discretion of the committee.

(i) Formal Sanction.  A formal disciplinary status.

(j) Notice.  Notice is deemed given on the first business day after mailing, or immediately when hand delivered or sent to the respondent's e-mail address.

(k) Respondent.  A person who is alleged to have violated the Student Code.

(l) Senate Committee.  The Senate Committee on Student Discipline (SCSD).

(m) Witness.  A person who has relevant information to share.

### Section 2.02: Disciplinary Officer Procedures

For undergraduate and graduate students, the Disciplinary Officer (DO) is a staff member in the Office of the Executive Director of the Senate Committee on Student Discipline.  For students in the College of Veterinary Medicine, the DO is the Dean of the college or their designee.  This responsibility may be delegated to the Office of the Executive Director.  Procedures for the College of Law are located in the appendix.

(a) **Intake and Review**.  All concerns about violations of the Student Code will be referred to a DO.  The DO will review the allegations and select the appropriate charges to be considered, if any.

(b) **Charge Letter**.  The DO will issue a charge letter which shall inform the respondent of the approximate date, location, and type of incident, as well as of the section(s) of the Student Code that have allegedly been violated.  The DO will encourage the respondent to schedule an appointment to discuss the matter.   The respondent may waive their right to a charge letter.

(c) **Administrative Appointment**.  At the appointment, the DO shall summarize the charge(s), explain the process, and engage in a discussion concerning the incident in question with the respondent.  A respondent may have an advisor present at any point during the DO procedures.

(d) **Administrative Disposition**.  With the exception of cases in which the allegations, if found true, would likely result in suspension or dismissal, the DO has the authority to make a finding of fact and decide whether it is more likely true than not true that the respondent's conduct constitutes a violation of the Student Code.

(e) **Contested Charges**. If the respondent does not admit to the charges, the respondent should provide a written response to the allegations within three business days, unless otherwise agreed. The response should include the respondent's reaction to the charges, outline any possible mitigating factors in the offense, and include the names and contact information of potential witnesses and the nature of the witness information.

(f) **Investigation**.  The DO will review all information submitted and may conduct further investigation to determine if it is more likely true than not true that the respondent is responsible for violating the Student Code. The DO may forward a matter to a subcommittee before reaching a DO finding and sanctioning decision.

(g) **Decision**.  The DO is authorized to make a finding of fact, determine violations of code, and assign any disciplinary sanction, educational sanction, or restriction, with the exception of suspension or dismissal. The respondent must be notified of the outcome of the DO's decision and sanctions in writing.

(h) **Appeal**.  The respondent may appeal the DO decision according to the guidelines in this document.

(i) **Expedited Case Disposition**.  If a code violation that by itself or when combined with the respondent's disciplinary history would warrant suspension or dismissal is found, the DO may offer the respondent  an Expedited Case Disposition and waiver of appeal (ECD).  If the offer is accepted, the respondent and DO must sign the ECD, which must then be ratified by the appropriate subcommittee.  A respondent may request to void the ECD within three business days of their signature by notifying the Executive Director in writing.  If the respondent rejects or fails to respond to the ECD, a hearing will be scheduled before the appropriate subcommittee on student conduct.

(j) **Failure to Participate**.  If a respondent fails to participate in the process by failing to attend a meeting or providing information, the DO may render a decision based on available information.

## Section 2.03: Subcommittee Procedures

(a) **Jurisdiction**.  The subcommittees have jurisdiction over two categories of matters:  (1) cases in which the allegations, if found true, would likely result in suspension or dismissal; and (2) appeals from actions of record taken by Disciplinary Officers.

(b) **Process**

(i) **Pre-hearing Information**.

1. The DO will provide written notice of the hearing.  The notice must include:

   a. The approximate date, place, and nature of the alleged violations.

   b. The date, place, and time of the scheduled hearing.

   c. The code violations the subcommittee will address.

   d. The web location of the procedures for the hearing.

   e. A statement concerning the respondent's right to review the hearing file prior to the hearing.

f. A statement concerning the respondent's right to have an advisor present during the hearing.

g. A statement that the hearing may go forward if the student fails to appear.

2. The DO may meet with the student prior to the hearing to assist him/her in preparation.

3. The Chair will have access to each hearing file before the hearing, and, if he/she determines that a case file is incomplete, he/she may request the Executive Director to remedy any deficiency or to secure additional information or materials. The respondent and the alleged victim may submit materials to be included in the hearing packet. For full consideration, materials must be submitted no fewer than three business days prior to the hearing. Materials submitted prior to the deadline will be included if they are determined to be relevant by the Chair. The Chair may also at their discretion consider the inclusion of materials that have been submitted late.

4. A hearing may proceed regardless of the failure of a respondent to appear, as long as the respondent has been properly notified of the hearing at least five business days prior to the hearing.

5. Hearings will be closed. The Chair may exclude or remove from the hearing room any person who may interfere with the orderly process of the hearing. An alleged victim of a crime of violence or non-forcible sex offense and their advisor are allowed to be present for all parts of the hearing at which a respondent may be present, with the exception of any discussion of the respondent's disciplinary history. Witnesses (other than an alleged victim) may be present only while presenting evidence or testimony.

6. In the event that oral testimony is to be presented, the Executive Director shall invite those witnesses whose presence is deemed appropriate. The respondent and alleged victim may each suggest potential witnesses to appear on their behalf. Each must submit a witness list and a description of the nature of each witness's testimony to the Executive Director no fewer than three business days prior to the hearing. Witnesses are subject to the approval of the Chair. The Chair may also at their discretion consider the participation of witnesses whose names were not submitted by the deadline. Character witnesses will only be allowed to present written statements that may be read by the committee in the sanctioning phase. The respondent and the alleged victim are responsible for inviting and notifying any approved witnesses of the date, time, and location of the hearing.

7. In order to preserve a record for appeal to the Senate Committee on Student Discipline, hearings will be electronically recorded by the subcommittee. In order to protect the confidentiality of the process and the privacy rights of the individuals involved, other parties will not be permitted to make a separate recording. If the respondent decides to appeal, he/she can make an appointment to review the recording of the hearing. The respondent may not make a copy of the recording. The recording will remain the property of the university. Recordings of all hearings are subject to destruction after the appeals process has been exhausted.

(ii) **Procedures at the hearing**. The Chair will ensure that:

1. A quorum of five subcommittee members is present. The hearing committee must consist of at least one faculty member and one student. The Chair will count towards quorum. [Special quorum requirements of some subcommittees are noted in the appendices of this document.]

2. The respondent, alleged victim, and their respective advisors are introduced.

3.  The members of the subcommittee, the Executive Director and/or Disciplinary Officer, and other authorized personnel are introduced.

    a.  The respondent and the alleged victim may challenge the objectivity of any voting member of the hearing committee.  Such a challenge must be based on a prior relationship that may result in substantial bias.

    b.  In the event of such a challenge, the hearing committee will meet in executive session without the challenged member to determine whether the challenged member may continue to serve on the committee.  Following this determination, the hearing will proceed with the remaining members present, and any quorum requirement will be waived.

4.  The record is identified.

    a.  Documentary evidence, statements, and memoranda included in the hearing file are presented.

    b.  Additional information is received or identified.  The committee will determine whether any new information is to be added to the hearing file, and, if so, whether this addition requires a continuance.

5.  The hearing proceeds in an orderly fashion, as follows:

    a.  The complaint, charges, and any pre-hearing investigation are summarized by the DO.

    b.  The respondent is invited to provide a narrative description of the alleged incident.

    c.  The respondent is asked whether he/she is responsible or not responsible for the alleged charges.  If the respondent agrees that he/she is responsible, the hearing committee may move immediately to sanctioning.

    d.  The alleged victim is invited to provide a narrative description of the alleged incident.

    e.  Witnesses invited by the subcommittee through the Executive Director are escorted into the room one at a time to make statements. The committee may ask questions. When invited to do so, the respondent and the alleged victim may ask questions of the witnesses directed through the Chair.

    f.  If further information is deemed necessary, the subcommittee will suspend its hearing in order to pursue such inquiries and request the Executive Director or the respondent attempt to secure additional information.

    g.  The alleged victim is invited to make a final comment.

    h.  The respondent is invited to make a final comment.

6.  All questions are asked appropriately, in the following manner:

    a.  All witnesses are questioned first by the subcommittee.

    b.  The respondent and alleged victim are invited to ask questions. In order to preserve civility, all questions asked by the respondent or the alleged victim must be directed through the Chair rather than posed directly to the other party or the witnesses.

(iii)  **Deliberations**.

1.  The deliberations will proceed as follows:

    a.   There will first be a review of testimony, then a determination of the facts and a decision as to whether it is more likely true than not true that the respondent's conduct constitutes a violation of the Student Code.

    b.   If a violation is found, the subcommittee may invite statements regarding possible aggravation or mitigation. In addition, the subcommittee will review the respondent's disciplinary history. After this information is provided, the subcommittee will deliberate again in executive session.

    c.   The appropriate, authorized actions will be determined.

        i.   The subcommittee will consider a formal sanction.

       ii.   The subcommittee may also assign educational sanctions.

    d.   The decision of the subcommittee will be by a simple majority vote of members present, including the Chair. In the event of a tie vote, the respondent will be found not in violation.

(iv)  **Notice of action taken**.

    1.   If the respondent has waited to hear the outcome, notice will be communicated personally to the respondent by the Chair immediately following deliberations.

    2.   A letter confirming the actions taken will also be delivered to the respondent. If a sanction is imposed, this letter will include a statement of the respondent's right to appeal to the SCSD within five days from the date that notice of actions taken is transmitted to the student.

