E-FILED
Tuesday, 19 June, 2018 10:58:13 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 18-2101 |
| | ) ) | **JURY TRIAL DEMANDED** |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and TARIQ KHAN | ) ) ) ) | |
| Defendants. | ) ) | |
| | ) ) | |
| TARIQ KHAN, | ) ) | |
| Counterclaimant, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON, | ) ) ) | |
| Counter-Defendants, | ) ) | |

## DEFENDANT TARIQ KHAN'S ANSWER AND COUNTERCLAIMS

NOW COMES the Defendant, TARIQ KHAN, through his attorney, Ellyn J. Bullock of Solberg & Bullock, LLC, and under Federal Rules of Civil Procedure 8, 12 and 13, and under all other applicable Rules, and Answers and Counterclaims as follows:

1.      The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. That marketplace depends on free, vigorous and non-violent debate among students and with faculty. That marketplace suffers when universities or university officials engage in actions and enforce policies which restrict and chill the expressive and journalistic activities of students.

**RESPONSE:**

**Neither Admit nor Deny as this is a matter of opinion which requires neither admission nor denial from Defendant Khan.**

2.      This case arises from the actions and policies of the University of Illinois at Urbana-Champaign (the "University") and the public officials employed by the University that have restricted, and continue to restrict, Plaintiffs' expressive rights.

**RESPONSE:**

**Neither Admit nor Deny insofar as allegations relate to Co-Defendants.  Deny that Defendant Khan has any observation or information relating to any restriction of Plaintiffs' expressive rights.**

3.      This action is premised on the United States Constitution, and particularly the First, Fifth and Fourteenth Amendments thereto, and concerns the denial of the Plaintiffs' fundamental rights to free press, free speech, and due process.

**RESPONSE:**

**Deny that Defendant Khan has participated in any denial of Plaintiffs' fundamental rights.**

4.      The actions of the Defendants have deprived and will continue to deprive the Plaintiffs and other students of their paramount rights and guarantees under the Constitution.

**RESPONSE:**

**Deny that Defendant Khan has deprived Plaintiffs of their paramount rights or guarantees.**

5.      Each and every act of Defendants alleged herein, except those actions of Tariq Khan acting as an individual and not as an employee and agent of the University, was committed by Defendants, each and every one of them, under the color of state law and authority and as agents of the University.

**RESPONSE:**

**Deny that Defendant Khan ever acted under color of state law or as Agent of the University.**

## JURISDICTION AND VENUE

6.      This civil rights action raises federal questions under the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**RESPONSE:**

**Admit the Citations to the law.**

7.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

**RESPONSE:**

**Admit.**

8.      This Court has supplemental jurisdiction over the related state law claims because they are substantially related to the federal law claims. 28 U.S.C. § 1367.

**RESPONSE:**

**Admit.**

9.      This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

**RESPONSE:**

**Admit the Court's authority.  Deny the Plaintiffs right to any damages.**

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

**RESPONSE:**

**Admit.**

## PLAINTIFFS

11.     Plaintiff Andrew Minik ("Minik") is a senior at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Minik is attached hereto as **Exhibit A**.

**RESPONSE:**

**Upon information and belief Andrew Minik is as alleged and is as depicted.**

12.     Plaintiff Joel Valdez ("Valdez") is a freshman at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Valdez is attached hereto as **Exhibit B**. While Valdez is not currently enrolled in classes due to the reduction of his financial aid package, he remains an admitted student and intends to complete his education at the University.

**RESPONSE:**

**Upon information and belief Joel Valdez is as alleged and is as depicted.**

13.     Plaintiff Blair Nelson ("Nelson") is a freshman at the University and a correspondent for Campus Reform, a journalistic organization that reports on bias and abuse in higher education. A photograph of Nelson is attached hereto as **Exhibit C.**

**RESPONSE:**

**Upon information and belief Blair Nelson is as alleged and is as depicted.**

14.     The individual plaintiffs are students and campus journalists who seek to report on, engage with, discuss, and debate political, religious, social, cultural, and moral issues on and around the University campus in a non-violent way. They hold mainstream conservative views, support fiscal responsibility, free markets and limited government and reject violence, white supremacy and white nationalism.

**RESPONSE:**

**Deny that Plaintiffs' views are mainstream conservative views and deny that Plaintiffs reject violence, white supremacy and white nationalism.**

15.     Campus Reform, the organization for which they are correspondents, is a watch dog to the nation's higher education system exposing bias and abuse on college campuses, and reporting on the conduct and misconduct of university administrators, faculty, and students. It holds itself to rigorous journalism standards and strives to present each story with accuracy, objectivity, and public accountability.

**RESPONSE:**

**Deny that Plaintiffs hold themselves to rigorous journalism standards.**

## DEFENDANTS

16.     Defendant Timothy Killeen ("Killeen") is, and was at all times relevant to this Complaint, the President of the University of Illinois, a public university organized and existing under the laws of the State of Illinois, and, with respect to the allegations herein, was acting as an agent of the University.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies any matter as to Co-Defendants.**

17.     Defendant Robert J. Jones ("Jones") is, and was at all times relevant to this Complaint, the Chancellor for the University's Urbana campus and Vice-President of the three-campus system and, with respect to the allegations herein, was acting as an agent of the University.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies any matter as to Co-Defendants.**

18.     Defendant Rony Die ("Die") is, and was at all times relevant to this Complaint, an Assistant Dean of Students of the University of Illinois at Urbana-Champaign and, with respect to the allegations herein, was acting as an agent of the University.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies any matter as to Co-Defendants.**

19.     Upon information and belief, Defendant Tariq Khan ("Khan") is, and was at all times relevant to this Complaint, a Ph.D. student at the school and an employee and agent of the University. He was an instructor at the University during at least the 2016 – 2017 school year.

**RESPONSE:**

**Admit Defendant Khan is a Ph.D. student.  Deny Defendant Khan was an employee or agent of the University at any time relevant to this Complaint.**

20.     Khan is actively involved in public campus political activities and demonstrations.

**RESPONSE:**

**Admit.**

21.     Khan is affiliated with a number of extreme left-wing groups including the Black Rose Anarchist Federation, an "Antifa" group advocating revolution and expressly justifying political violence.

**RESPONSE:**

**Deny.**


22.     The University of Illinois at Urbana-Champaign is part of a three-campus system and receives funding from the State of Illinois to operate.

**RESPONSE:**

**Admit.**


## FACTUAL BACKGROUND

23.     The University of Illinois is a public university with three campuses — Urbana-Champaign, Chicago, and Springfield— that is organized and exists under the laws of the State of Illinois and receives funding from the State in order to operate.

**RESPONSE:**

**Admit.**


24.     As an institution, the University is governed by its Board of Trustees which delegates certain authority and responsibilities to the individual Defendants in this matter.

**RESPONSE:**

**Deny that the University Board of Trustees delegates any authority or responsibility to Defendant Khan.**

25.    The Students are all students at the Urbana-Champaign campus.

**RESPONSE:**

**It is unclear which students are being referred to.  Defendant Khan admits he**

**is a student at the University of Illinois Urbana-Champaign Campus.**

26.    The Students engage in constitutionally protected expressive and journalistic activities including reporting on and making photographic and video recordings of campus activities including, but not limited to, the activities of left-wing campus organizations and activists, and posting on social media.

