E-FILED
Tuesday, 24 July, 2018  09:47:14 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-2101** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and TARIQ KHAN,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **TARIQ KHAN,** | ) | |
| | ) | |
| **Counterclaimant,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANDREW MINIK, JOEL VALDEZ and BLAIR NELSON,** | ) | |
| | ) | |
| **Counter-Defendants,** | ) | |

## DEFENDANT/COUNTERCLAIMANT TARIQ KHAN'S RESPONSE TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO STRIKE AND DISMISS WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES the Defendant/Counterclaimant, TARIQ KHAN, through his attorney, Ellyn J. Bullock of Solberg & Bullock, LLC, and under Federal Rules of Civil Procedure 12(b)(6) and (f) and under all other applicable Rules, responds to Plaintiffs/Counter-Defendants' Motion to Strike and Dismiss (Docket 17 & 18) as follows:

<u>Counter-Defendants Baseless Wish for Khan's Counterclaims to Disappear</u>

Docket 17 is titled "Motion to Strike and Dismiss Counterclaim of Tariq Khan Under FRCP 12(b)(6) and 12(f)." But nowhere does it state grounds for dismissal or to strike any portion of Khan's counterclaims, much less in their entirety. The entire Motion and Memorandum of Law reads like an angry wish list rather than a legal motion. Counter-Defendants clearly want Khan's counterclaims to disappear, but just as clearly, they don't have the slightest idea how to make them disappear.

<u>Rule 12(f) Motions Are Disfavored</u>

Counter-Defendants' Motion to Strike is ineffectual and confusing as it attempts to strike Counterclaims Counts I and II in their entirety, claiming "The entire Counterclaim contains so much that is immaterial, impertinent and scandalous, and the few remaining proper factual allegations are so inextricably connected with the improper allegations, that the **entire Counterclaim** should be stricken under FRCP 12(f)." (Docket 17 at 2) (emphasis added) To be perfectly clear, this is not how Federal Rule of Civil Procedure 12 works. A litigant cannot simply call the entire complaint against him scandalous and then strike or eradicate it. This Court "must take note of the overarching principle" that a Rule 12(f) Motion to Strike is a "drastic remedy which is disfavored and seldom granted." *Riemer v. Chase Bank USA*, 275 F.R.D. 492, 494 (U.S. Dist. Ct. N.D. Ill. 2011).

Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Riemer,* 275 F.R.D. at 494 (citing 5A A. Charles Alan Wright & Arthur R. Miller, **Federal Practice & Procedure** 1380, 647 (2d ed. 1990)). "As motions to strike are looked upon with disfavor, a court ordinarily will not strike a matter unless the court can confidently conclude that

the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party." *Ehlerding v. American Mattress and Upholstery, Inc*., 208 F.Supp.3d 944, 952 (U.S. Dist. Ct. N.D. Ind. 2016).

A Motion to Strike Is Not a Mechanism for
Deciding Disputed Issues of Law or Fact

"A motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or fact, especially where, as here, there has been no discovery, and the factual issues on which the motion to strike largely depends are disputed." *Riemer,* 275 F.R.D. at 494 (citing *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp*., 744 F.2d 935, 959 (2d Cir. 1984)). Here, the facts of the Counterclaims, Count I for intentional infliction of emotional distress, and Count II for an Illinois hate crime, are hotly disputed. It is dilatory and evasive to request that the Court strike all of the Counterclaims' facts and then dismiss the Counterclaims, which is what the Counter-Defendants would have this Court do.

The disputed facts of Counter-Defendants' Complaint are found in Paragraphs 1-68, which are incorporated by reference into Counterclaims I and II. Federal Rule of Civil Procedure 12(f) provides that a district court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A court has significant discretion in ruling on a motion to strike," "However, Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of part of the complaint." *Ehlerding v. American Mattress and Upholstery, Inc*., 208 F.Supp.3d 944, 951-952 (U.S. Dist. Ct. N.D. In. 2016). Counter-Defendants may deny the factual allegations of the Counterclaims, but that does not make the allegations immaterial, impertinent or scandalous. If parties disagree on the facts; that merely means the parties are at issue and the case should go through discovery and to jury trial for factual resolution.