    3.   As permitted by FERPA and the Clery Act, the university will, upon request, disclose to the alleged victim of a crime of violence or a non-forcible sex offense, the results of any disciplinary proceeding conducted by the university against a student who is the alleged perpetrator of such crime or offense. If the alleged victim is deceased as a result of such crime or offense, the next of kin of such victim shall be treated as the alleged victim for purposes of this paragraph.

    4.   Additional notices and records will be made as required by the nature of the sanction.

## Section 2.04: Actions Possible in Individual Student Discipline Cases
[Please Note: Actions Possible in Organizational Discipline appear in the appendices to this document].

(a)  Actions include, but are not limited to, the following:

(i)  **Finding of No Violation**. This action can occur at any stage of the procedure. If a finding of no violation occurs, the student has no disciplinary history. This information will not be considered in future proceedings.

(ii)  **Charge(s) Dropped**. This action shall be taken when the DO or the hearing body determines that the student cannot be found in violation of the university's regulations governing student conduct. The behavior may have been unrelated to the rules of conduct, or evidence may be unobtainable or insufficient, etc. A dropped charge may be reinstated at the discretion of the Executive Director if substantial new information should become available. If a charge is reinstated, the respondent will be sent a charge notice. If a charge is dropped, the student will have no disciplinary history related to it.

(iii)  **Finding of Violation**. This action occurs when the disciplinary body has established that a policy of the Student Code has been violated based on a preponderance of the information.

(iv) **Continuance**. The Executive Director may continue the proceedings when he/she determines it is in the best interest of the university community. Respondents may appeal a continuance decision to the appropriate committee.

(b) **Formal Sanction Options**:

(i) **Non-Reportable**. The following formal sanctions are not recorded on the academic transcript or released to others without a legitimate educational interest.

1. **University Reprimand**. A University Reprimand indicates that the student's behavior is inappropriate for a member of the academic community. A University Reprimand is maintained in the student's disciplinary file for one year and would serve as a basis for further sanctioning should subsequent violations occur. If there are no further violations within that one-year period, the file will be destroyed. A University Reprimand will not appear on the academic transcript.

2. **University Censure**. A University Censure is an official communication that a student's behavior is inappropriate for a member of the academic community. A University Censure is maintained in the student's disciplinary file until the student graduates and would serve as a basis for further sanctioning should subsequent violations occur. A University Censure will not appear on the academic transcript.

3. **Internal Conduct Probation**. Internal Conduct Probation is a strong communication that a student is no longer in good disciplinary standing with the academic community. Any subsequent violations of the Student Code will be evaluated in the context of the student's probationary status. Internal Conduct Probation is maintained in the student's file for seven years. Conduct Probation is normally copied to the Dean of the student's College and to the Recorder for notation on the transcript. However, Internal Conduct Probation means that mitigating circumstances warrant the formal sanction is not noted on the academic transcript, nor sent to the academic department.

(ii) **Reportable**. The following formal sanctions are recorded on the academic transcript.

1. **Conduct Probation**. Conduct Probation is a strong communication that a student is no longer in good disciplinary standing with the academic community. Any subsequent violations of the Student Code will be evaluated in the context of the student's probationary status. Conduct Probation is maintained in the office for seven years and is copied to the Dean of the Student's College and to the Recorder for a notation on the transcript. The notation remains until either the end of the probationary period or graduation unless a petition for early removal is approved. Conduct Probation shall be terminated automatically upon graduation.

2. **Suspension**. Suspension shall be imposed upon a student when the hearing body determines that the student's relationship with the university must be suspended from the university for a definite period of time. Suspension may only be imposed by the appropriate subcommittee or the Senate Committee. A student who is suspended until the termination of a given academic term may not be required to petition the appropriate subcommittee on Student Conduct for readmission at the end of the period of suspension. However, it will be the responsibility of the student to make proper application to the Office of Admissions and Records for academic readmission to the university. A copy of the notice will be forwarded to the Dean of the Student's College and to the Recorder for a notation on the transcript. Suspension records are maintained indefinitely. Any suspension imposed shall be recorded on the student's transcript during the suspension period and until the student matriculates for the following academic term. Should a student remain out of the university during an academic term following a suspension,

he/she must apply for readmission as would a student who had withdrawn from the university. At the end of a suspension period, the student is placed on Conduct Probation until graduation, unless mitigating circumstances warrant a different sanction.

3. **Dismissal.** Dismissal shall be imposed upon a student when the hearing body determines that the student's relationship with the university must be terminated. Dismissal may only be imposed by the appropriate subcommittee or the SCSD. When dismissal is imposed upon a student, he/she may petition the original hearing body for readmission to the university after the specified time. A copy of the notice will be forwarded to the Dean of the Student's College and to the Recorder for a notation on the transcript. Dismissal records are maintained indefinitely. Dismissal shall be noted on the student's transcript until such time as the student is readmitted to the university or successfully petitions for the removal of the notation. Permission for readmission by the subcommittee does not abrogate the right of any dean or director to deny readmission on the basis of scholarship. At such time as a student is readmitted to the university, the student is placed on Conduct Probation until graduation, unless mitigating circumstances warrant a different sanction.

4. **Formal Sanction Held in Abeyance.** In rare cases, the SCSD or an appropriate subcommittee may determine that a certain sanction is the appropriate formal sanction, but strong mitigating circumstances warrant holding the formal sanction in abeyance. The student may continue enrollment under restrictions and conditions. Formal sanctions may only be held in abeyance by the appropriate subcommittee or the SCSD. A student found to have violated the conditions or restrictions of a formal sanction held in abeyance will minimally have the formal sanction imposed. A copy of the notice will be forwarded to the Dean of the Student's College and to the Recorder for a notation on the transcript. The notation remains until either the end of the formal sanction held in abeyance period or graduation unless a petition for early removal is approved. Formal sanctions held in abeyance shall be terminated automatically upon graduation.

(c) **Other Conditions or Restrictions**

   (i) **Other educational sanctions.** This may include but is not limited to mandated service to the community, educational programs, research and reflective essays, presentations to the community, restitution, letters of apology, or other related discretionary sanctions.

   (ii) **Restrictions.** The student is restricted from certain activities on campus (e.g. participation in certain registered student organizations, intramural or varsity athletics; contact with specific people or physical locations; or other restrictions deemed just and appropriate).

   (iii) **Deferral of the degree.** The Senate Committee, appropriate subcommittee, or the Executive Director may withhold the conferral of the degree until the disciplinary action has been resolved.

   (iv) **Withholding of the degree.** In cases in which a student has not been awarded the degree but has completed all requirements for the degree, the Senate Committee, appropriate subcommittee, or the Executive Director may direct that the degree be withheld for a period of time.

   (v) **Revocation of a degree.** A degree awarded by the institution may be revoked for fraud, misrepresentation, or other violation of the university standards in obtaining a degree, or for other serious violations committed by a student prior to graduation.

(d) **The Senate Committee on Student Discipline may authorize any other sanctions it deems to be just and appropriate.**

**Article III. APPEALS**

**Section 3.01: In General**

(a) **Jurisdiction**. The Executive Director accepts appeals from all final disciplinary actions that are not of record (i.e. do not appear on the academic transcript) of a DO, the Director of Registered Student Organizations, and the Residence Hall Judicial Council (RHJC).

The appropriate subcommittee accepts appeals of all final disciplinary actions of DO involving sanctions that are of record (i.e. are noted on the academic transcript). Appeals of Interfraternity Council and Panhellenic Council decisions are referred to the Board of Fraternity Affairs and the Board of Sorority Affairs, respectively.

Pursuant to University Statutes, the Senate Committee on Student Discipline (SCSD) accepts appeals from all final disciplinary actions of its subcommittees on Student Conduct. The SCSD will also accept appeals of decisions of the Director of Registered Student Organizations in cases involving the suspension or revocation of an organization's recognition.

(b) **Grounds for Appeal**. Appeals are not new hearings. Rather, the appellate review will be limited to a record of the original hearing and supporting documents. The appellant must provide a Notice of Appeal in writing as defined below. The appellant must base the appeal exclusively on one or more of the grounds below:

   (i) The hearing was not conducted fairly or in conformity with prescribed university procedures. The appellant must show that any alleged bias or deviation from these Student Disciplinary Procedures is likely to have adversely affected the outcome of the original hearing.

  (ii) Any sanctions imposed by the hearing body were not appropriate for the violation(s) for which the student was found responsible.

 (iii) New, substantive information, sufficient to alter the decision, exists and was clearly not available at the time of the original hearing.

**Section 3.02: Appeals to the Executive Director**

(a) **Who May Appeal**. The respondent may appeal a decision to Executive Director. The Dean of Students may also appeal a decision, but only if he/she determines that the decision was manifestly unfair to the university community.

(b) **Respondent's Notice of Appeal**. The respondent must submit a Notice of Appeal to the Executive Director within five business days of the original decision. Upon showing of good cause, an extension may be requested in writing and may be granted by the Executive Director.

(c) **Content of Notice of Appeal**. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific relief requested (3) appellant's reasons in support of the relief requested. Appeals must be formal letters written and signed by the respondent. Verbal appeals are not accepted.

(d) **Sanction Held in Abeyance Pending Appeal**. The effective date of any sanction will be held in abeyance automatically during the period in which an appeal may be filed and until the Executive Director reaches a decision on any appeal filed; however, the Executive Director has the right to retain certain conditions or restrictions, particularly those related to life-safety issues and "no contact" directives.

(e) **Appeal Review**. The Executive Director may conduct interviews with parties involved in the matter (e.g. disciplinary officers, appellant, witnesses, and alleged victim).

(f) **Authority of Executive Director**.  If one of the three grounds for appeal has been met, the Executive Director may:

   (i)   Affirm the action, at which time the matter will be considered final and binding upon all involved.