**RESPONSE:**

**It is unclear which students are being referred to.  Defendant Khan can neither**

**Admit nor Deny.  Defendant Khan Denies that Plaintiffs were only engaged in**

**Constitutionally protected expressive journalistic activities.**

<u>Plaintiffs Nelson and Valdez Are Assaulted by</u>
<u>Defendant Tariq Khan on November 16, 2017</u>

27.    On November 16, 2017, Valdez and Nelson, along with other students, went to observe and report on an "anti-Trump" rally organized by the Black Rose group, and to otherwise engage in public discourse in a non-violent way. Nelson and Valdez made no attempt to interfere with, shutdown, or silence the speakers at the Black Rose demonstration, including Khan.

**RESPONSE:**

**Deny.**

28.     During the course of the rally, Khan, who is or was an instructor or graduate assistant employed by the University as well as a Ph.D. student at the school, made the following remarks while using a bullhorn and speaking at the demonstration:

> F@#K Donald Trump. F@#k you guys [to Plaintiffs Valdez, Nelson] . . . . I'm going to go tear down one of your flyers right now.

**RESPONSE:**

**Admit as to partial statement.  Khan also said "why don't you call the Coast Guard" in an attempt to treat Plaintiffs' interruptions in a humorous manner since Illinois is a landlocked, non-coastal state.**

29.     In response to Khan's threat, Valdez responded: "No one is scared of you 50 year old man. Don't you have kids to look after."

**RESPONSE:**

**Deny that Defendant Khan Threatened anyone.  Admit Valdez's response. Deny that Defendant Khan is 50 years old.**

30.     Khan then commenced into a verbal tirade falsely accusing Valdez and Nelson of "threatening his kids." Khan also lunged at Nelson, who was filming the incident.[1]

**RESPONSE:**

**Deny that Defendant Khan falsely accused Valdez or Nelson.  Deny that Defendant Khan lunged at Nelson.**

---

[1] A video of the altercation can be viewed at https://www.campusreform.org/?ID=10171.

31.     Khan proceeded to threaten and assault Valdez and violently grabbed Valdez's phone from his hand. Neither Valdez nor Nelson made any attempt to strike or assault Khan in any way even when Khan violently approached Valdez until he was in physical contact with Valdez, chest to chest, with Khan screaming in Valdez's face.

**RESPONSE:**

**Deny.**


32.     The altercation concluded after Khan shattered Valdez's phone on the ground and left the scene.

**RESPONSE:**

**Deny that Defendant Khan shattered Valdez's phone.  Admit Defendant Khan left the scene.**


33.     The police were called and arrived after Khan had fled the scene. Upon information and belief, he later turned himself in and was arrested for criminal damage to property and, upon information and belief, his criminal matter is still pending.

**RESPONSE: Deny that Defendant Khan fled the scene.  Deny that Defendant Khan was arrested.  Admit that Defendant Khan cooperated with the police.  Deny that any criminal matter is pending against Defendant Khan.  Deny that Khan was convicted of any criminal damage to property or any other crime.**

34.     Minik was not present during the incident but reported on it on November 18, 2017. Minik's article can be found at www.campusreform.org/?ID=10171 and is also attached as **Exhibit D**.

**RESPONSE: Admit Minik made the report in Exhibit D.  Deny that the contents are accurate.**

<div align="center">

The University's Unconstitutional
Disciplinary Actions against the Students

</div>

35.     Upon information and belief, the University has not taken any disciplinary action whatsoever against Khan, the aggressor in the incident, but instead Die, acting on behalf of the University, conspired with Khan to impose discipline on the victims of his assault and upon Minik for accurately reporting on the assault and Khan's other activities on campus.

**RESPONSE:**

**Deny.**

36.     The University, acting by and through Die, has taken disciplinary actions, which are still in effect, against each of the Students, even Minik who was not even at the November 16, 2017 rally and was guilty only of writing, accurately, about it.

**RESPONSE:**

**Neither Admit nor Deny as to any disciplinary actions taken by the University against students other than Defendant Khan.  Deny that Minik wrote accurately.**

37.     On December 12, 2017, the University, with no notice or hearing, issued each of the Students restraining orders. **Exhibit E, No Contact Orders**, which effectively ban the Students from observing, reporting on or videoing Khan or his activities on campus.  Nor could the Students, in the exercise of proper journalistic ethics, even contact Khan for his reaction and comment prior to publishing stories about him to assure balanced reporting. Upon information and belief, the video of the incident showing Khan to be the aggressor and Valdez and Nelson to be innocent, was known to Die before Die issued the restraining orders rendering the decision to impose the orders, at a minimum, arbitrary and capricious.

**RESPONSE:**

**Deny issuance of restraining orders.  Deny that the No Contact Directives were arbitrary and capricious.  Admit Defendant Khan was issued a No Contact Directive by University Co-Defendants.**

38.     On December 14, 2017, Minik met with Die to discuss the restraining order. At that meeting, Die informed Minik that the restraining order against him was requested by Khan as a result of the Campus Reform article Minik had written. Minik was instructed that the restraining order was a "probationary measure" to ensure that he would not contact Khan. In addition, Die recommended that if Minik and Khan happened to be at the same public event, the second to arrive should leave. **Exhibit F, Dec. 14 Email**.  As set forth below, however, Die later told Nelson that the No Contact Orders did not apply to "public places, at all".

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Minik and Co-Defendants.**

39.     Die also told that Minik that if he wanted "the situation to improve" he should stop writing about Khan, id., apparently threatening Minik that, if Minik did not stop writing about Khan, Die would continue to impose discipline upon Minik.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Minik and Co-Defendants.**

40.     Finally, Die threatened Minik that a violation of the restraining order could result in expulsion from the University. *Id*.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Minik and Co-Defendants.**

41.     On December 15, 2017, Minik followed up with Die via email concerning claims made by Khan and his wife two days earlier on December 13, 2017. Khan, who was not present at the time, claimed that Minik and a friend entered a building generally open to the public to harass Khan's wife with whom Minik was not then acquainted, and would not have recognized and who may or may not have ever been present in the building. Minik provided Die an audio recording demonstrating that Khan and/or his wife with Khan's participation had fabricated the claims and explained that they were attending a 3D printing lab presentation in an area of the building remote from the event Khan's wife was supposedly attending and had no idea what other events were scheduled or who would be in attendance. **Exhibit G, Dec. 15 Email**.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between**

14

**Minik and Co-Defendants.  Defendant Khan denies fabrication of any claim.**

42.     Because of the restraining order, the building director ordered Minik to leave the premises and he complied. As a result, Minik was prevented from attending the presentation open to other University students not subjected to discipline.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Minik and third parties.**


43.     On January 16, 2018, Die contacted Minik by email (**Exh. H**) concerning a Facebook post in which Minik sarcastically "tagged" Khan on a meme of Donald Trump stating "Get him out of here . . . beat the shit out of him . . . I'll pay the legal fees." Defendant Die subsequently communicated with Minik that he understood it was a joke and no discipline was appropriate against Minik. Nevertheless, Die's email to Minik was calculated to inform Minik and the other Students that they, and even their social media posts, were being scrutinized far more than would be possible for all active students at the University in an attempt to further chill the Students' expressive and journalistic activities.