3

<u>Counter-Defendants' Memorandum Contains Insufficient Law</u>

Docket 18 is the Memorandum of Law that Counter-Defendants offer in support of their Motion to Strike and Dismiss.  Oddly, it contains very little citation to case law or statute.  Its only citation to case law is to four Illinois cases on the Illinois tort of intentional infliction of emotional distress.  (Docket 18 at 5)  Counterclaimant Khan has no issue with those four cases relating to the elements of the Illinois tort of intentional infliction of emotional distress and Khan agrees that the elements of that tort are as stated by Counter-Defendants.  However, these four cases do not constitute sufficient legal basis for the dismissal of even the IIED claim (Counterclaim I) much less do these cases have anything whatsoever to say about the hate crime claim (Counterclaim II).  See, *Doe v. Calment City*, 641 N.E. 2d 498 (Ill. S.Ct. 1994); *Chang Hyun Moon v. Kang Jun Liv*, 44 N.E. 3d 1134 (Ill. App. 1st 2015); *Turcios v. Debruler Co*., 32 N.E. 3d 1117 (Ill. S.Ct. 2015); *McGrath v. Fahey*, 553 N.E. 2d 806 (Ill. S.Ct. 1989).

As this Court knows well, there is extensive case law from the United States Supreme Court, the Seventh Circuit Court of Appeals, and the United States District Courts on the substantive meaning and the procedural application of Federal Rule of Civil Procedure 12 in dismissal of claims.  All of the U.S. Supreme Court and Seventh Circuit law is binding on this Court and these litigants, and the U.S. District Court law is either binding or at very least persuasive to this Court and these litigants.  Therefore, absence of citation to the vast and overall coherent law on dismissal under Federal Rule of Civil Procedure 12 is very problematic to these Counter-Defendants.  Counter-Defendants utterly fail to recite any federal procedural law to support dismissal!

Nowhere is the failure to cite federal law as starkly telling as in a series of assertions made about "constitutionally protected free speech and press activities."  (Docket 18 at 4)  The First

4

Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." The hallmark of the protection of free speech is to allow "free trade in ideas"—even ideas that the overwhelming majority of people might find distasteful or discomforting. *Abrams v. United States*, 250 U.S. 616, 630 (S.Ct. 1919) (Holmes, J., dissenting); *see also Texas v. Johnson*, 491 (S.Ct. 1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). Thus the First Amendment "ordinarily" denies a State "the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence." *Whitney v. California*, 274 U.S. 357, 374 (1927) (Brandeis, J., concurring).

The protections afforded by the First Amendment, however, are not absolute, and American Courts have long recognized that the government may regulate certain categories of expression consistent with the Constitution. *See*, *e.g., Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem."). The First Amendment permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-383 (1912) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. at 504).

<u>The Counterclaims' Proud Boys Allegations Are Neither
Scandalous nor Impertinent Although They May Be Disputed</u>

Without any definition of "impertinent" or "scandalous," Counter-Defendants argue that the Counterclaims' allegation that Valdez and Nelson are associated with the hate group Proud

Boys is impertinent and scandalous, and further, that the allegation that Proud Boys is a hate group is also impertinent and scandalous.  Under Rule 12(f), "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."  *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 664 (7th Cir. 1992).

Valdez's and Nelson's association with Proud Boys is alleged in Counterclaim Paragraph 12:  "On November 15, 2017, Nelson and Valdez appeared as guests on "Get Off My Lawn" which is Proud Boys' Founder's, Gavin McInnes', internet show.  Nelson and Valdez published hateful and defamatory and threatening information about Khan on McInnes' show."  (Docket 13 at 46) This is a factual allegation, susceptible of proof in Court.  There is nothing either impertinent or scandalous about this allegation.  If Nelson and Valdez appeared on McInnes' internet show, it is neither impertinent nor scandalous to say so.  If Gavin McInnes is the founder of Proud Boys, it is neither scandalous nor impertinent to say so.  Whatever Nelson and Valdez published on the show can be shown to a jury for decision as to whether it was hateful and/or threatening and/or defamatory.  At this point in this litigation, of course, the matters asserted in Paragraph 12 are allegations, meaning they have not yet been proved, but they are in no way scandalous or impertinent allegations.