   (ii)  Reverse the action taken by the original hearing body and dismiss the case.  A case will only be dismissed only in rare and extreme circumstances.

   (iii) Remand the case to the original or new hearing body for a new hearing.

   (iv)  Increase or decrease any sanctions imposed based on information presented during the appeal process.

(g) **Notice and Record of Decision**.  A decision will be communicated to the appellant and hearing officer within five days of the conclusion of the Executive Director's review of the case.

**Section 3.03: Appeals to Subcommittee and SCSD**

(a) **Who May Appeal**.  The respondent may appeal a decision to a subcommittee or the SCSD, as appropriate.  The Dean of Students may also appeal a decision, but only if he/she determines that the decision was manifestly unfair to the university community.

(b) **Respondent's Notice of Appeal**.  The respondent must submit a Notice of Appeal to the Executive Director within five business days of the date on which notice of the action of the original hearing was transmitted to the student.  Upon showing good cause, an extension may be requested in writing and may be granted by the Executive Director.

(c) **Content of Notice of Appeal**.  The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific relief requested (3) appellant's reasons in support of the relief requested.  Appeals must be formal letters written and signed by the respondent.  Verbal appeals are not accepted.

(d) **Sanction Held in Abeyance Pending Appeal**.  The effective date of any sanction will be held in abeyance automatically during the period in which an appeal may be filed and until the committee reaches a decision on any appeal filed; however, the SCSD and subcommittees have the right to retain certain conditions or restrictions, particularly those related to life-safety issues and "no contact" directives.

(e) **Appellate Review**.

   (i)   The hearing of any appeal will be scheduled by the Executive Director for the most expedient meeting of the SCSD or subcommittees following the date of the filing of the notice of appeal. The Executive Director will notify the appellant of the date, time, and place of the hearing in writing at least five days prior to the hearing.

   (ii)  A quorum for hearing an appeal shall consist of five authorized, voting members of the SCSD or subcommittee. [Please note: special quorum requirements of some subcommittees are noted elsewhere in this document].

   (iii) The appeal hearing will be closed, but the appellant may be accompanied by an advisor.

   (iv)  The appellant will present a brief (no more than ten-minute) statement detailing their rationale for appeal.

   (v)   The Chair of the Committee/hearing officer responsible for the original decision or a member designated by the Executive Director will attend the hearing and may make statements

regarding the original hearing.  Any such statements will be made in the presence of the appellant and their advisor.

(vi)   No person may address the committee without the express consent of the Chair of the committee/subcommittee.

(f)   **Deliberations**.  The SCSD/subcommittee will deliberate on the appeal in executive session.  The Executive Director may authorize non-voting parties (such as University Counsel) to be present for deliberations.  Appeal decisions of the SCSD/subcommittee are made by a simple majority vote of the members present, including the Chair.  Absent a majority to the contrary, the decision of the original hearing body shall be affirmed.

(g)   **Authority of SCSD/subcommittee**.   If one of the three grounds for appeal has been met, the SCSD/subcommittee may:

(i)   Affirm the action, at which time the matter will be considered final and binding upon all involved.

(ii)   Reverse the action taken by the original hearing body and dismiss the case. A case will only be dismissed in rare and extreme circumstances.

(iii)   Remand the case to the original or new hearing body for a new hearing.

(iv)   Increase or decrease any sanctions imposed based on information presented during the appeal process.

(h)   **Notice and Record of Decision**.  A decision will be communicated to the appellant and, when applicable, the Chair of the appropriate subcommittee of the action taken within 5 days of the date the SCSD/subcommittee has reached a decision.

# Article IV. MISCELLANEOUS

## Section 4.01: Subcommittee Member Selection and Removal

(a) **Goal**. In order to staff the graduate and undergraduate disciplinary subcommittees, students and faculty are encouraged to apply for this opportunity. Information is sent to the Registered Student Organization office, department heads within Student Affairs and various campus offices requesting that they encourage interested students to serve. The membership of the subcommittees should strive to be representative of the diverse make-up of the university community. The Board of Fraternity Affairs, Board of Sorority Affairs, Veterinary Medicine and Law School subcommittee selection processes are noted in the appendices of this document.

(b) **Minimum qualifications of student members**. Minimum qualifications of student members are:

    (i) A student enrolled full-time at the UIUC campus.

    (ii) Approximately two full semesters still required for the degree.

    (iii) Good academic standing with at least a 2.5 grade point average.

    (iv) Note: The selection committee may consider information about applicants currently subject to any disciplinary sanction or pending disciplinary action.

(c) **Minimum qualifications of faculty members**. Minimum qualifications of faculty members are:

    (i) A faculty member with a faculty appointment.

    (ii) Primary appointment to the UIUC campus.

    (iii) Demonstrated experience teaching, advising, and/or developing students.

(d) **Solicitation Process**. A Search Committee will be appointed by the Senate Committee on Student Discipline generally no later than the first week of class of the Spring Semester. It will consist of the Chair of the Senate Committee on Student Discipline, or their designee, as Chair of the Search Committee, one faculty member and one undergraduate student member of the Senate Committee on Student Discipline, and one faculty member and one undergraduate student member of the subcommittee on Undergraduate Student Conduct.

(e) **Appointment**. The Search Committee will submit a slate of nominees to the Senate Committee on Student Discipline generally no later than May 1. The Senate Committee on Student Discipline shall appoint the members of its subcommittee(s) on Student Conduct. Appointments will be effective on the first day of classes of the succeeding fall semester. The appointment term is for one (1) year. Appointment for an additional term may occur upon recommendation by the Senate Committee on Student Discipline.

(f) **Emergency Appointments**. Emergency, one-time appointments to a subcommittee may be made by the Executive Director if that appointee has been previously trained on the disciplinary procedures.

(g) **Interim Appointments**. Interim appointments beyond one week shall be appointed by the Senate Committee on Student Discipline and must be appropriately trained on the disciplinary procedures before engaging in the process.

(h) **Chair**. The subcommittee Chair must be a member of the faculty.

(i) **Removal**. A subcommittee member may voluntarily terminate their appointment at any time. A member may be involuntarily removed from service for cause. Examples of removal for cause are:

   (i)   Failure to attend two (2) hearings without prior notice;

   (ii)   Breach of confidence;

   (iii)   Poor performance;

   (iv)   Disruptive behavior; or

   (v)   Acting in a manner that is not in the best interest of the university.

(j)   **Removal Process**.  Requests to involuntarily remove a member for cause shall be brought to the attention of the Executive Director.  The Executive Director shall submit valid requests for removal to the Chair of the SCSD.  The SCSD shall have ultimate authority to consider or refuse to consider a request for removal.

## Section 4.02: Student Petitions

(a)   **Petitions to the Executive Director to remove transcript notations**.

   (i)   Students may seek a modification of an existing formal sanction of record by making a formal petition to the Executive Director.

   (ii)   In order for a petition to be considered:

      1.   The student must have completed all educational sanctions;

      2.   The student may not have been found responsible for subsequent violations of the Student Code;

      3.   At least half of the term of the formal sanction must have expired.

   (iii)   This petition should minimally include:

      1.   A description of the incident(s) for which the sanction was assigned and the responsibility the student had in the violation;

      2.   A description of the sanctions the student was required to complete and the degree to which he/she completed them;

      3.   A description of the behavioral changes the student has made since the incident(s) and completion of the sanction(s);

      4.   The student's anticipated graduation date and the career and/or additional education plans he/she has following graduation.

   (iv)   The Executive Director and the student may meet to discuss the student's petition.

   (v)   The Executive Director may:

      1.   Uphold the original sanction and make no changes;

      2.   Amend the original sanctioning decision by directing that the transcript notation be removed.

      3.   The Executive Director shall make a notation in the student's file regarding the petition decision.

   (vi)   The Executive Director may not expunge the student's record or remove sanctions from the student's file.

(b)   **Petitions to the Appropriate Subcommittee on Student Conduct**

(i)    Persons who have been dismissed from the university for disciplinary reasons may petition for permission to re-enter the university.

(ii)    A petitioner is not a member of the university community.  Petitioners must demonstrate that they are fit to return to the academic community, not simply that they have completed all listed sanctions in the dismissal letter.

(iii)    In order for a petition to be considered:

1.    The petition must be filed before November 1 for fall petition requests and before March 15 for spring petitions;

2.    The petitioner must provide documentation that all educational requirements and conditions have been fully and completely satisfied.

(iv)    This petition should minimally include:

1.    A description of the incident(s) for which the sanction was assigned and the responsibility the student had in the violation;

2.    A description of the behavioral changes the petitioner has made since the incident(s) and completion of the sanction(s);

3.    The petitioner's anticipated graduation date and the career and/or additional education plans he/she has following graduation.

(v)    The petitioner will be invited to appear in person before the appropriate subcommittee to discuss the petition and any additional materials in a ten minute statement.  The petitioner may invite an advisor to the petition, but this advisor may not actively participate in the petition hearing.

(vi)    Witness testimony will not be permitted.  Any witness testimony may be presented by written affidavit.

(vii)    Petitions to the subcommittee may not be appealed by the petitioner and are therefore not audio recorded.  However, the Dean of Students may appeal a petition decision that is manifestly unfair to the university or the petitioner.

(viii)    The decision of the Subcommittee will be made by a simple majority vote of members present, including the Chair.  In the event of a tie vote, the petition will be denied.

(ix)    The subcommittee may:

1.    Deny the petition and assign a new date and new requirements for the next consideration of the petition;

2.    Grant the petition and allow the petitioner to pursue the readmission process.

(x)    Student petitioners granted permission to pursue readmission are assigned the formal sanction of Conduct Probation until Graduation.  A subcommittee may assign a lesser formal sanction if strong mitigating factors warrant such action.