**RESPONSE:**

**Defendant Khan Admits Minik tagged Khan on photo of Donald Trump threatening "Get him out of here . . . beat the shit out of him . . . I'll pay the legal fees." as depicted in Exhibit H.  Defendant Khan denies that Minik's intention was sarcasm as opposed to malice or threat of violence.  Defendant Khan denies that any protection offered Khan by Co-Defendants from violence or threat of violence was made with intent to chill expressive or journalistic activities.**

44.     On February 26, 2018, Nelson received an email from the University alleging that

he violated the restraining order and sections 1-302.0.1 and 1-302.g of the Student Code which

prohibit, in relevant part:

> "failing to comply with reasonable directions of a
> member or agent of the University . . ." (Section (g))
>
> "(1) failure to obey the directive of a disciplinary
> body or University officials in performance of their
> duties (Section (o)).
> **Exh. I, Feb. 26 Nelson Email.**

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Nelson**

**and Co-Defendants.**


45.     These allegations stemmed from a protest Nelson attended at the State Farm Center

before and during a basketball game against Purdue University. While peacefully filming the

public protest for Campus Reform, supporters of Khan approached Blair and accused him of

violating the restraining order simply because he was in the same public space.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between**

**Nelson and third parties.**

46.     In a meeting between Die and Nelson, Die informed Nelson that the no contact order did not apply to public places and that he would not proceed further with discipline, but also did not rescind the February 26 email or apologize to Nelson for issuing the same without cause. As with the January 2018 Die email to Minik it served as a further warning and threat against the Students chilling their expressive and journalistic activities.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to communications between Nelson and Co-Defendants.**

47.     Nor did Die insure that Khan and his supporters were aware of the limitations of the no contact order because on February 27, 2018, Nelson attended and reported on another protest in a public place by a graduate teachers union of which Khan is a member. Once again, Khan supporters approached Nelson and accused him of violating the restraining order.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Nelson and Co-Defendants.    Defendant Khan neither Admits nor Denies communication between Nelson and third parties.**

48.     Nelson has never had any contact with Khan since the initial altercation.

**RESPONSE:**

**Deny.**

49.     The restraining orders issued to the Students cannot be appealed or contested, nor do they permit a hearing or an opportunity to be heard before going into effect.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies.**

50.     Upon information and belief, the University, and defendants Killeen and Jones, do not provide any criteria to its officials to use when deciding whether to issue a restraining order.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies.**

51.     The University, and defendants Killeen and Jones, grant unbridled discretion its officials to determine whether to issue a restraining order.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies.**

52.     The restraining orders in this case were not used as a shield to protect student victims but as a sword to chill and suppress the Students' journalistic and expressive activities on campus.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies as to any orders issued against any students other than himself.  Defendant Khan Denies that the No Contact Directive issued against himself was used as a shield and also Denies that it was used as a sword.**

53.     The restraining order, and Die's subsequent actions in beginning disciplinary actions in cases that were clearly unjustified and then not proceeding with them, and in issuing contradictory oral interpretations thereof, cause the no contact orders to be vague and ambiguous and could trap the Students into arguably violating the written orders when relying upon the contradictory oral interpretations of Die.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

54.     On February 26, 2018, Valdez received an email from Die in which he, on behalf of the University and with no hearing or opportunity to be heard, confront witnesses or present evidence or arguments, determined that Valdez had violated the student code of conduct. Die's finding was that three months earlier, on November 21, 2017, Valdez "liked" a post from a friend of Valdez residing in Chicago who commented that he could "beat his ass for you bro [Emoji with smiley face puffing air]" — a reference to Khan. Valdez replied sarcastically with a Facebook heart icon stating "Do it ASAP." **Exh. J, Feb. 26 Valdez Email**.  The post and Valdez's "like" would not, in the ordinary course, be viewed by anyone other than "Facebook friends" of Valdez and his Chicago friend and could only be found by Khan or Die if they had intentionally been looking for a reason to discipline Valdez.

**RESPONSE:**

**Defendant Khan Admits that Valdez liked a post referring to Khan that threatened to "beat [Khan's] ass" as depicted in Exhibit J.  Defendant Khan Admits Valdez responded "Do it ASAP."   Defendant Khan Denies that Valdez's intention was sarcasm as opposed to hate or threat of harm.**

**Defendant Khan Denies conspiring with Die and/or intentionally looking for a reason to discipline Valdez.   Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

55.     Valdez's comment was constitutionally protected speech and made prior to the restraining order.

**RESPONSE:**

**Deny.**

56.     Die, acting for the University, nevertheless, found that Valdez violated section 1-302.r of the Student Code which prohibits "[i]nciting, aiding, or encouraging others to engage in a behavior which violates the Student Code." Since Valdez's friend was not a student at the University he could not engage in conduct which violates a code that does not apply to him.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

57.     Die, acting for the University, issued Valdez a "censure" and required him to write a 1,000 word paper reflecting on his actions and directing that its content, rather than containing a true reflection of Valdez's views, include statements that, in effect, falsely admit his alleged misconduct and prohibit statements that justify his conduct or its constitutionally protected nature. Furthermore, the instructions, much as the question "When did you stop beating your wife", imply that any answer must admit that there were "negative outcomes" associated with the conduct even though, under the circumstances, there were none.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

58.     The essay assignment under threat of disciplinary action was an unconstitutional attempt to compel Valdez's written communication of things with which he did not agree and required false admissions of improper conduct which could be used against him by Die and the University and could potentially include a false admission by Valdez that might be used against him in a criminal prosecution even though his activities were clearly constitutionally protected.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

59.     Valdez was subjected to further discipline for failing to comply with Dies' unconstitutional order as shown on **Exhibit K, March 19 Email**, attached hereto, which order is still in effect, and remains subject to further discipline.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

60.     On April 04, 2018, Nelson was also notified via e-mail from Defendant Die that he too was now subject to a disciplinary proceeding based on false allegations the Office for Student Conflict Resolution had received falsely claiming that he had violated the restraining order at multiple public events and that if proven, the University would subject him to further discipline

21

under Student Code/1-302.o.1 and Student Code/1-302.g. This e-mail is contrary to Die's statement to Nelson that the restraining order did not apply to public events. **Exhibit L, April 4 Email.**

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

61.    Nelson's disciplinary hearing is scheduled for Friday, April 13, 2018, at 1:00 p.m. in Room 344 of the Student Services Building, 610 E. John St., Champaign, IL.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.**

62.    Killeen and Jones knew or should have known of the unconstitutionally vague and overbroad nature of the policies, codes and practices of the University as set forth above and nevertheless continued them in effect and permitted Die and other agents of the University to enforce them.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies.**