The "Proud Boys" allegations against Valdez and Nelson contained in Paragraph 12 of Khan's Counterclaim are not impertinent or scandalous.  Rather they are allegations capable of proof (or disproof, if the evidence at trial doesn't bear them out) and relevant to the Complaint against Khan, and also relevant to the Counterclaims brought by Khan against Plaintiffs/Counter-Defendants.  Valdez and Nelson have sued Khan in federal court for assault and damage to property arising out of Khan's presence and actions at a Rally on the University of Illinois campus on November 16, 2017.  (Docket 1 at 5-6 & 20).  They have sued the University of Illinois for

discipline meted out after the Rally.  (Docket 1 at 6-20)  Their actions at the Rally and after the Rally are thus relevant to their own Complaint as well as to the Counterclaims.  If Valdez and Nelson published material about Khan on Gavin McInnes' show, that is relevant to all of the issues raised between the parties.  If Gavin McInnes is the founder of Proud Boys, that is relevant to the motivations and purposes of his show and to all of the matters at issue between the parties.  "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation."  *Capitol Indemnity Corporation v. Tranel Developments, Inc*., 144 F.R.D. 346 (U.S. Dist. Ct. N.D. Ill. 1992) (citing 2A Moore's **Federal Practice** 12.21[2], at 12-175).

The Motion to Strike or Dismiss also argues that "the allegation that Proud Boys is a hate group is supported by nothing more than the allegation in ¶ 7 that it was so designated by the Southern Poverty Law Center, a private advocacy organization which has set itself up as the, likely imperfect, arbiter of who and what are hate groups."  (Docket 18 at 2)  This again is a factual dispute.  If the Plaintiffs/Counter-Defendants wish to fight the designation of Proud Boys as a hate group and wish to prove that Southern Poverty Law Center is an imperfect arbiter of who and what are hate groups, that fight is well within Plaintiffs/Counter-Defendants' legal right and responsibility at this juncture.  But that does not support striking any or all of Khan's counterclaims under Rule 12(f).  The allegation as to the SPLC designation of Proud Boys as a hate group is precisely what gives a factual basis to Khan's counterclaims, and thus, it should not be stricken and it supports that the rest of the Counterclaim should not be stricken.  "A district court may strike an allegation as scandalous when it bears no possible relation to the controversy or when the allegations are devoid of any factual basis."  *Blankenship v. Pushpin Holdings*, 157 F. Supp. 3d 788, 795 (U.S. Dist. Ct. N.D. Ill. 2016).

<u>The Counterclaims Do Allege Intentional Infliction of Emotional</u>
<u>Distress and a Hate Crime and Should Not Be Dismissed</u>
<u>Under Federal Rule of Civil Procedure 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides that Defendants in civil actions may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The familiar federal court standards for a Court deciding a 12(b)(6) motion is that dismissal for failure to state a claim is proper only if "the plaintiff could prove no set of facts in support of her claims that would entitle her to relief."  *Conley v. Gibson*, 78 S.Ct. 99 (1957).  "If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate."  *Veazey v. Communications & Cable of Chicago*, 194 F.3d 850, 854 (7th Cir. 1995).

<u>International Infliction of Emotional Distress Is Well</u>
<u>Developed Under the Common Law of Illinois</u>

Counterclaimant Khan agrees with the Counter-Defendants' statement of the elements of the Illinois tort of intentional infliction of emotional distress (IIED).  Counterclaimant must allege "the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress."  *Chang Hyun Moon v. Kang Jun Liu*, 44 N.E. 3d 1134, 1142 (Ill. App. 1st 2015) (citing *McGrath v. Fahey*, 533 N.E. 2d 806 (1988)).

As the Illinois Supreme Court has explained, liability for IIED "only arises in circumstances where defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Chang Hyun Moon*, 44 N.E. 3d at 1143 (quoting *Public Finance Corp. v. Davis*, 360 N.E. 2d 765 (1976) (quoting Restatement (Second) of Torts §

46 cmt.d (1965)).  Khan's allegations meet this high standard for extreme and outrageous.  Upon

a Motion to Dismiss, all of Khan's allegations are viewed in the light most favorable to him and

thus all of the following support extreme and outrageous misconduct "beyond all possible bounds

of decency."