(xi)    The subcommittee's decision to grant the petitioner the right to pursue the readmission process does not abrogate the right of any college to deny readmission on the basis of scholarship.

**Section 4.03: Procedures in Cases of Interim Suspension by the Chancellor**

(a) **In General**. The Chancellor's power of interim suspension exists independently of the jurisdiction of the Senate Committee on Student Discipline. The Chancellor will develop and implement procedures to assure both effective disposition and due process. Should the Chancellor choose to refer the matter, the Senate Committee on Student Discipline will conduct a preliminary hearing in order to assure that the interim suspension pending a formal hearing remains necessary.

(b) **Procedures for the Preliminary Hearing**.

   (i) A special subcommittee of the Senate Committee on Student Discipline shall be appointed by the Chair of the SCSD to conduct a preliminary hearing. The special subcommittee shall review the circumstances of the suspension within 24 hours of referral of the matter. The preliminary hearing may be held at a later date upon request of the Administration or of the respondent(s) if good cause is shown, or upon the initiative of the subcommittee if it appears that a hearing could not reasonably be conducted within this time period.

   (ii) The special subcommittee shall be composed of three members of the Senate Committee on Student Discipline who shall be two faculty members and one student. The Executive Director shall be an ex-officio member.

   (iii) The Preliminary Hearing shall be limited to the question of whether continuation of the suspension is necessary to avoid an obvious danger to the university community.

   (iv) The Chancellor or designee shall present to the special subcommittee information relating to (a) the reason(s) for invoking suspension; (b) the reason(s) for seeking continuation of the suspension; (c) the prior disciplinary record of the respondent; (d) and any other information considered by the Chancellor in making their decision.

   (v) The respondent(s) shall be invited to attend the Preliminary Hearing of the subcommittee and shall be permitted to present information relating to the incident, their background, and academic record which may be relevant to the subcommittee's decision.

   (vi) Depending upon the class status of the respondent(s), the Dean of Students for undergraduate students, the Dean of the College of Law for law students, the Dean of the College of Veterinary Medicine for veterinary medicine students, or the Dean of the Graduate College for graduate students, or their respective delegates, may be invited to participate in the Preliminary Hearing.

   (vii) Respondent(s) shall be permitted to invite an advisor to the Preliminary Hearing, but this advisor may not actively participate in the process.

   (viii) The subcommittee shall meet in executive session and may (a) continue the suspension, (b) remove the suspension, or (c) remove the suspension upon condition(s).

   (ix) If the suspension is continued, the matter shall be referred directly to the appropriate subcommittee on student conduct or to an appointed DO for consideration as a matter of immediate priority. If removed, the matter will be referred directly to the appropriate subcommittee on student conduct or to an appointed DO for consideration in due course.

   (x) If the interim suspension is removed or ultimately the student is allowed to resume classes after a full hearing, the Chancellor's office shall communicate with the respondent's course instructors to facilitate make-up exams and assignments.

   (xi) The interim suspension shall not be reflected on the respondent's transcript.

(xii)   If the final hearing decision is appealed to SCSD, the three members of the special subcommittee may not be present at the appeal.

(xiii)  The respondent may waive their right to a preliminary hearing, in which case the matter will be referred to the appropriate subcommittee on student conduct.

**Section 4.04: Garrity Procedures**

The Senate Committee on Student Discipline has established procedures, available on request of the respondent, for student discipline cases where there is a possibility of dismissal to attempt to protect the respondent's Fifth Amendment Privileges against self-incrimination for any current or future criminal charge as provided for under Garrity v. New Jersey, 385 U.S. 493, 87 Sup. Ct. 616, 1967.

**Section 4.05: Access to Records and Record Retention**

(a)   **Access**. Respondents and alleged victims are permitted to view disciplinary records and files. Hard copies will not be provided unless a failure to provide copies would prevent an eligible party from accessing the necessary information. Electronic copies will not be provided under any circumstances.

(b)   **Record Retention and Release**. Disciplinary records will be retained for a minimum of seven years.  Disciplinary records are subject to release according to the retention policies dictated by the controlling formal sanction as outlined in Section 2.04 above.

# APPENDIX A

## SUBCOMMITTEE SELECTION AND QUORUM REQUIREMENTS FOR BFA, BSA, AND VETERINARY MEDICINE STUDENT SUBCOMMITTEES

I.  **Board of Fraternity Affairs and Board of Sorority Affairs**

  A.  **Procedures**.  Unless otherwise noted in this appendix, the procedures of the BFA and BSA will be substantially similar to those outlined elsewhere in this document.

  B.  **Member Selection**.

    1.  The subcommittee shall consist of six (6) alumni of Greek organizations and/or faculty members and six (6) student members.

    2.  Alumni/faculty members of the subcommittee shall be appointed by the Vice Chancellor.

    3.  Student members of the subcommittee shall be the presidents of the three councils and three additional student members selected on a rotational basis as determined by the respective boards.

    4.  The Dean of Students and the Assistant Dean of Students for Fraternity and Sorority Affairs (or their designates) shall be ex-officio non-voting members.

  C.  **Quorum Requirements**.

    1.  Quorum for original jurisdiction hearings and appeal hearings of BFA and BSA shall be no less than five voting (5) members. The hearing committee must consist of at least one (1) faculty/alumni member and (1) student. The chair will count towards quorum.

II. **Subcommittee on Student Conduct for Veterinary Medicine Students**

  A.  **Procedures**.  Unless otherwise noted in this appendix, the procedures of the subcommittee on Student Conduct for Veterinary Students will be substantially similar to those outlined elsewhere in this document.

  B.  **Member Selection**.

    1.  The subcommittee shall consist of three faculty members representing each academic department and four student members represent each Veterinary Medicine class.

    2.  Faculty members of the subcommittee shall be nominated by the College of Veterinary Medicine (CVM) Committee on Committees for approval by the CVM faculty for two-year staggered terms.  The Chairperson of the subcommittee shall also be nominated, designated, and approved in this process.

    3.  Student members of the subcommittee shall be nominated by the Dean.  The student members shall not be members of the Ethics Committee of the Illinois Student Chapter of the American Veterinary Medical Association (ISCAVMA)

    4.  The Chairperson of the Ethics Committee, the faculty advisors of the ISCAVMA, and the Associate Dean for Academic and Student Affairs shall be ex-officio non-voting members.

    5.  The Dean shall annually recommend the approved faculty members and nominated student members for appointment by the SCSD no later than May 1.

C. **Quorum Requirements**.

    1.  Quorum for original jurisdiction hearings and appeal hearings of the subcommittee shall be no less than four (4) members. The hearing committee must consist of at least one (1) faculty member and (1) student. The chair will count towards quorum.

## APPENDIX B

## ACTIONS POSSIBLE RELATED TO ORGANIZATIONAL DISCIPLINE

A. **Actions include, but are not limited to, the following**:

1. **Finding of No Violation**. This action can occur at any stage of the procedure. If a finding of no violation occurs, the organization has no disciplinary history. This information will not be considered in future proceedings.

2. **Charge(s) Dropped**. This action shall be taken when the DO or the hearing body determines that the organization cannot be found in violation or not in violation of the university's regulations governing student conduct. The behavior may have been unrelated to the rules of conduct, evidence may be unobtainable or insufficient, etc. A dropped charge may be recharged within one calendar year of the date it was dropped. If a charge is dropped, the organization has no disciplinary history.

3. **Finding of Violation**. This action occurs when the disciplinary body has established that a policy of the Student Code has been violated based on a preponderance of the information.

4. **Continuance**. The Executive Director may continue the proceedings when he/she determines it is in the best interest of the university community. Respondents may appeal a continuance decision to the appropriate committee.

B. **Formal Sanction Options**.

1. **University Reprimand**. A University Reprimand indicates that the organization's behavior is inappropriate for a member of the academic community. A University Reprimand is maintained in the organization's disciplinary file for one year and would serve as a basis for further sanctioning should subsequent violations occur. If there are no further violations within that one year period, the file is destroyed.

2. **University Censure**. A University Censure in an official communication that an organization's behavior is inappropriate for a member of the academic community. A University Censure is maintained in the organization's disciplinary file for four years and would serve as a basis for further sanctioning should subsequent violations occur.

3. **Conduct Probation**. Conduct Probation is a strong communication that an organization student is no longer in good disciplinary standing with the academic community. Any subsequent violations of the Student Code will be evaluated in the context of the organization's probationary status. Conduct Probation records are maintained for seven years after the end of the probationary period.

4. **Revocation**. Revocation of registered organization status shall be imposed upon an organization when the hearing body determines that the organization's relationship with the university should be terminated. When Revocation is imposed, the hearing body will specify a minimum duration for the sanction. After this time has elapsed, the original hearing body may consider formal requests for permission to pursue registration. Revocation records are maintained indefinitely.

5. **Formal Sanction Held in Abeyance**. In rare cases, the Senate Committee, appropriate subcommittee, or DO may determine that a certain sanction is the appropriate formal sanction for an organization, but strong mitigating circumstances warrant holding the formal sanction in abeyance. The organization will continue to be recognized under restrictions and conditions. An organization found to have violated the conditions or restrictions of a formal sanction held in abeyance will minimally have the formal sanction imposed. Formal sanctions held in abeyance for organizations must include an expiration date.

C. **Other Conditions or Restrictions.**

    1. **Other educational sanctions.**  This may include but is not limited to mandated service to the community, educational programs, research and reflective essays, presentations to the community, restitution, letters of apology, or other related discretionary sanctions.