63.     Upon information and belief, Killeen and Jones knew or had reason to know, that Die was unconstitutionally enforcing the University's policies, codes, and practices as set forth above.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies.**

Specific Violations of the Students' Constitutional Rights

64.     The University, through Die, has taken disciplinary actions against the Students, which are still in effect and ongoing, simply because they engaged in protected journalistic and speech activities, in Valdez's case, even though he was the victim of Khan's assault and in Minik's case simply because he reported on the incident.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.  Defendant Khan Denies that he assaulted Valdez.**

65.     Furthermore, Minik has been issued a restraining order even though he was not even present during the altercation with Khan. Minik's only role was to write a truthful article reporting on the altercation. Yet, at the behest of Khan, the University, through Die, has disciplined Minik restricting and chilling his journalistic and speech activities.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.  Defendant Khan Denies that**

**Minik's article was truthful.  Defendant Khan Denies that the University Co-Defendant acted at his behest to discipline Minik or to restrict or chill journalistic and speech activities.**

66.     The University has prohibited Minik from engaging Khan in any form of discourse in perpetuity, or at least so long as Minik is a student. Even more, Minik was removed from the Urbana Independent Media Center and prohibited from attending a talk on 3D printing on account of the restraining order. Minik has also been cited by Die for engaging in protected speech on social media. The University has even gone as far as to threaten Minik that, "if he wants this to go away" he should no longer write about Khan and leave any public place at which Khan is present.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies communications between Co-Defendants and other students not himself.  Upon information and belief Minik was not prohibited by any Defendant or third party from attending a talk on 3D Printing because on information and belief there was no talk on 3D Printing scheduled for the time and day alleged by Plaintiffs in their Complaint.**

67.     Minik's journalistic and freedom of speech activities have been chilled and his ability to engage in campus activity restricted and chilled by force of the University's baseless restraining order.

**RESPONSE:**

**Deny.**

24

68.     Valdez and Nelson have also had their journalistic and speech activities restricted simply because they sought to report on, video and engage in public discourse at a public rally. Although Khan was the aggressor, the University has retaliated against Valdez and Nelson with unfounded restraining orders.

**RESPONSE:**

**Deny.**

69.     As a result, Nelson, as part of what appears to be a conspiracy by Die and Khan to harass the Students and chill their First Amendment rights, has been accused of violating his restraining order simply for attending public protests to report on and document the events, and Valdez has been sanctioned for protected activity on social media.

**RESPONSE:**

**Defendant Khan denies conspiring with any Co-Defendant at any time.**

70.     The Students cannot speak freely, report on or even attend certain events, or walk about the campus without fear of potentially violating their respective restraining orders.

**RESPONSE:**

**Deny.**

71.     The Students desire to engage in peaceful journalistic and expressive activities on campus.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies desires of any students other than himself.**

72.     The Students have been targeted with these restraining orders and Khan given a pass based on their respective viewpoints and political views.

**RESPONSE:**

**Deny.**


73.     As a result of the restraining orders, the Students are subject to a range of ongoing disciplinary actions, which may result in expulsion, which chills their engagement in protected journalistic and expressive activities.

**RESPONSE:**

**Deny.**


74.     The restraining orders are in effect a "double secret probation" kind of speech code exercised at Dean Die's discretion, involving multiple and contradictory interpretations, leaving them no ability to effectively determine the conduct for which they could be disciplined or to conform their conduct to the restraining orders.

**RESPONSE:**

**Deny.**


75.     The provisions of the Student Code they are accused of violating, **Exhibit M**, are so vague and overbroad as to be unconstitutional.

**RESPONSE:**

**Deny.**

76.     The Students face constant fear that their protected journalistic and expressive activities will expose them to disciplinary action, up to and including dismissal and expulsion, if they fail to comply with the University's ongoing disciplinary actions and procedures and/or fail to limit their speech and journalistic activities the Defendants consider appropriate.

**RESPONSE:**

**Deny.**

## ALLEGATIONS OF LAW

77.     At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Illinois—including Khan to the extent he was acting as an employee or agent of the University.

**RESPONSE:**

**Deny.**

78.     Defendants knew or should have known that by prohibiting constitutionally protected journalistic and expressive activities of students, including the Plaintiffs, the University and Die were and are violating the Plaintiffs' constitutional rights.

**RESPONSE:**

**Deny.**

79.     The Plaintiffs are suffering irreparable harm as a result of the University's unconstitutional disciplinary actions and restrictions on protected speech.

**RESPONSE:**

**Deny.**

80.     The Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

**RESPONSE:**

**Deny.**

81.     Unless the conduct of Defendants is enjoined, the Plaintiffs will continue to suffer irreparable injury by being deprived of the First Amendment rights to freedom of expression and Freedom of the Press.

**RESPONSE:**

**Deny.**

82.     Unless the discipline imposed on Valdez is reversed, he may be forced into either potentially incriminating himself (by effectively but incorrectly admitting, under compulsion, that his social media activities were not constitutionally protected) or being further disciplined by the University, all in violation of the Fifth Amendment to the United States Constitution.

**RESPONSE:**

**Deny.**

83.     The restraining orders deprived Students of their expressive and journalistic liberty and liberty of movement on campus, their properly right to an equal education at the University and, if further discipline is imposed, potentially their properly right in completing their education.

**RESPONSE:**

**Deny.**

84.     The provisions of the Student Code, under which Students are being disciplined, (**Exhibit M**), are so vague and overbroad that they are unconstitutional on their face.

**RESPONSE:**

**Deny.**

**FIRST CLAIM**
**Violation of Plaintiffs' First Amendment Right**
**to Freedom of the Press**
**(42 U.S.C. § 1983)**

85.     The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-84 of this Complaint.

**RESPONSE:**

**Defendant Khan repeats and realleges each of his answers, admissions and denials to each of the allegations contained in paragraphs 1-84 of the Complaint.**

86.     The First Amendment to the United States Constitution protects the freedom of the press.

**RESPONSE:**

**Admit.**

87.     The Students' freedom of the press activities include writing on, reporting on, or filming events of public interest around campus.

**RESPONSE:**

**Admit.**

88.     The University's actions have chilled and restricted the Students' ability to freely exercise their freedom of the press rights.  As Die's statements to Minik, and Die's other actions against Students make clear, Dies was motivated by an intention to chill or prevent Students from reporting on Khan's campus activities.

**RESPONSE:**

**Deny.**

89.     With respect to Minik, the University has placed a restraining order on him simply for reporting and publishing an article about Khan's assault on his peers. The University further prohibited Minik from contacting Khan for follow-up stories and recommended that Minik not write about Khan at all if he wanted the disciplinary process to "go away."

**RESPONSE:**

**Deny.**

90.     Likewise, the University has placed restraining orders on Valdez and Nelson who, as campus journalists, merely attended a political rally to film and report on the event and were assaulted by Khan during the same.

**RESPONSE:**

**Deny.**

91.     Even more, Nelson must now confront allegations that he has violated his restraining order simply by attending and filming various other public protests around campus.

**RESPONSE:**

**Deny.**

92.     As campus journalists, the Students' ability to freely report, write, or film public campus events has been chilled and restricted.