32.    Following November 16, 2017, Khan received multiple threats on line which threats were participated in by Nelson and/or Minik and/or Valdez.

33.    Following November 16, 2017, Minik published a threat to @Tariq Khan that included the words "Get him out of here … Beat the shit out of him . . . I'll pay the legal fees."

34.    Following November 16, 2017, Minik published defamatory and hateful and threatening allegations against Khan.

35.    Following November 16, 2017, Minik's and Nelson's and Valdez's electronic communications about Khan caused unknown racist and hateful persons to threaten and harass Khan.

36.    Following November 16, 2017, Valdez and Minik and Nelson all shared hateful and racist and defamatory electronic communications about Khan on the internet and caused threats of injury to Khan and his family.

37.    On or about November 17, 2017, Khan received a threat from an unknown person named Keith Joseph Greff stating: "u wanna make the battle between ideologies a physical thing and attach people for their thoughts and views thats fine but make sure you deal with the consequences you scumbag.  im 3 hours from you maybe ill come to campus this weekend and we can duke it out with fists and learn the hard way that u cant just muscle people into thinking a certain way.  Stay frosty mother fucker."

38.    On or about November 17, 2017, Khan received a death threat from an unknown person named Chuck Neely stating: "Expelled? No. We need to deal with this as white men in a white nation.  This garbage dares to assault us?  We physically remove him from the plane of existence.  He has zero right to exist in our nation, he is made to leave one way or another."

39.   On November 18, 2017, Khan received a threatening email from an unknown person at email address rich128128@gmail.com with subject "Shameful" and text "You know what im talking about"

40.   On November 18, 2017, Khan received a threatening email from an unknown person at email address leary_4@usa.com with subject "Ewwwww tuff guy" and text "U have got to be the biggest pussy I have ever seen.  I hope u don't have kids cause u will be beaten severely one day and no kid should see his dad like that not even u.  Alla u snack bar  ya fuckin idiot"

41.   On November 18, 2017, Khan received a threatening email from an unknown person at email address mjgluck@comcast.net with subject "Handsomely Done" and text "Saw you made the news today.  Your parents must be proud."

42.   On November 19, 2017, Khan received a threatening email from an unknown person at someweheronaddison@gmail.com with subject "Little Tariq" and text "Aww … poor baby got arrested because he broke the law.  Fun to watch a guy who bitches about capitalism wander around taking pictures with an Apple phone.  Fun to watch a guy who bitches about capitalism go to school for free at a university founded to promote agrarian capitalism (Because agriculture on all those other communist nations have worked out so well."  How's Venezuela working out pal?  Enjoy your expulsion.  You're a coward and a hypocrite."

43.   On November 20, 2017, Khan received a threatening email from an unknown person at arglebargle23@gmail.com with subject "Tariq Khan threatens kids." And text "Why are you threatening my kids?  Are your employers aware of your behavior? I think they will be soon enough.  Good luck with your hate!"

44.   On November 20, 2017, Khan received a threatening email from an unknown person at email address goodgoy666@outlook.com with Subject "Important!" and text "Hi There!  Just wanted to let you know I just watched the hilarious video of you making a fool of yourself by whining about President Trump and then assaulting students like a little bitch (it's all over the internet and social media).  Watching you scream non-stop like a little girl was truly a

sight to see.  Your wife must be super embarrassed of you and has probably already started an affair with a real man behind your back.  And you just embarrassed your kids and made them ashamed of you for the rest of their lives ;)  Your "legacy" is now a video of you screaming and throwing a tantrum while assaulting a student, stealing his phone, and then destroying it.   You are the laughing stock of the university and now everyone knows what a completely mentally unstable pussy you are.  Enjoy finishing your Phd in shame and teaching class while everyone laughs in your face and behind your back ☺ Krama's a bitch isn't it?  Love, Muhammad"

45.    On November 20, 2017, Khan received a threatening email from an unknown person at email address samuelyates87@gmail.com with Subject " Hahah" and text "Yo just a quick one to say you're a massive fucking pussy and you should kill yourself you sad cunt.