    2. **Restrictions.**  The organization is restricted from certain activities (e.g. serving alcohol at social events; participation in university activities and events; recruitment, or other restrictions deemed just and appropriate).

D. The Senate Committee on Student Discipline may authorize any other sanctions it deems to be just and appropriate.

## APPENDIX C

**PROCEDURES OF THE SUBCOMMITTEE ON STUDENT CONDUCT FOR LAW STUDENTS**

I.     **Honor Code**

Since students in the College are preparing for careers in a profession demanding honesty and integrity, the College requires high standards of conduct.  The College operates under an honor system, one feature of which is that all examinations are unproctored.  The College's Code of Student Responsibility, reprinted below, details the grounds on which students may be found in violation of this honor system.  The Code also imposes additional obligations on students.

II.     **College of Law Code of Student Responsibility**

§ 1.01   Students enrolled at the University of Illinois College of Law are subject to the Student Code, which is available on-line at: http://www.uiuc.edu/admin_manual/code/ .

§ 1.02   As future members of the legal profession, students at the College of Law bear a special responsibility to insist upon and to maintain high standards of integrity.  Accordingly, it is expected that each student of the College of Law will scrupulously regard the rights of others and will observe high standards of integrity in his or her personal conduct.  Toward this end the College of Law has defined the following academic and nonacademic violations, set out in Sections 1.03-1.08, which are subject to discipline in accordance with the procedures set forth in Sections 2.01-5.09.

§ 1.03   Misrepresentation.  Misrepresentation is any act of fraud or deception by which the student gains or attempts to gain a benefit or advantage from the University, its constituent institutions, its faculty, staff, or students, or persons dealing with the University.  Examples of this offense include, but are not limited to, the following:

    (a)  forging or altering any University document, record, or instrument of identification;

    (b)  furnishing material information which is known by the student to be false to any official, other employee, or agent of the University;

    (c)  furnishing to any person material information which is known to the student to be false and which related to the student's academic record or otherwise concerns activities in the University.

§ 1.04   Unfair Advantage.  Unfair advantage is any act of fraud, deception, or improper influence by which the student gains or attempts to gain an academic benefit or advantage from the University, its constituent institutions, its faculty, staff, or students, or persons dealing with the University.  "Academic benefit or advantage" results from the student's course work as well as from other activities (such as Law Review, Moot Court, and Client Counseling Competition), which in any manner affect the student's professional education, training, or development.  Examples of this offense include, but are not limited to, the following:

    (a)  unauthorized copying collaboration, or use of notes or books on any examination, project, or paper;

    (b)  failure to observe time limits set for an examination by the instructor in charge;

    (c)  lying about the performance of academic work;

(d) submitting the same work, or portions of the same work, in more than one class unless explicitly authorized to do so;

(e) submitting as one's own and without citation, writings or ideas known by the student to be of another (including those of any person furnishing writing for hire) in any academic pursuit;

(f) offering or attempting to offer money or other thing or service to a member of the University community, including its faculty, staff, and students, in an effort to gain academic benefit or advantage.

§ 1.05   Interference with Property.  Interference with property is any taking or destruction of the property of the University, of its constituent institutions, or of its faculty, staff, or students.  Examples of this offense include, but are not limited to, the following:

(a) stealing, damaging, or destroying notes or books of students;

(b) stealing, hiding, or vandalizing library materials;

(c) stealing, damaging, destroying, or otherwise misusing other University property.

§ 1.06   Harassment.  Harassment is any physical assault upon, threat against, or substantial interference with work or study of a member of the University community, including its faculty, staff, and students, as well as of any other person who is lawfully present on University premises.  Examples of this offense include but are not limited to:

(a) intentionally blocking or attempting to block physical entry to, or exit from, a University building, corridor, or room to anyone apparently entitled to enter or leave;

(b) engaging in shouted interruptions, whistling, derisive laughter, or other means that alone or in conjunction with others prevent or seriously interfere with a class, speech program, or other teaching or learning process, under circumstances where the student knows or reasonably should have known the serious interference would occur;

(c) engaging in disruptive behavior directed toward one of more individuals in the library, offices, or other place, that seriously interferes with the work of others.

§ 1.07   Gross Neglect of Professional Duty.  Gross neglect of professional duty is a clear and knowing violation of generally accepted standards of integrity.  Examples of this offense include but are not limited to:

(a) failure to report any suspected violation of this Code by any student having reasonable grounds to believe that such a violation has occurred;

(b) failure to cooperate with the College of Law Committee on Student Discipline or with the Secretary to such Committee with respect to the conduct of any investigation or proceeding held in connection with any alleged violation by any other person of the College of Law Code of Student Responsibility;

(c) aid intentionally given to another student in violation of this Code;

(d) embezzlement or other breach of trust.

§ 1.08   Other University Offenses.  It is a breach of this Code to fail to obey any duly promulgated University rule or regulation relating to student conduct and which is applicable to students in the College of Law, whether now or hereafter adopted by the Board of Trustees or other University authority.

## RULES GOVERNING DISCIPLINARY PROCEEDINGS

### PART A.  Application

§ 2.01   These procedures apply only to individual misconduct, and the appropriate procedures, as contained in the System of Conduct Governance of Students, will be implemented should a student enrolled in the College of Law become involved in an incident of extraordinary group misconduct.

### PART B.  Participants in Disciplinary Process

§ 3.01   Administrative Officer means the Dean, an Associate Dean or Assistant Dean of the College of Law, any Officer of the Campus or University Administration, and any employee of the University to whom supervisory responsibility over matters relating to student conduct has been delegated except members of the Senate Committee on Student Discipline or of the Subcommittee.

§ 3.02   Adviser means a person who has agreed to appear with Respondent at any proceeding under these Rules.  A Respondent may be accompanied by and may consult with his or her Adviser at any such proceedings, but the Adviser may not represent Respondent.

§ 3.03   Alternate means a person appointed as a faculty or student Alternate to the Subcommittee who has not yet been designated by the Chair to replace an excused Member.  One (1) faculty Alternate and one (1) student Alternate shall be regularly appointed, and additional appointments shall be made as necessary to provide a full Subcommittee to conduct the proceedings concerning a particular Respondent. Alternates shall have the same qualifications as and shall be selected in the same manner as Members.  A faculty Alternate may only replace an excused faculty Member, and a student Alternate may only replace an excused student Member.  Until designated for such replacement by the Chair, an Alternate shall not participate in any hearing, consideration, deliberation or vote concerning any matter before the Subcommittee.

§ 3.04   Chair means the individual serving as chairperson of the Subcommittee.  The Chair shall be selected according to current procedures of the College of Law and the Senate Committee on Student Discipline.

§ 3.05   Counsel means the person who has agreed to represent Respondent in any proceeding under these Rules.  A Respondent has a right to consult with and be represented by Counsel in all such proceedings, and the person so serving shall be the sole representative of Respondent.  If Respondent has engaged Counsel, he or she shall notify the Dean of Counsel's name and address.

§ 3.06   Dean means the Dean of the College of Law or, when so designated by the Dean or Acting Dean, an Associate Dean.  In carrying out his or her responsibilities under these Rules, the Dean may consult with the Executive Committee of the College of Law.

§ 3.07   Member means a person appointed as a faculty or student Member of the Subcommittee who has not been excused, and a person appointed as a faculty or student Alternate who has been designated by the Chair to replace an excused Member.  Faculty Members shall be appointed from among permanent members of the College of Law faculty who are not Administrative Officers or members of the College Executive Committee.  Student Members shall be appointed from among full-time students who are J.D.

candidates registered in the College of Law.  Members shall be selected according to current procedures of the College of Law and the Senate Committee on Student Discipline.

§ 3.08   Respondent means a law student upon whom a Formal Notice has been served.

§ 3.09   Secretary means an Administrative Officer or permanent member of the College of Law faculty who is not a Member of the Subcommittee or of the Senate Committee on Student Discipline and who is appointed by the Dean to investigate the allegations in a Formal Notice or instead or in addition to assist in drafting a Formal Charge and to present evidence regarding the charge to the Subcommittee.  The Secretary should obtain and present all available relevant information which, in the Secretary's judgment, will assure an informed and fair administrative review and Subcommittee hearing.  The same person or different persons may serve as Secretary at various stages, as determined by the Dean pursuant to § 5.04.

§ 3.10   Subcommittee means the Subcommittee on Student Discipline for Law Students, consisting of three (3) faculty Members and (2) student Members.  Any hearing before, submission to or deliberations by the Subcommittee shall include all five (5) Members then serving.  Except as otherwise provided herein, Subcommittee decisions shall be by majority vote.

§ 3.11   Witness means a person called upon to provide information at a Subcommittee hearing or in a Secretary's investigation.  All law students and University employees shall cooperate fully when called upon to be Witnesses, and any refusal to be interviewed or to produce evidence may be a matter for disciplinary or employment action.  A Witness may refuse to testify or produce evidence which would tend to inculpate that person in any Violation of University or College Regulations or in any violation of law.  Any statement by or evidence of Respondent made or produced by Respondent to Counsel or an Adviser in that person's capacity as Counsel or Adviser is privileged.

PART C.  General Definitions and Guidelines

§ 4.01   Formal Charge means a statement of the Violation(s) charged with reference to the relevant University Regulations and College of Law Disciplinary Rules, and a statement of the ultimate facts which constitute the specification of the Violations(s) charged.

§ 4.02   Formal Notice means a statement that the Respondent is alleged to have been involved in a possible Violation, a summary statement of the alleged facts, and specification of the Violation(s) suggested by the alleged facts.