**RESPONSE:**

**Deny.**

93.     The Students are constantly fearful of engaging in press activities lest they violate their restraining orders or be subject to other disciplinary actions.

**RESPONSE:**

**Deny.**

94.     Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their First Amendment right to freedom of press and a temporary and permanent injunction against Defendants' actions. Additionally, the Students are entitled to damages, compensatory damages, exemplary damages, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**RESPONSE:**

**Deny.**

## DEFENDANT KHAN'S AFFIRMATIVE DEFENSES TO FIRST CLAIM

**First Affirmative Defense:  Defendant Khan does not act under color of State law.**

**Second Affirmative Defense:  Defendant Khan was neither an Agent nor employee of the University of Illinois during any time relevant to the Complaint.**

**Third Affirmative Defense: Defendant Khan never conspired with any Co-Defendant.**

**Fourth Affirmative Defense:  To any extent applicable, Defendant Khan joins and adopts Co-Defendants' Motion to Dismiss this First Claim (Dkt 9 & 10).**

**SECOND CLAIM**
**Violation of Plaintiffs' First Amendment Right**
**to Freedom of Speech**
**(42 U.S.C. § 1983)**

95.     The Plaintiffs repeat and reallege each of the allegations contained in paragraphs

1–84 of this Complaint.

**RESPONSE:**

**Defendant Khan repeats and realleges each of his answers, admissions and**

**denials to each of the allegations contained in paragraphs 1-84 of the**

**Complaint.**

96.     Speech is entitled to comprehensive protection under the First Amendment.

**RESPONSE:**

**Admit.**


97.     The First Amendment rights to free speech and press extend to campuses of state

colleges.

**RESPONSE:**

**Admit.**


98.     The Students' activities in the open, outdoor areas of the campus constitute

expression that the First Amendment protects.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies but seeks clarification or a more**

**definite statement.**

99.     The First Amendment prohibits the government from taking any retaliatory actions against persons because they exercised their constitutional rights.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies but seeks clarification or a more definite statement.  Defendant Khan denies that he is "the government" and further repeats his denial that he acted under color of State law at any time or date related to the incidents alleged in the Complaint.**

100.    By imposing restraining orders on the Students, and by arranging for the Students to be investigated for alleged violations of the Student Code, Defendants by policy and practice have retaliated against the Students because of their free expression and deprived them of their ability to express their views freely on campus.

**RESPONSE:**

**Deny.**

101.    Defendants have knowingly and intentionally harassed and punished the Students for persisting in their protected expression.

**RESPONSE:**

**Deny.**

102.    Defendants' actions to impede, harass, and punish the Students for exercise of their free speech rights constitute adverse actions that would chill a student of ordinary firmness from exercising his free speech rights in the future.

**RESPONSE:**

**Deny.**

103.    Defendants' actions to impede the Students' activities and to harass and punish them for those activities are substantially motivated as a response to the Students' exercise of their First Amendment rights.

**RESPONSE:**

**Deny.**

104.    Defendants have unbridled discretion in determining whether and how to impose restraining orders on students.

**RESPONSE:**

**Deny.**

105.    Defendants' took actions to impede the Students' activities and are taking the actions to harass and punish the Students for those activities as a function of the unbridled discretion Die as a University official has with respect to restraining orders.

**RESPONSE:**

**Deny.**

106.    A public college's ability to restrict speech—particularly student speech—in a public forum is limited and does not include any of the Students' activities as set for the above.

**RESPONSE:**

**Deny.**

107.    The First Amendment's Free Speech Clause prohibits censorship of political expression.

**RESPONSE:**

**Admit.**


108.    These grants of unbridled discretion to Defendant officials violate the First Amendment because they create a system in which speech is restricted without any standards, thus giving students no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

**RESPONSE:**

**Deny.**


109.    Defendants' actions chill, deter, and restrict the Students from freely engaging in expressive conduct.

**RESPONSE:**

**Deny.**


110.    Defendants' actions violate the Students' right to free speech as guaranteed by the First Amendment to the United States Constitution.

**RESPONSE:**

**Deny.**

111.    Because of Defendants' actions, the Students have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages and equitable relief.

**RESPONSE:**

**Deny.**


112.    Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and a temporary and permanent injunction against Defendants' and actions. Additionally, the Students are entitled to damages, compensatory damages, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**RESPONSE:**

**Deny.**


## DEFENDANT KHAN'S AFFIRMATIVE DEFENSES TO SECOND CLAIM

**First Affirmative Defense:  Defendant Khan does not act under color of State law.**

**Second Affirmative Defense:  Defendant Khan was neither an Agent nor employee of the University of Illinois during any time relevant to the Complaint.**

**Third Affirmative Defense: Defendant Khan never conspired with any Co-Defendant.**

**Fourth Affirmative Defense:  To any extent applicable, Defendant Khan joins and adopts Co-Defendants' Motion to Dismiss Second Claim (Dkt 9 & 10).**

## THIRD CLAIM
### Violation of Plaintiffs' Fourteenth Amendment Right
### to Due Process of Law
### (42 U.S.C. § 1983)

113.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–84 of this Complaint, as if set forth fully herein.

**RESPONSE:**

**Defendant Khan repeats and realleges each of his answers, admissions and denials to each of the allegations contained in paragraphs 1-84 of the Complaint.**

114.    The Fourteenth Amendment to the United States Constitution guarantees the Students the right to due process of law.

**RESPONSE:**

**Admit.**

115.    The University has deprived the Students of their journalistic and expressive liberties without notice or an opportunity to be heard.

**RESPONSE:**

**Deny.**

116.    The Students cannot contest or appeal the imposition of the restraining orders and are bound by them at the discretion of University officials, including Die.

**RESPONSE:**

**Deny.**

116A.  Defendants Killen and Jones continue to impose and direct enforcement of the facially invalid provisions of the Student Code on **Exhibit M** against all students of the University.

**RESPONSE:**

**Deny.**

117.    The government may not regulate speech or journalism based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

**RESPONSE:**

**Defendant Khan neither Admits nor Denies but seeks clarification or a more definite statement.  Defendant Khan denies that he is "the government" and further repeats his denial that he acted under color of State law at any time or date related to the incidents alleged in the Complaint.**

118.    Because of Defendants' actions, the Students have suffered, and continue to suffer irreparable harm. They are entitled to an award of monetary damages and equitable relief.

**RESPONSE:**

**Deny.**

119.    Pursuant to 42 U.S.C. §§ 1983 and 1988, the Students are entitled to a declaration that Defendants violated their Fourteenth Amendment right to due process of law and a temporary and permanent injunction against Defendants' policy and actions. Additionally, the Students are entitled to actual and exemplary damages and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**RESPONSE:**

**Deny.**

## <u>DEFENDANT KHAN'S AFFIRMATIVE DEFENSES TO THIRD CLAIM</u>

<u>First Affirmative Defense</u>:  Defendant Khan does not act under color of State law.

<u>Second Affirmative Defense</u>:  Defendant Khan was neither an Agent nor employee of the University of Illinois during any time relevant to the Complaint.