46.    On November 20, 2017, Khan received a threatening email from an unknown person at email address 1mattehew765@gmail.com with Subject "Video" and text "Saw the video.  Understand why you are against free speech.  So easily triggered.  What an embarrassment to academia you are.  Matt Kremer"

47.    On November 20, 2017, Khan received an email from an unknown person at email address Desoto.joseph@gmail.com with Subject "Little man" and text "You are so screwed little man.  You bees a tuff guy on da video.  Grow up.  Seek guidance from your Imam and good luck with your career at McDonalds."

48.    On November 20, 2017, Khan received a threatening email from an unknown person at email address glynch9999@gmail.com with Subject "Watch yourself, boy" and text "You make a lot of threats . . ."

49.    On November 21, 2017, Khan received a threatening email from an unknown person at email address leeatrell@yahoo.com with Subject "Finals" and text "I was wondering when finals will be?  You know when you finally lose you job because you are a whacked out slw cuck . . . have a good one, idiot"

50.    On November 21, 2017, Khan received a threatening email from an unknown person at email address

mzmadmike@gmail.com with Subject "Pity . . ." and text "That they didn't beat the living shit out of you.  And after all that bleating and trantrumming . . . Trump is still president.  And the only concentration camps in US history were run by liberals."

51.  On November 21, 2017, Valdez's friend made an on-line threat to "beat his [Khan's] ass for you bro." and Valdez replied threateningly to Khan with a heart icon and the words "Do it ASAP" This threat was publicly posted where many other persons affiliated with white supremacists and hate groups such as the Proud Boys could see it and further foment hate against Khan.

52.  On November 21, 2017, Josue Santana shared Charlie Kirk's Turning Point USA video of Khan at the November 16, 2017 Rally and Josue Santana told Valdez "I'll beat his ass for you bro." with an angry with fists up emoji.

53.  On November 23, 2017, Khan received a threatening email from an unknown person at email address davidtimms61@gmail.com with Subject "Attack" and text "Hey Tariq, take a swing at my kid, you little pussy."

(Docket 13 at 48-52)

**Count II of the Counterclaim Identifies
and Sufficiently Alleges a Hate Crime**

In one short paragraph, the Motion to Strike urges the Court to dismiss Counterclaim II in its entirety:  "The second, claim, though not identified as such, appears to be a civil action pursuant to 720 Ill. Comp. Stat. Ann. 5/12-7(c), the Illinois hate crime law.  However, to bring a civil action there must be an allegation of one of the predicate crimes listed in the statute.  None was alleged in the counterclaim.  Thus Count II also fails to state a claim upon which relief can be granted."  (Docket 18 at 6)  Most respectfully, this verges on nonsense and gives no legal basis for any dismissal of Count II.  The heading of Count II does identify itself as an Illinois hate crime in that it is titled **"COUNTERCLAIM II (Hate Crime for Harassment and Assault and Intimidation)**

12

(**Khan Against Minik, Valdez and Nelson**).   (Docket 13 at 55-56) (emphasis added)   It is

preposterous to argue that this is not identified as a hate crime when it clearly is.

Count II pleads an Illinois Hate Crime and should not be dismissed for any reason, as

follows:

<u>COUNTERCLAIM II (Hate Crime for</u>
<u>Harassment and Assault and Intimidation)</u>
<u>(Khan Against Minik, Valdez and Nelson)</u>

73.   Counterclaimant incorporates all of the allegations in Paragraphs 1-68 above.

74.   Minik, Valdez and Nelson caused Khan's photo and name and racial and religious background to be published on the internet to persons known to Minik, Valdez and Nelson to be racist and to be members or supporters of hate groups.

75.   Minik and Valdez and Nelson were at all relevant times acting in whole or in part by reason of Khan's actual or perceived race and/or actual or perceived religion and/or actual or perceived ancestry and/or actual or perceived national origin.

76.   Valdez and Nelson and Minik threated Khan with imminent danger and Khan believed himself to be in imminent danger.

77.   Valdez and Nelson and Minik harassed Khan through electronic communication of threatening injury to Khan and his family.