§ 4.03   Informal Resolution means a process whereby the matter is resolved informally by counseling or by permitting Respondent to accept a specified Sanction without further proceedings.  A Sanction may be so imposed by the Dean only with Respondent's consent.  If a proposed Sanction is accepted by Respondent, it will be imposed forthwith and without opportunity for appeal.  If a proposed Sanction is refused, the Dean may proceed with the next step in the administrative process.  The fact a Sanction was offered and refused and the nature of the proposed Sanction shall not limit or otherwise affect any further action.

§ 4.04   Report is the written submission of the Secretary to the Dean upon conclusion of an investigation.  It shall contain (i) a summary of the relevant facts and (ii) conclusions as to whether there is a factual basis for a Formal Charge.

§ 4.05   Sanctions which may be imposed upon informal disposition or upon a finding of a Violation by the Subcommittee are:  (1) reprimand not of official record; (2) reprimand of official record; (3) conduct probation not of official record; (4) conduct probation; (5) suspension; or (6) dismissal.  A sanction not of official record does not appear on the student's transcript, but may have to be reported by the Dean and the student to appropriate authorities regarding a candidate's fitness for admission to the bar.  The fact

Respondent has been or may be subject to other sanctions for the same conduct, whether such sanctions have been or may be imposed by civil authorities or by academic officials, shall not bar the initiation of disciplinary proceedings or the imposition of Sanctions for Violations.  The fact a student has been or may be subject to Sanctions under this Code shall in no way affect the power of any academic official to grade or otherwise evaluate such student's performance for academic purposes.

§ 4.06  Service of papers upon Respondent shall be accomplished by delivery to Respondent personally or by regular mail to Respondent's current local address specified in College of Law records.  If mailed at a time when regular semester classes are not in session, a copy shall be mailed to any permanent address specified in College of Law records.  If Respondent has notified the Dean of his or her Counsel's name and address, a copy shall be mailed to Counsel at the specified address.

§ 4.07  Violation means conduct proscribed by University Regulation relating to student conduct or by the College of Law Code of Student Responsibility.

### PART D.  Administrative Procedures

§ 5.01  Preliminary Determination.  Upon receipt of information regarding a possible violation by a law student, the Dean may informally gather such additional information as will facilitate a preliminary determination of how to proceed.  If the Dean determines that a possible Violation has occurred, he or she shall issue a Formal Notice unless it appears that the interests of the student involved and of the College of Law and University would be best served by counseling the student.

§ 5.02  Notice to Respondent; Reply and Action.  The Dean shall arrange for Service of the Formal Notice upon Respondent, together with copies of relevant University Regulations and College of Law Disciplinary Rules, and shall call particular attention to Respondent's right to Counsel and an Adviser and right to reply.  Upon a request for an opportunity to reply, submitted to the Dean in person or by telephone or letter within three (3) business days of the date upon which the Formal Notice was personally delivered or five (5) business days of the date upon which the Formal Notice was mailed, the Dean shall set a date for the reply and the manner in which it shall be received and shall so notify Respondent.  In the reply, Respondent may present evidence in rebuttal of the summary of facts contained in the Formal Notice and instead or in addition may provide information bearing upon the propriety of Informal Resolution.  If no reply is made, the Dean shall designate a Secretary and refer the Formal Notice to the Secretary.  If a reply is made, the Dean upon consideration of it may withdraw the preliminary determination of a possible Violation, attempt Informal Resolution, or designate a Secretary and refer the Formal Notice to the Secretary.  If a Formal Notice is referred to the Secretary, the Dean shall arrange for Service upon Respondent of notification of this referral and of the Secretary's name, address and telephone number.

§ 5.03  Investigation.  The Secretary shall identify and interview available Witnesses and shall identify and obtain relevant and available real or documentary evidence.  Statements of Witnesses or summaries of interviews shall be prepared or obtained and preserved.  Respondent shall have the right to submit statements or real or documentary evidence to the Secretary and to suggest persons whom the Secretary should interview.  Upon completion of the investigation, the Secretary shall prepare and submit a Report to the Dean accompanied by all statements, summaries and real and documentary evidence obtained or prepared by the Secretary.

§ 5.04  Charge or Other Disposition.  Upon review of the Report, the Dean may determine that the evidence is insufficient to establish a Violation and withdraw the Formal Notice, refer the matter back to the Secretary or to a newly appointed successor for further investigation, attempt Informal Resolution, or refer a Formal Charge to the Subcommittee.  If Informal Resolution is sought, the Dean shall first provide Respondent with a copy of the Report and an opportunity to inspect all evidence submitted to the Dean by the Secretary.  If the Dean decides to refer a Formal Charge, he or she shall designate the investigation

Secretary or a successor to assist in preparation of the Formal Charge and to present evidence to the Subcommittee. The Dean shall arrange for Service of the Formal Charge upon Respondent together with a copy of the Report, notice of Respondent's right to inspect and copy all evidence submitted to the Dean by the Secretary, a list of the name of all Subcommittee Members and Alternates, and the name, mailing address and telephone number of the Chair. Once referred to the Subcommittee, a Formal Charge may be withdrawn only upon recommendation of the Dean and approval of the Subcommittee.

### PART E.  Pre-Hearing Determinations; Preparation for Hearing

§ 6.01   Recusal.  The Chair shall provide copies of the Formal Charge to Subcommittee Members and Alternates.  Any Member or Alternate who believes he or she would be unable properly to participate because of serious illness, special interest or prior knowledge which has resulted in prejudgment shall notify the Chair and shall be excused.

§ 6.02   Motions, Challenges and Requests.  All motions, challenges and requests shall be delivered in writing to the Chair within five (5) business days of the date on which the Formal Charge was personally served upon Respondent or within seven (7) business days of the date on which the Formal Charge was mailed to Respondent.  Except in extraordinary circumstances, no motion, challenge or request will be considered unless timely made.  Challenges shall be considered before motions and requests.  The Subcommittee shall grant a challenge for cause, dismiss all or part of a Formal Charge, or otherwise grant a motion or request (except for Respondent's request for an open hearing or to transcribe or record the hearing proceedings) only upon the basis of information formally presented to the Subcommittee and only after affording the opposing party sufficient opportunity to contest the factual and legal bases for such action.

§ 6.03   Peremptory Challenge.  Respondent may challenge one Subcommittee Member or Alternate without stating any cause.  Upon receipt of such peremptory challenge, the named person shall be excused.

§ 6.04   Challenge for Cause.  Respondent and the Secretary may challenge any Subcommittee Member or Alternate for cause.  Such challenge shall state the special interest, prior knowledge or other cause for the challenge and sufficient facts to support the cause asserted.  The person challenged shall not participate in the Subcommittee's actions regarding the challenge, but may be called upon by the Subcommittee to comment on the facts alleged to support the challenge.  Each challenge shall be considered and decided separately.  If the challenge is granted, the person challenged shall be excused.

§ 6.05   Motions.  Normally, the only motion allowable at the prehearing stage of the proceedings is a motion to dismiss on the ground that the facts alleged in the Formal Charge, presumed to be true for purposes of the motion, do not or legally may not constitute a Violation.

§ 6.06   Requests.  Normally, only these types of requests are allowable:  (1) a request by Respondent that the hearing be open, which shall be granted as a matter of right; (2) a request by Respondent to transcribe or record the hearing proceedings at Respondent's own expense, which shall be granted as a matter of right; (3) a request for an extension of the time to file a challenge, motion or request, which shall be ruled upon by the Subcommittee.

§ 6.07   Prehearing Conference.  The Secretary and Respondent shall confer promptly after the Formal Charge has been served to consider and seek agreement on such matters as may facilitate a timely and fair disposition.  They shall agree upon no fewer than three (3) hearing days and so notify the Chair.  If they agree to a two-stage hearing procedure, they shall so notify the Chair, in which case the presentation of evidence principally related to an appropriate Sanction and related deliberations shall be deferred to a second stage following presentation of evidence, deliberations and findings on whether Respondent

committed the Violation charged.  They shall review together the evidence which will be presented and shall stipulate to all evidence as to which there is no dispute as to fact.

§ 6.08   Notice of Hearing; Responsibility of Participants.  The Chair shall take account of the dates agreed to  by the Secretary and Respondent and of the availability of the Subcommittee in setting a date for the hearing at least ten (10) business days following the date of the Formal Charge.  By Service upon Respondent and like communication to the Secretary, the Chair shall give written notice of the date, time and place set for the hearing.  For good cause shown the Chair may grant a continuance requested by Respondent, the Secretary or a Member, subject to the request by a Member that the question be put to a vote of the Subcommittee.  It is the responsibility of the parties to notify and secure the presence of witnesses; of Respondent to secure the necessary recording equipment or personnel needed as a consequence of the granting of his request to record or transcribe; and of the Chair to secure the presence of all Members of the Subcommittee and required recording equipment or personnel.

PART F.  Hearing and Deliberations

§ 7.01   Role of Chair.  The Chair shall be primarily responsible for the conduct of the hearing, including the determination of whether there is good cause for a recess; provided, however, that any Member may request that a ruling by the Chair be submitted for a vote of the Subcommittee.  Deviation from any procedures specified herein is permissible only upon vote of the Subcommittee and in the interest of fairness and for good cause shown.

§ 7.02   Spectators; Presence of Witnesses.  Unless Respondent timely requested that the hearing be open, it shall be closed to all but the necessary parties.  Witnesses may be present only while presenting evidence or testimony.