<u>Third Affirmative Defense</u>: Defendant Khan never conspired with any Co-Defendant.

<u>Fourth Affirmative Defense</u>:  To any extent applicable, Defendant Khan joins and adopts Co-Defendants' Motion to Dismiss Third Claim (Dkt 9 & 10).

## FOURTH CLAIM
### Defendant Tariq Khan's Assault and Damage to VALDEZ'S PROPERTY

120.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs

1–84 of this Complaint, as if set forth fully herein.

**RESPONSE:**

**Defendant Khan repeats and realleges each of his answers, admissions and**

**denials to each of the allegations contained in paragraphs 1-84 of the**

**Complaint.**

121.    Defendant Tariq Khan had the intent to cause a harmful or offensive contact with

Plaintiff Valdez.

**RESPONSE:**

**Deny.**

122.    Defendant Tariq Khan actually made unauthorized and offensive physical contact

with Plaintiff Valdez that was harmful.

**RESPONSE:**

**Deny.**

123.    Plaintiff Valdez suffered damage to his cellphone which he was holding and which

Defendant Khan took without permission and destroyed.

**RESPONSE:**

**Deny.**

124.    Defendant Tariq Khan's actions caused the damage.

**RESPONSE:**

**Deny.**


125.    Valdez in entitled to an award of damages against Khan for damages including economic loss for the destruction of the cell phone and exemplary damages.

**RESPONSE:**

**Deny.**


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.      A declaratory judgment, that the provisions of the Student Code on **Exhibit M** are facially invalid and that Defendants' actions violate the Students' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution;

B.      A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the provisions of the Student Code on **Exhibit M** against Students and the restraining orders on the Students, or taking any further disciplinary action against them for constitutionally protected activities;

C.      An award of all damages proximately caused by Defendants' violation of the Students' First and Fourteenth Amendment rights, including exemplary damages;

D.      An award of Damages, including exemplary damages, to Plaintiff Valdez against Defendant Tariq Khan for the assault, battery, and unlawful destruction of property;

E.      Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in

this action pursuant to 42 U.S.C. § 1988; and

F.      All other further relief to which Plaintiffs may be entitled.

**<u>RESPONSE</u>:**

**Defendant Khan Denies that he owes any damages to any Plaintiff.**

**DEFENDANT TARIQ KHAN'S COUNTERCLAIMS:**

Defendant TARIQ KHAN's Facts Alleged in Support of his Counterclaims

Parties

1.      Counter-Claimant TARIQ KHAN ("Khan") is a graduate student in good standing at the University of Illinois Urbana-Champaign.  He is of mixed racial and ethnic descent including Pakistani heritage.  He is of mixed religious background including Mormon and Islam.  He is a member of the UIUC Graduate Employees Organization.

2.      Counter-Defendant ANDREW MINIK ("Minik") is a student at the University of Illinois Urbana-Champaign.  Upon information and belief, he is a student in good standing.  Upon information and belief Minik is a member of Turning Points USA.

3.      Counter-Defendant JOEL VALDEZ ("Valdez") is an undergraduate student at the University of Illinois Urbana-Champaign.  Upon information and belief, Valdez is not in good standing and is under disciplinary sanction.  Upon information and belief, Valdez is a member of Turning Points USA and has communicated and associated with the hate group: Proud Boys

4.      Counter-Defendant BLAIR NELSON ("Nelson") is an undergraduate student at the University of Illinois Urbana-Champaign.  Upon information and belief, he is a student in good standing.  Upon information and belief, Nelson is a member of Turning Points USA and has communicated and associated with the hate group: Proud Boys.

Definitions

5.      Speech is protected by the First Amendment.  But any speech that is a mechanism or instrumentality in the commission of a separate unlawful act is outside the protections of the First Amendment.

6.      Harassment may occur when electronic communication is used to threaten injury to the person or property of the person to whom an electronic communication is directed or to any of his or her family or household members.

7.      "Proud Boys" is designated a Hate Group by the Southern Poverty Law Center.  It was founded in 2016 by Gavin McInnes.  Gavin McInnes hosts an online show "Get Off My Lawn" which traffics in a number of racist and/or hateful and/or false and/or pro-violence theories.

8.      Turning Points USA is a group founded in 2012 to organize students to promote the principles of freedom, free markets and limited government.  It has a troubling history of boosting its numbers with racists and Nazi sympathizers.

Facts Surrounding the Racist and Hate Backgrounds of Counter-Defendants

9.      Upon information and belief at all relevant times, Minik, Valdez and Nelson received financial and other support from Turning Points USA a group committed to promoting hate on college campuses.

10.     In spring of 2017, Minik attempted to enter the Independent Media Center in Urbana for the purpose of disrupting an African American reading club and also for the purpose of harassing African Americans.  Upon information and belief Minik was blocked from entering by the Director of the Independent Media Center.

11.     In spring of 2017, Minik heckled and harassed African Americans at the Independent Media Center in Urbana who were holding a reading group.

12.     On November 15, 2017, Nelson and Valdez appeared as guests on "Get Off My Lawn" which is Proud Boys' Founder's, Gavin McInnes', internet show.  Nelson and Valdez published hateful and defamatory and threatening information about Khan on McInnes' Show.

Facts Surrounding the November 16, 2017 Rally

13.     On November 16, 2017, Valdez heckled and threatened Khan at an Anti-Trump Rally on campus where Khan was a speaker.

14.     On November 16, 2017, Nelson filmed Khan at an Anti-Trump Rally on campus where Khan was a speaker.

15.     On November 16, 2017, Khan tried to lighten the mood by saying to his hecklers words to the effect of "someone is tearing down your flyers, why don't you call in the Coast Guard". Khan's reference to the Coast Guard was intended to be humorous given that Illinois is a landlocked non-coastal state.

16.     On November 16, 2017 Valdez interrupted Khan and threatened him and his children saying "don't you have anything better to do? Don't you have kids?"

17.     On November 16, 2017, Khan felt threatened by reference to his children and repeatedly said in an emotional and loud voice "don't threaten my kids" and "you wanna threaten my kids" and words to that effect to Valdez and other hecklers.

18.     On November 16, 2017, Khan grabbed Valdez's phone that was filming him and the phone fell to the ground.

19.     On November 16, 2017, Khan walked away from Valdez after the phone fell and after repeatedly saying "don't threaten my kids" and words to that effect.

20.     Following the November 16, 2017 Rally, Valdez, Nelson and Minik all published and disseminated information about Khan, including but not limited to videos, photos, and text about Khan and about the Rally.

21.     Following the November 16, 2017 Rally, Valdez, Minik and Nelson published and disseminated information about Khan to hate groups and to known racists.

22.     Following the November 16, 2017 Rally, Valdez and/or Minik and/or Nelson edited the video footage of Khan.

23.     Following November 16, 2017, Minik, Nelson and Valdez published defamatory and hateful and threatening allegations against Khan on multiple internet sites known by Minik, Nelson and Valdez to be supported by racists and hate group supporters.

24.     Following November 16, 2017, Minik and/or Valdez and/or Nelson published Khan's Facebook page and his University email address on the internet and at sites known to be supported by racists and hate group supporters.