78.   Valdez and Nelson and Minik violated the University's No-Contact Directives for the purpose of threatening Khan.

79.   Valdez and Nelson and Minik harassed and intimidated Khan by repeatedly filming him for the purpose of using the films to cause Khan and his family to be exposed to hatred and contempt and ridicule.

80.   Valdez and Nelson and Minik intended to cause harm to Khan.

81.   Valdez and Nelson and Minik caused Khan and his family to suffer distress and to be exposed to contempt and hatred and ridicule.

82.   As a result of Valdez's and Nelson's and Minik's harassment and assault and intimidation Khan has suffered and will continue to suffer fear, anxiety, emotional distress, academic injury and loss of enjoyment of academic life.

(Docket 13 at 55-56)

The Motion to Strike or Dismiss argues that "to bring a civil action there must be an allegation of one of the predicate crimes listed in the statute.  None was alleged in the counterclaim."  (Docket 18 at 6)  The predicate crimes alleged are listed in the title of the Count as "Hate Crime for **Harassment and Assault and Intimidation**."  (Docket 13 at 55) (emphasis added)

For one example of a predicate crime, consider harassment.  "Harassment through electronic communications" can form the predicate for a hate crime, when the harassment through electronic communication is committed "by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, regardless of the existence of any other motivating factor or factors."   720 ILCS 5/12-7.1(a).  Harassment through electronic communication is defined by Illinois statute as "A person commits harassment through electronic communication when he or she uses electronic communication for any of the following purposes:  (1) Making any comment, request, suggestion or proposal which is obscene with an attempt to offend . . . (5) Threatening injury to the person or property of the person to whom an electronic communication is directed or to any of his or her family or household members."  720 ILCS 5/26.5-3.

In light of this statutory definition of harassment through electronic communication, consider Paragraph 33 of the Counterclaim as one example of many of factual allegations that support a hate crime:  "Following November 16, 2017, Minik published a threat to @Tariq Khan that included the words "Get him out of here … Beat the shit out of him . . . I'll pay the legal fees."

(Docket 13 at 48)  This constitutes harassment through electronic communication by Minik against Khan.  If it is found to be partially motivated by Khan's actual or perceived race, color, creed, religion, ancestry or national origin, then it may be found by a jury to constitute a hate crime.  This allegation of on-line harassment of Khan by Minik can constitute an Illinois hate crime.

In the Counter-Defendants' own Complaint, they admit/allege another clear allegation of a predicate offense sufficient to support a hate crime.  Paragraph 54 of their own Complaint alleges:  "On February 26, 2018, Valdez received an email from Die in which he, on behalf of the University and with no hearing or opportunity to be heard, confront witnesses or present evidence or arguments, determined that Valdez had violated the student code of conduct.  **Die's finding was that three months earlier, on November 21, 2017, Valdez "liked" a post from a friend of Valdez residing in Chicago who commented that he could "beat his ass for you bro [Emoji with smiley face puffing air]" – a reference to Khan.  Valdez replied sarcastically with a Facebook heart icon stating "Do it ASAP.**"  The post and Valdez's "like" would not, in the ordinary course, be viewed by anyone other than "Facebook friends" of Valdez and his Chicago friend and could only be found by Khan or Die if they had intentionally been looking for a reason to discipline Valdez."  (Docket 1 at 10)

This long paragraph probably violates Rule 8(d)(1) that "each allegation must be simple, concise, and direct."  Fed.R.Civ.P.8(d)(1).  But regardless, it is pled in the Plaintiffs/Counter-Defendants' own Complaint and it admits the on-line harassment that Khan is claiming as a predicate hate crime.  Valdez "liked" a post from a friend who commented he could "beat his [Khan's] ass for you bro [Valdez], and then there is the emoji with smiley face puffing air and Valdez confirms the threat by another by writing and posting "Do it ASAP".  Valdez claims that his "like" of his friend's threat to beat Khan for Valdez is "sarcastic."  But Khan in his answer has

denied that Valdez's intention was sarcasm as opposed to hate or threat of harm.  (Docket 13 at 19-20)

Attempt by Plaintiffs/Counter-Defendants to strike either Khan's hate crime counterclaim or IIED counterclaim on the ground that the Illinois Hate Crime Act or IIED tort unlawfully restricts protected speech is facially and logically baseless.  It has long been established that "a State may punish those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."" *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).  *See also*, *R.A.V. v. City of St. Paul, 505 U.S. 377 (1992)* (listing limited areas where the First Amendment permits restrictions on the content of speech).  The Supreme Court has consequently held that fighting words—"those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction"—are generally proscribable under the First Amendment.  *Cohen v. California*, 403 U.S. 15, 20 (1971).  Furthermore, "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."  *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) *(per curiam)*.