§ 7.03   Order and Nature of Hearing.  The hearing should proceed in the following order:  (1) determination by the Chair that the parties are present and ready to proceed, except that the Subcommittee may proceed in Respondent's absence upon a determination that Respondent has forfeited the right to be present by his or her willful absence; (2) a brief and nonargumentative opening statement by the Secretary; (3) a like opening statement by Respondent, unless deferred until completion of the Secretary's presentation; (4) presentation in any logical order by the Secretary of testimony, real or documentary evidence, and stipulations; (5) like presentation by Respondent; (6) closing argument by the Secretary, which may include argument concerning appropriate findings and Sanction; (7) like closing statement by Respondent.  The Secretary and Respondent shall be permitted, at appropriate occasions during the hearing, to contest the veracity, reliability and relevance of any information, evidence or testimony presented and to suggest alternative conclusions which may be drawn from information presented.  Upon conclusion of Respondent's presentation, the Secretary or Respondent may request an opportunity to present additional evidence.  Such requests shall be granted by the Subcommittee only if the regular presentations have revealed an unanticipated need for such additional evidence.  In the same circumstances, the Subcommittee may request the submission of additional evidence.

§ 7.04   Evidence.  The formal rules of evidence shall not apply; the Subcommittee may consider all relevant testimony or real or documentary evidence.  Objection to the presentation of any evidence or testimony shall be made at the time such evidence or testimony is proposed to be presented to the Subcommittee.

§ 7.05   Questioning of Witnesses.  Subject to the direction of the Chair, the Secretary and Respondent and any Subcommittee member may question any Witness.  The Chair shall assure that no Witness is abused or harassed.

§ 7.06   Deliberations.  Upon completion of the hearing the Subcommittee shall promptly meet for closed and unrecorded deliberations.  The Subcommittee shall first determine whether the conduct and

Violation(s) charged were established by clear and convincing evidence. In accordance with federal law and University policy, the Subcommittee shall follow the preponderance of the evidence standard in instances of allegations of sexual harassment or sexual violence. Upon an affirmative finding, it shall then (or, if the two-stage hearing procedure is utilized, after further hearing) consider the imposition of an appropriate Sanction, taking into account aggravating and mitigating factors. The Subcommittee shall consider not only the seriousness of the Violation within the University and College of Law communities but also its seriousness in light of the professional requirements and responsibilities of lawyers. An affirmative vote of four (4) Members shall be necessary for imposition of the Sanction of dismissal.

## PART G.  Reports and Records

§ 8.01   Limited Record Where No Formal Notice.  If a Formal Notice is not made or is withdrawn, no record of the alleged violation will be made or preserved on the student's official transcript, but a record may be made or preserved solely for the purposes of the College of Law and to make required reports to the Senate Committee on Student Discipline.

§ 8.02   Record of Subcommittee Proceedings.  A minute record of any preliminary review and of the Subcommittee's deliberations will be made and preserved. A verbatim transcript or recording of the formal hearing shall be made and preserved. Upon request, a Respondent may at his or her own expense obtain a copy of the verbatim transcript or recording.

§ 8.03   Confidentiality.  Access to the record of the hearing or of submissions and any record made in connection with a pre-hearing determination shall normally be limited to the Secretary, Respondent, the Subcommittee, the Senate Committee on Student Discipline, and Administrative Officers. This shall not limit in any way the Dean's authority and responsibility to provide information to appropriate authorities regarding a candidate's fitness for admission to the bar.

§ 8.04   Report of Dismissal.  Upon a determination to dismiss all or part of the Formal Charge, the Subcommittee shall adopt a written statement explaining the basis for such action. The statement shall be signed by all members of the Subcommittee subscribing thereto; concurring or dissenting views may but need not be included. The Chair shall transmit a copy of this statement to the Dean and the Secretary, and shall arrange for Service of a copy upon Respondent.

§ 8.05   Report of Findings.  After a hearing and deliberations, the Subcommittee shall adopt written findings which shall include a summary of the facts found by the Subcommittee, a statement specifying which Violation(s) charged the Subcommittee finds to have been committed by Respondent, and a statement specifying the Sanction imposed. Any special aggravating, mitigating or extenuating circumstances found by the Subcommittee may also be stated. The findings shall be signed by all Members of the Subcommittee subscribing thereto; concurring or dissenting views may but need not be included. The Chair shall transmit a copy of the findings to the Dean and the Secretary, and shall arrange for Service of a copy upon Respondent together with a copy of the Rules of the Senate Committee on Student Discipline relating to appeal procedures.

§ 8.06   Public Notice.  After Respondent has been served with a copy of the findings or dismissal statement and, in the event of findings adverse to Respondent, after all University appeal procedures have been completed, the Subcommittee shall prepare and publish for the information of the College of Law community a public notice regarding the action taken. This notice shall not identify the Respondent by name, but shall specify: (1) the nature of each charged Violation disposed of; (2) whether the disposition was (a) dismissal, (b) a finding that the Violation was proved, or (c) a finding that the Violation was not proved; and (3) any Sanction imposed. This notice may also summarize the specifications of each charged Violation disposed of, explain the basis of any dismissal, and summarize findings regarding whether the charged Violation(s) were proved.

(j) Notice. Notice is deemed given on the first business day after mailing, or immediately when hand delivered or sent to the recipient's email address.

(k) ODEA. The Office of Diversity, Equity, and Access.

(l) OSCR. The Office for Student Conflict Resolution.

(m) Panel. A group of three members of the Subcommittee on Sexual Misconduct appointed by the Executive Director or their designee to adjudicate a case involving sexual misconduct. A Panel includes at least one faculty member and one student.

(n) Respondent. A person who is alleged to have violated the Student Code.

(o) Respondent Advocate. A person made available by the university, upon request by the respondent, to assist with any of the following:

    (1) Informing the respondent about the university student disciplinary system, how it operates, and the role that the respondent, the complainant, and advisors play in the process

    (2) Accompanying the respondent to meetings with staff in the Office for Student Conflict Resolution and the Office of the Dean of Students

    (3) Acting as the respondent's advisor in any disciplinary proceeding

(p) SCSD. The Senate Committee on Student Discipline.

(q) Statement of Fact. A list of the conclusions reached by an adjudicator on the basis of the information collected during an investigation.

(r) Subcommittee on Sexual Misconduct. The group of faculty, staff, and students trained to adjudicate cases that include allegations of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence. This group is selected by OSCR staff and approved by the SCSD.

(s) Witness. A person who may have relevant information regarding the facts of the case.

## Section 2: Investigation

(a) Intake and Review.

    (1) OSCR will oversee investigations of allegations against students. Once notified of allegations covered by this appendix, the Executive Director will appoint a team of no fewer than two investigators to conduct the investigation. One investigator will be designated as the Lead Investigator and must be present during all interviews.

    (2) The Lead Investigator and at least one other investigator will first interview any participating complainants to determine the precise nature of the allegations. All complainants have the opportunity to request that the investigation begin promptly and proceed in a timely manner.

    (3) The Lead Investigator will then determine whether the allegations, if substantiated, would violate the Student Code. If not, the Lead Investigator will notify the complainant of their conclusion in a timely manner and conclude the investigation. If so, the investigation will continue.

(b) Charge Notice. The Lead Investigator will issue a written charge notice that informs the respondent of the approximate date, location, and type of incident, as well as of the section(s) of the Student Code that the respondent is alleged to have violated.

believed relevant for sanction determination. Final responses must be submitted no later than five business days after the revised report has been made available. The investigators maintain the right to redact any prohibited information submitted in a final response.

(e) Final Investigative Report. The investigators will complete a final investigative report, which will include the following:

    (1) The revised investigative report.

    (2) Any final responses from the respondent and the complainant.

    (3) A proposed statement of fact.

    (4) Proposed responsibility determinations.

    (5) A rationale for the finding of fact and responsibility determinations.

## Section 4: Panel Adjudication

(a) Appointment of Panel. The Executive Director or their designee will appoint a Panel composed of three members of the Subcommittee on Sexual Misconduct, a pool of trained university faculty, students, and staff members. Before the membership of this Panel is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the Subcommittee on Sexual Misconduct. At this point, the respondent and complainant may challenge the objectivity of any person on this list. Such a challenge must be based on a prior relationship that may result in substantial bias. The Executive Director or their designee will consider these challenges when making a final decision regarding Panel membership. At least one faculty member and one student must be appointed to each Panel. If the respondent is a graduate student, the Panel will include a representative of the Graduate College as a non-voting member. Once appointed, voting Panel members will select a faculty member to serve as Chair. Prior to serving on a Panel, all Panel members will have received appropriate annual training, developed in consultation with the university's Title IX Coordinator, on sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, domestic violence, and the physiological and psychological effects of trauma.

(b) Panel Review of Investigative Report. Panel members will have five business days to review the Final Investigative Report.

(c) Panel Questioning. After the Panel members have reviewed the Final Investigative Report, the Panel will meet with and question the investigators. The Panel will be advised by the Executive Director or their designee, who will not be allowed to vote. If the Chair determines that the Panel requires additional guidance, the Panel may consult with ODEA or the Office of University Counsel.

(d) Panel Deliberation. When the Panel members have finished questioning the investigators, the Panel will excuse the investigators and enter into closed deliberation. Non-voting members of the Panel, including the Executive Director or their designee, will remain for deliberation. The Panel will make its decisions by simple majority vote and will apply the preponderance of the information standard when deciding on a statement of fact and determining responsibility. The Panel may:

    (1) Accept the recommendations and rationale of the investigators set forth in the Final Investigative Report.

    (2) Reject the recommendations of the investigators and make its own determinations regarding the facts, responsibility, and rationale.

(3) Determine that additional information must be collected before a decision can be reached. In such a case, the Panel will specify the information to be collected, and OSCR will notify the respondent and the complainant that the Panel will be reconvened. Once the investigators gather the requested information or determine that it is unavailable, both the respondent and the complainant will have five business days to review any new information and provide written responses. The Panel will set a tentative date for their next meeting based on the nature of the requested information. To facilitate a timely resolution to the process, the Panel may only make this request once.