<u>Facts Surrounding the University's Discipline of Counter-Claimant Tariq Khan</u>

25.     Following November 16, 2017, the University of Illinois put Khan on conduct probation.

26.     Following November 16, 2017, Khan attended and completed an anger management program and learned and grew through his attendance at the anger management program.

27.     Following November 16, 2017, Khan communicated with Assistant Dean Rony Die several times regarding the University of Illinois Student Code and disciplinary measures.

28.     On November 28, 2017, Die sent Khan a Charge Notice stating in part: "The Office for Student Conflict Resolution has received information in which it is alleged that on November 16, 2017, you were involved in an incident which may violate the Student Code at the University of Illinois at Urbana-Champaign.  It is alleged that you approached another student, chest bumped them and engaged in a verbal altercation.  During this verbal altercation, you threatened to physically harm this student and you forcibly removed his phone from his hand.  You refused to return the phone and then you spiked the phone on the ground causing damage to the screen.  Such

conduct, if proven, would fall within the jurisdiction of the student discipline system and would constitute a violation of our community standards"

29.     On December 12, 2017 the University of Illinois issued a No Contact Directive to Khan, Minik, Valdez and Nelson.  Khan received a No Contact Directive similar to the ones received by Valdez and Nelson and Minik attached as Exhibit E to the Complaint.

30.     Following the University's issuance of its December 12, 2017 No Contact Directives, Khan followed the spirit and letter of the No Contact Directive conscientiously and carefully and without fail and he continues to follow the spirit and letter of the No Contact Directive conscientiously and carefully and without fail through this day.

31.     On January 18, 2018, the University, through Die, disciplined Khan.

<u>Facts Surrounding Ongoing Threats and</u>
<u>Harassment of Khan and his Family</u>

32.     Following November 16, 2017, Khan received multiple threats on line which threats were participated in by Nelson and/or Minik and/or Valdez.

33.     Following November 16, 2017, Minik published a threat to @Tariq Khan that included the words "Get him out of here … Beat the shit out of him . . . I'll pay the legal fees."

34.     Following November 16, 2017, Minik published defamatory and hateful and threatening allegations against Khan.

35.     Following November 16, 2017, Minik's and Nelson's and Valdez's electronic communications about Khan caused unknown racist and hateful persons to threaten and harass Khan.

36.     Following November 16, 2017, Valdez and Minik and Nelson all shared hateful and racist and defamatory electronic communications about Khan on the internet and caused threats of injury to Khan and his family.

37.     On or about November 17, 2017, Khan received a threat from an unknown person named Keith Joseph Greff stating: "u wanna make the battle between ideologies a physical thing and attach people for their thoughts and views thats fine but make sure you deal with the consequences you scumbag.  im 3 hours from you maybe ill come to campus this weekend and we can duke it out with fists and learn the hard way that u cant just muscle people into thinking a certain way.  Stay frosty mother fucker."

38.     On or about November 17, 2017, Khan received a death threat from an unknown person named Chuck Neely stating: "Expelled? No. We need to deal with this as white men in a white nation.  This garbage dares to assault us?  We physically remove him from the plane of existence.  He has zero right to exist in our nation, he is made to leave one way or another."

39.     On November 18, 2017, Khan received a threatening email from an unknown person at email address rich128128@gmail.com with subject "Shameful" and text "You know what im talking about"

40.     On November 18, 2017, Khan received a threatening email from an unknown person at email address leary_4@usa.com with subject "Ewwwww tuff guy" and text "U have got to be the biggest pussy I have ever seen.  I hope u don't have kids cause u will be beaten severely one day and no kid should see his dad like that not even u.  Alla u snack bar   ya fuckin idiot"

41.     On November 18, 2017, Khan received a threatening email from an unknown person at email address mjgluck@comcast.net with subject "Handsomely Done" and text "Saw you made the news today.  Your parents must be proud."

42.     On November 19, 2017, Khan received a threatening email from an unknown person at someweheronaddison@gmail.com with subject "Little Tariq" and text "Aww … poor baby got arrested because he broke the law.  Fun to watch a guy who bitches about capitalism wander around taking pictures with an Apple phone.  Fun to watch a guy who bitches about capitalism go to school for free at a university founded to promote agrarian capitalism (Because

agriculture on all those other communist nations have worked out so well."  How's Venezuela working out pal?  Enjoy your expulsion.  You're a coward and a hypocrite."

43.     On November 20, 2017, Khan received a threatening email from an unknown person at arglebargle23@gmail.com with subject "Tariq Khan threatens kids." And text "Why are you threatening my kids?  Are your employers aware of your behavior?  I think they will be soon enough.  Good luck with your hate!"

44.     On November 20, 2017, Khan received a threatening email from an unknown person at email address goodgoy666@outlook.com with Subject "Important!" and text "Hi There! Just wanted to let you know I just watched the hilarious video of you making a fool of yourself by whining about President Trump and then assaulting students like a little bitch (it's all over the internet and social media).  Watching you scream non-stop like a little girl was truly a sight to see. Your wife must be super embarrassed of you and has probably already started an affair with a real man behind your back.  And you just embarrassed your kids and made them ashamed of you for the rest of their lives ;)  Your "legacy" is now a video of you screaming and throwing a tantrum while assaulting a student, stealing his phone, and then destroying it.  You are the laughing stock of the university and now everyone knows what a completely mentally unstable pussy you are. Enjoy finishing your Phd in shame and teaching class while everyone laughs in your face and behind your back ☺ Krama's a bitch isn't it?  Love, Muhammad"

45.     On November 20, 2017, Khan received a threatening email from an unknown person at email address samuelyates87@gmail.com with Subject " Hahah" and text "Yo just a quick one to say you're a massive fucking pussy and you should kill yourself you sad cunt.

46.     On November 20, 2017, Khan received a threatening email from an unknown person at email address 1mattehew765@gmail.com with Subject "Video" and text "Saw the video. Understand why you are against free speech.  So easily triggered.  What an embarrassment to academia you are.  Matt Kremer"

47.    On November 20, 2017, Khan received an email from an unknown person at email address Desoto.joseph@gmail.com with Subject "Little man" and text "You are so screwed little man.  You bees a tuff guy on da video.  Grow up.  Seek guidance from your Imam and good luck with your career at McDonalds."

48.    On November 20, 2017, Khan received a threatening email from an unknown person at email address glynch9999@gmail.com with Subject "Watch yourself, boy" and text "You make a lot of threats . . ."

49.    On November 21, 2017, Khan received a threatening email from an unknown person at email address leeatrell@yahoo.com with Subject "Finals" and text "I was wondering when finals will be?  You know when you finally lose you job because you are a whacked out slw cuck . . . have a good one, idiot"

50.    On November 21, 2017, Khan received a threatening email from an unknown person at email address mzmadmike@gmail.com with Subject "Pity . . ." and text "That they didn't beat the living shit out of you.  And after all that bleating and trantrumming . . . Trump is still president.  And the only concentration camps in US history were run by liberals."