The First Amendment also permits a State to ban a "true threat."  *Watts v. United States*, 394 U.S. 705, 708 (1969) *(per curiam)* (internal quotation marks omitted); *R.A.V. v. City of St. Paul,* 505 U.S. at 388 ("[T]hreats of violence are outside the First Amendment"); *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 774 (1994); *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 373 (1997).  "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.  *Watts v. United States,* 394 U.S. *at* 708;

*R.A.V. v. City of St. Paul*, 505 U.S. at 388.  The speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Virginia v. Black,* 538 U.S, 343, 344 (2003).  Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm and death.

If such fundamental First Amendment jurisprudence, squarely on point, weren't already thoroughly controlling and decisive against any and all of Plaintiffs/Counter-Defendants' so-called First Amendment challenges to Khan's hate crime and IIED counterclaims, the Illinois Appellate Courts have upheld the Illinois Hate Crime Act in the face of First Amendment, equal protection, and all other challenges, on the grounds that the statue does not punish an individual for thinking or expressing bigoted or hateful thoughts, but rather punishes the offender's criminal conduct in choosing victim by reason of those beliefs or hatred, and in then committing a criminal act specified in the statute.  *People v. Nitz*, 674 N.E.2d 802 (Ill. App. 3rd Dist. 1996); *People v. Rokicki*, 718 N.E.2d 333 (Ill. App. 2nd Dist. 1999); *In re: Vladimir P.,* 670 N.E.2d 839 (Ill. App. 1st Dist. 1996).

<u>Causation Is an Issue for the Jury, Not a Basis for</u>
<u>Striking or Dismissing the Counterclaims</u>

Counter-Defendants also raise what are in essence causation arguments regarding the threats Khan received from unknown third parties.  Not all of the threats Khan received were from unknown persons.  Recall, Minik is alleged to have directly published a threat to "@Tariq Khan that included the words "Get him out of here . . . Beat the shit out of him . . . I'll pay the legal fees"" (Docket 13 at 48) and Valdez is likewise alleged to have directly threatened Kahn by liking

his friend's post saying he "could beat his ass for you" and Valdez said "do it ASAP."  (Docket 1 at 10)

But Khan concedes some of the on-line threats he received were from persons unknown to him.  Whether Counter-Defendants cause or incited these unlawful threats is an issue for the jury.  "On the issue of causation, as on other issues essential to his cause of action, the plaintiff, in general, has the burden of proof.  He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the defendant's conduct was a substantial factor in bringing about the injury complained of."  *Collins v. American Optometric Association*, 693 F.2d 636 (7th Cir. 1982).

It has long been established by Illinois statute, that a person charged with a crime may be held accountable (and therefore criminally liable) for the actions of others in a number of situations as follows:

> 5.2     When accountability exists.  A person is legally accountable for the conduct of another when:
>
> (a)     having a mental state described by the statute defining the offense, he or she causes another to perform the conduct, and the other person in fact or by reason of legal incapacity lacks such a mental state:
>
> (b)     the statute defining the offense makes him or her so accountable; or
>
> (c)     either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in planning or commission of the offense.

720 ILCS 5/5-2.

Because the allegations in Khan's Answer and Counterclaim already quoted above—quite apart from any other testimony and evidence to be elicited and/or adduced in discovery—show

and/or could be taken to show Counter-Defendants accountability under 720 ILCS 5/5-2(c). Furthermore, because all of the detestable and criminal acts described in the Counterclaim could be proven at Trial to be acts in furtherance of a common criminal design, each of the named defendants may be held jointly and severally accountable for all of the above described acts pursuant to the common criminal design provision of  720 ILCS 5/5-2:

> When 2 or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the common design or agreement and all are equally responsible for the consequences of those further acts.  Mere presence at the scene of a crime does not render a person accountable for an offense; a person's presence at the scene of a crime however, may be considered with other circumstances by the trier of fact when determining accountability.