(e) Sanctions. If the Panel finds that the respondent has violated the Student Code, the Panel will decide upon an appropriate formal sanction. The Panel may also issue educational sanctions and apply additional conditions or restrictions set forth in §2.04(c) of the Student Disciplinary Procedures. The Panel must provide a written rationale for all sanctions, conditions, and restrictions.

(f) Notice of Action Taken. OSCR will provide written notification of the Panel's decision, including rationales, to both the respondent and the complainant by the end of the next business day. This notification will also include information regarding the respondent's and complainant's right to appeal the Panel's decision.

## Section 5: Appeal Procedures

(a) Who May Appeal. Both the respondent and the complainant have the right to appeal the Panel's decision. The Dean of Students may also appeal a decision, but only if she/he believes that the decision was manifestly unfair to the university community or was not in conformity with prescribed university procedures.

(b) Grounds for Appeal. The appellant must base the appeal exclusively on one or more of the following grounds:

(1) The investigation and/or Panel adjudication was not conducted fairly or in conformity with prescribed university procedures. The appellant must show that any alleged bias or deviation from the Student Disciplinary Procedures, including this appendix, is likely to have adversely affected the outcome of the original hearing.

(2) Any sanctions imposed by the Panel were not appropriate for the violation(s) for which the student was found responsible.

(3) New, substantive information, sufficient to alter the decision, exists and was clearly not available at the time of the original investigation and/or Panel adjudication.

(c) Notice of Appeal. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the Panel's decision. The appellant may submit a written request to extend this deadline, and upon showing good cause, the Executive Director may grant such an extension.

(d) Content of Notice of Appeal. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and outcome requested. The appellant must submit the Notice of Appeal in writing and with the appellant's signature. Oral appeals are not accepted. If only one party submits a Notice of Appeal, OSCR will notify the other party of the submission and grant the other party access to all submitted documentation. The other party will have five business days from the date of notification to submit a written response to be considered as part of the

appeal. If both parties submit a Notice of Appeal, both parties will be informed, granted access to all submitted documentation, and given five business days to submit a written response.

(e) Sanction Held in Abeyance Pending Appeal. The effective date of any formal or educational sanction will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the committee reaches a decision on the appeal; however, the Executive Director has the discretion to require that certain behavioral restrictions, such as no contact directives, remain in place pending the appeal.

(f) Appellate Review.

   (1) The Chair of the SCSD or their designee will identify two faculty members of the SCSD and one student member of the SCSD to consider any appeals of the Panel's decision. These individuals will constitute the Appeal Committee. Before the membership of this Appeal Committee is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the SCSD. At this point, the respondent and complainant may challenge the objectivity of any person on this list. Such a challenge must be based on a prior relationship that may result in substantial bias. The Chair of the SCSD or their designee will consider these challenges when making a final decision regarding Appeal Committee membership. Prior to serving on an Appeal Committee, all members will have received appropriate annual training, developed in consultation with the university's Title IX Coordinator, on sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, domestic violence, and the physiological and psychological effects of trauma. If the Chair of the SCSD does not serve on the Appeal Committee, she/he will select one of the faculty members to chair the Appeal Committee.

   (2) The Appeal Committee will review all materials that were provided to the Panel, the Notice(s) of Appeal, any documentation provided in support of the Notice(s) of Appeal, and any responses to the Notice(s) of Appeal in a timely manner.

   (3) The Appeal Committee will meet to consider the appeal and will be advised by the Executive Director or their designee, who will not be allowed to vote. Neither the respondent nor the complainant will be allowed to attend the deliberations of the Appeal Committee, but the Executive Director may be present or authorize other non-voting parties, such as University Counsel, to be present in an advisory role.

(g) Deliberations. The Appeal Committee will decide by simple majority vote whether the appellant has met any of the grounds for appeal. The decision of the Appeal Committee is final and binding on all parties.

   (1) Authority of the Appeal Committee. If the Appeal Committee determines that one of the three grounds for appeal has been met, the Appeal Committee may:

   (2) Affirm the Panel's decision.

   (3) Reverse the Panel's decision and dismiss the case.

   (4) Remand the case to the original Panel or a new Panel for a new adjudication process.

   (5) Increase or decrease any sanctions imposed.

(h) Notice of Decision. OSCR will communicate the decision to the respondent and the complainant within five days of the date the Appeal Committee reached its decision.

**Section 6: Petitions to the Subcommittee on Sexual Misconduct**

(a) Persons who have been dismissed from the university for disciplinary reasons may petition for permission to re-enter the university.

(b) A petitioner is not a member of the university community. Petitioners must demonstrate that they are fit to return to the academic community, not simply that they have completed all listed sanctions in the dismissal letter.

(c) In order for a petition to be considered:

    (1) The petition must be filed before November 1 for fall petition requests and before March 15 for spring requests;

    (2) The petitioner must provide documentation that all educational requirements and conditions have been fully and completely satisfied.

(d) This petition should minimally include:

    (1) A description of the incident(s) for which the sanction was assigned and the responsibility the student had in the violation;

    (2) A description of the behavioral changes the petitioner has made since the incident(s) and completion of the sanction(s);

    (3) The petitioner's anticipated graduation date and the career and/or additional education plans he/she has following graduation.

(e) The Executive Director or their designee will appoint a Panel composed of three members of the Subcommittee on Sexual Misconduct to hear the petition. At least one faculty member and one student must be appointed to the Panel. If the respondent is a graduate student, the Panel will include a representative of the Graduate College as a non-voting member. Once appointed, voting Panel members will select a faculty member to serve as Chair.

(f) Both the petitioner and the complainant will be invited to appear in person before the Panel to discuss the petitioner's request for readmission in ten-minute statements. All participants may be accompanied by an advisor to the petition hearing, but this advisor may not actively participate in the petition hearing. Both petitioners and complainants have the option of participating in the process over the phone, by video conference, or in person. Any witness testimony may be presented by written statement only.

(g) The complainant and the petitioner will present their statements to the Panel separately, with the complainant being invited to present their statement first.  Neither the complainant nor the petitioner will be present while the other is making their statement.

(h) Petitions to the subcommittee may not be appealed by the petitioner or the complainant and are not audio recorded.

(i) The Panel will make its decisions by simple majority vote.

(j) The Panel may:

    (1) Deny the petition and assign a new date and new requirements for the next consideration of the petition;

    (2) Grant the petition and allow the petitioner to pursue the readmission process.

(k) Petitioners granted permission to pursue readmission are assigned the formal sanction of Conduct Probation until Graduation, unless a Panel determines strong mitigating factors warrant a lesser

**APPENDIX D**

**Student Conduct Protocol for Allegations of Sexual Misconduct, Including Sexual Harassment, Sexual Assault, Sexual Exploitation, Stalking, Dating Violence, and Domestic Violence**

In cases that include an accusation of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence, against a student, the following provisions shall also apply. In the event of a conflict between this Appendix and Article II, this Appendix shall prevail.

**Section 1: Definitions**

    (a) Advisor. A person who provides a respondent or a complainant support, guidance, or advice. Respondents and complainants may be accompanied by an advisor of their choosing to any meeting with Office for Student Conflict Resolution (OSCR) staff, provided the advisor does not also serve as a witness. Advisors may not directly participate in the dialogue between the advisees and OSCR staff.

    (b) Complainant. A person who claims to have been or is perceived to have been a victim of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence.

    (c) Complainant Advocate. A person made available by the university, upon request by an complainant, to assist with any of the following:

        (1) Referring the complainant for appropriate medical and/or counseling services

        (2) Referring the complainant to the appropriate law enforcement agency

        (3) Assisting the complainant in the presentation of their complaint to law enforcement agencies

        (4) Informing the complainant about the university student disciplinary system, how it operates, and the role that the respondent, the complainant, and advisors play in the process

        (5) Accompanying the complainant in meetings with staff in the Office for Student Conflict Resolution and the Office of the Dean of Students

        (6) Acting as the complainant's advisor in any disciplinary proceeding

        (7) Working with the complainant and continuing to consult with the complainant after the disciplinary process has been completed

    (d) Business Day. Any weekday when university offices are open for official business.

    (e) Educational Sanction. An assignment, requirement, or task educationally related to the violation.

    (f) Director. The Director of the Office for Student Conflict Resolution or their designee.

    (g) Formal Sanction. A disciplinary status imposed by the university in response to a violation.

    (h) Lead Investigator. The investigator who is primarily responsible for conducting an investigation and who must be present at all meetings with the respondent, complainant(s), and witnesses.

    (i) Investigator. A person responsible for investigating allegations of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence, on behalf of the university.

formal sanction. The Panel may also issue behavioral restrictions or educational sanctions that they deem appropriate.

(l) The Panel's decision to grant the petitioner the right to pursue the readmission process does not abrogate the right of any college to deny readmission on the basis of scholarship.

## Section 7: Role of the Title IX Coordinator in the Student Discipline System

(a) Advisory Role of the Title IX Coordinator. The Executive Director and OSCR investigators may seek advice from the Title IX Coordinator or their designee regarding investigations, possible interim measures or other remedies, training, and compliance with Title IX and other federal, state, or local laws and regulations.

(b) Review by Title IX Coordinator. The Title IX Coordinator or their designee will review all sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence cases upon their completion to determine whether the university needs to take additional action that was not available through the disciplinary process.

## Section 8: Privacy

(a) Any proceeding, meeting, or hearing held as part of the process described in this Appendix will protect the privacy of the participating parties and witnesses.

(b) The university will not disclose the identity of the respondent or any complainants, except as necessary to investigate the allegations or to implement interim protective measures and accommodations or when provided by state or federal law.