51.    On November 21, 2017, Valdez's friend made an on-line threat to "beat his [Khan's] ass for you bro." and Valdez replied threateningly to Khan with a heart icon and the words "Do it ASAP" This threat was publicly posted where many other persons affiliated with white supremacists and hate groups such as the Proud Boys could see it and further foment hate against Khan.

52.    On November 21, 2017, Josue Santana shared Charlie Kirk's Turning Point USA video of Khan at the November 16, 2017 Rally and Josue Santana told Valdez "I'll beat his ass for you bro." with an angry with fists up emoji.

53.     On November 23, 2017, Khan received a threatening email from an unknown person at email address davidtimms61@gmail.com with Subject "Attack" and text "Hey Tariq, take a swing at my kid, you little pussy."

54.     Following November 21, 2017, Khan reported the beat his ass ASAP threat to Die.

55.     Following the December 12, 2017 issuance of the No Contact Directive Nelson filmed Khan at multiple events, multiple times at multiple places.

56.     Following the University's issuance of its December 12, 2017 No Contact Directives, Minik, Nelson and Valdez continued to threaten and harass and intimidate Khan and his family in violation of the No Contract Directive.

57.     All of the threats Khan received caused him to feel fear and severe emotional distress.

<div align="center">

Facts Surrounding the Harassment of Khan's
Wife at the Independent Media Center

</div>

58.     On December 13, 2017, in violation of the No Contact Directive, Minik harassed and threatened Khan's wife.  Khan was not present.  Khan's wife is associated with multiple community organizations including the Channing Murray Foundation.

59.     On December 13, 2017, Khan's wife was aware of the threats aimed at her husband including the November 16, 2017 threat published by Minik to @Tariq Khan that included the words "Get him out of here … Beat the shit out of him . . . I'll pay the legal fees."

60.     On December 13, 2017, Khan's wife was aware of the No Contact Directive.

61.     On December 13, 2017, Khan's wife was peacefully attending an activity at the Independent Media Center in Urbana related to her work on prisoners' rights issues.

62.     On December 13, 2017, Khan's wife felt threatened and afraid when Minik and Valdez and two other men showed up at the Independent Media Center and interrupted her work on prisoners' rights issues.

63.     On December 13, 2017, the Building Manager, Brian Dolinar, asked Minik and Valdez and two other men to leave the premises of the Independent Media Center

64.      On December 13, 2017, Khan reported the harassment of his wife to Die.

<u>Facts Surrounding Nelson's and Valdez's Following and<br>Filming of Khan in Violation of the NO Contact Directive</u>

65.     On February 23, 2018, and repeatedly before and after, Nelson filmed and followed Khan in violation of the No Contact Directive and with intent to cause distress.

66.     On February 28, 2018, and repeatedly before and after, Nelson filmed and followed Khan in violation of the No Contact Directive and with intent to cause distress.  Valdez was present for part of the harassment by Nelson on February 28, 2018, in violation of the No Contact Directive and with intent to cause distress.

67.     Between approximately February 28 and March 2, 2018, Valdez filmed and followed Khan in violation of the No Contact Directive and with intent to cause distress.

68.     Nelson's filming of Khan at multiple times, multiple places and multiple events involved close contact, intrusive and threatening actions and caused Khan severe distress.

<u>COUNTERCLAIM I (Intentional Infliction of Emotional Distress)</u>

<u>(Khan Against Minik, Valdez and Nelson)</u>

69.     Counterclaimant incorporates all of the allegations in Paragraphs 1-68 above.

70.     Minik, Valdez and Nelson caused Khan's photo and name and racial and religious background to be published on the internet to persons know to Minik, Valdez and Nelson to be racist and to be members or supporters of hate groups.

71.     Minik's, Valdez's and Nelson's threats and actions against Khan were extreme and outrageous and were intended to cause Khan severe emotional distress and did cause Khan severe emotional distress.

72.     As a direct result of Mink's, Valdez's and Nelson's extreme and outrageous threats and actions, Khan suffered severe emotional distress, including but not limited to fear, anxiety, sleeplessness, concern for his family's safety and all manner of severe emotional distress which is continuing and ongoing.

WHEREFORE, Counterclaimant TARIQ KHAN requests damages in excess of $50,000.00 from Counter-Defendants ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON and also any other relief deemed appropriate by the Court.

COUNTERCLAIM II (Hate Crime for Harassment and Assault and Intimidation)

(Khan Against Minik, Valdez and Nelson)

73.     Counterclaimant incorporates all of the allegations in Paragraphs 1-68 above.

74.     Minik, Valdez and Nelson caused Khan's photo and name and racial and religious background to be published o the internet to persons know to Minik, Valdez and Nelson to be racist and to be members or supporters of hate groups.

75.     Minik and Valdez and Nelson were at all relevant times acting in whole or in part by reason of Khan's actual or perceived race and/or actual or perceived religion and/or actual or perceived ancestry and/or actual or perceived national origin.

76.     Valdez and Nelson and Minik threated Khan with imminent danger and Khan believed himself to be in imminent danger.

77.     Valdez and Nelson and Minik harassed Khan through electronic communication of threatening injury to Khan and his family.

78.     Valdez and Nelson and Minik violated the University's No-Contact Directives for the purpose of threatening Khan.

79.     Valdez and Nelson and Minik harassed and intimidated Khan by repeatedly filming him for the purpose of using the films to cause Khan and his family to be exposed to hatred and contempt and ridicule.

80.     Valdez and Nelson and Minik intended to cause harm to Khan.

81.     Valdez and Nelson and Minik caused Khan and his family to suffer distress and to be exposed to contempt and hatred and ridicule.

82.     As a result of Valdez's and Nelson's and Minik's harassment and assault and intimidation Khan has suffered and will continue to suffer fear, anxiety, emotional distress, academic injury and loss of enjoyment of academic life.

WHEREFORE, Counterclaimant TARIQ KHAN requests damages in excess of $50,000.00, including punitive damages and compensatory damages, from Counter-Defendants ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON and also any other relief deemed appropriate by the Court.

<div style="margin-left:40%">

Respectfully submitted:

TARIQ KHAN, Defendant

By:  Solberg & Bullock, LLC

  s/Ellyn J. Bullock
Ellyn J. Bullock, No. 6224579
Attorney for Defendant TARIQ KHAN
Solberg & Bullock, LLC
100 N. Chestnut Street, Suite 230
Champaign, IL  61820
Telephone:  (217) 351-6156
Facsimile:  (217) 351-6203
Email:  ellyn@solbergbullock.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2018, I electronically filed the foregoing *Defendant TARIQ KHAN'S Answer and Counterclaims* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Whitman Brisky, Esq., wbrisky@mauckbaker.com
Charles R. Schmadeke, Esq., cschmadeke@hinshawlaw.com

<div style="margin-left:40%">

  s/Ellyn J. Bullock
Ellyn J. Bullock, No. 6224579
Attorney for Plaintiff
Solberg & Bullock, LLC
100 N. Chestnut Street, Suite 230
Champaign, IL  61820
Telephone:  (217) 351-6156
Facsimile:  (217) 351-6203
Email:  ellyn@solbergbullock.com

</div>