720 ILCS 5/5-2.

Lest the Court undermine the seriousness of the on-line threat Khan received from unknown persons after Valdez, Minik and Nelson published false and inflammatory materials on-line about Khan, the Court should note and review the allegations in paragraphs 32-53.  (Docket 13 at 48-52)  In direct response to the on-line posting of hateful speech by Mink, Valdez and Nelson, unknown persons responded with bile such as "Expelled?  No.  We need to deal with this as white men in a white nation.  This garbage dares to assault us?  We physically remove him from the plain of existence.  He has no right to exist in our nation, he is made to leave one way or another."  (Docket 13 at 49)  The cowardly and vicious (and ongoing) concealment of the identities of the "other" parties who actively engaged in the hate crimes against Khan does not constitute an affirmative defense but rather supports criminal accountability and civil liability.

The Illinois Hate Crime Act expressly provides for civil damages:  "Independent of any criminal prosecution or the result of a criminal prosecution, any person suffering injury to his or her person, damage to his or her property, intimidation as defined in paragraphs (a)(1), (a)(2), and

(a)(3) of Section 12-6 of this Code . . . or harassment through electronic communications as defined in paragraphs (a)(2) and (a)(5) of Section 16.5-3 of this Code as a result of a hate crime may bring a civil action for damages, injunction or other appropriate relief.  The court may award actual damages, including damages for emotional distress, as well as punitive damages." 720 ILCS 5/12-7.1(c).

Clearly, the Illinois Hate Crime Act contemplated civil actions for damages such as the one brought by Khan against Minik, Valdez and Nelson.  This Court has supplemental jurisdiction over state law counterclaims such as Khan's claims for IIED and a hate crime.  28 U.S. 1367(a) The Illinois Hate Crime Act does not violate the First Amendment, as it does not punish individuals for thinking or expressing bigoted or hateful thoughts, but rather punishes offender's criminal conduct in choosing a victim by reason of those beliefs or hatred, and in committing a criminal act specified in a statute.  *People v. Nitz*, 674 N.E.2d 802 (Ill. App. 3rd Dist. 1996).  The Illinois legislature was free to determine as a matter of sound public policy that bias-motivated crimes create greater harm than identical conduct not motivated by bias and should be punished more harshly.  *People v. Rokicki*, 718 N.E.2d 333 (Ill. App. 2nd Dist. 1999).

WHEREFORE, Defendant/Counterclaimant TARIQ KHAN requests that the Court deny the Motion to Strike and Dismiss in its entirety and that the Counter-Defendants answer and parties proceed to discovery and trial.

Respectfully submitted:
TARIQ KHAN, Defendant,

By:  Solberg & Bullock, LLC

  s/Ellyn J. Bullock
Ellyn J. Bullock, No. 6224579, Attorney for
Defendant/Counterclaimant TARIQ KHAN
Solberg & Bullock, LLC
100 N. Chestnut Street, Suite 230
Champaign, IL  61820
Telephone:  (217) 351-6156
Facsimile:  (217) 351-6203
Email:  ellyn@solbergbullock.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on July 24, 2018, I electronically filed the foregoing *Defendant/Counterclaimant TARIQ KHAN's Response to Plaintiffs/Counter-Defendants' Motion to Strike or Dismiss with Incorporated Memorandum of Law* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Whitman Brisky, Esq., wbrisky@mauckbaker.com
Charles R. Schmadeke, Esq., cschmadeke@hinshawlaw.com

    s/Ellyn J. Bullock
Ellyn J. Bullock, No. 6224579, Attorney for
Defendant/Counterclaimant TARIQ KHAN
Solberg & Bullock, LLC
100 N. Chestnut Street, Suite 230
Champaign, IL  61820
Telephone:  (217) 351-6156
Facsimile:  (217) 351-6203
Email:  ellyn@solbergbullock.com