UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

ANDREW MINIK et al.,

    Plaintiffs,

v.

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS et al.,

    Defendants,

and

TARIQ KAHN,

    Counterclaimant,

v.

ANDREW MINIK et al.,

    Counter-Defendants.

Case No. 18-2101

REPORT AND RECOMMENDATION

    This case is before the Court on the Motion to Strike and Dismiss Counterclaim of Tariq Khan Under FRCP 12(b)(6) and 12(f) (#17) filed by Plaintiffs/Counter-Defendants Andrew Minik, Joel Valdez and Blair Nelson ("Plaintiffs"). Defendant/Counterclaimant Tariq Kahn ("Kahn") filed a Response (#21) in opposition. For the reasons discussed below, the Court recommends that Plaintiffs' Motion to Strike and Dismiss Counterclaims (#17) be denied.

I.    Background

    Plaintiffs' Complaint alleges that Defendants Board of Trustees of the University of Illinois ("University"), Timothy Killeen, Robert J. Jones, Rony Die, and Tariq Khan

denied Plaintiffs' fundamental rights to free press, free speech, and due process under the First, Fifth, and Fourteenth Amendments. Plaintiffs are or were students at the University. Plaintiffs' Complaint arises from events that occurred on and after a November 16, 2017 "anti-Trump" rally on campus. Kahn was a speaker at this rally and Plaintiffs Valdez and Nelson observed and interacted with Kahn during the rally.[1] The parties got in some sort of altercation, and police were called. After the rally, according to Kahn, Plaintiffs engaged in threatening behavior and recruited others to threaten and harass him.

Kahn's Counterclaim raises two claims: (1) Intentional Infliction of Emotional Distress and (2) Hate Crime for Harassment and Assault and Intimidation. Plaintiffs move to strike "immaterial, impertinent and scandalous" allegations from Kahn's Counterclaim under Federal Rule of Civil Procedure 12(f) and to dismiss both counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

II.    Analysis

    a.  Rule 12(f) Motion to Strike

As to the Motion to Strike, Federal Rule of Civil Procedure 12(f) provides that:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).

Motions to strike are generally disfavored as they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). But, "[A] motion to strike can be a useful means of removing unnecessary clutter from a cause, which will in effect expedite the proceedings." *Id.* Importantly, however, "mere redundancy or immateriality is insufficient to trigger the drastic measure of striking the pleading; the pleading must also be prejudicial to the defendant." *BBL, Inc. v. City of*

---

[1] Plaintiff Minik was not present at the rally. He alleges that the University took disciplinary action against him as a result of information Minik published after the rally.

2

*Angola*, 2013 WL 2383659, *3 (N.D. Ind. May 29, 2013) (citing *Hardin v. American Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999); *see also Tektel Inc. v. Maier*, 813 F. Supp. 1331, 1334 (N.D. Ill. 1992) (Motions to strike are "usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial."); "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Cumis Ins. Soc. v. Peters*, 983. F. Supp. 787, 798 (N.D. Ill. 1997). Although disfavored, allegations may be stricken as scandalous if the material "bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

### i. Immaterial Allegations

Plaintiffs first argue that three sections of Kahn's Counterclaim include immaterial allegations that the Court should strike under Rule 12(f). The Court will consider each group of allegations in turn to determine how they relate, if at all, to the controversy before the Court.

Plaintiffs first ask the Court to strike paragraphs 10 and 11 of Khan's Counterclaim, which read:

> 10. In spring of 2017, Minik attempted to enter the Independent Media Center in Urbana for the purpose of disrupting an African American reading club and also for the purpose of harassing African Americans. Upon information and belief Minik was blocked from entering by the Director of the Independent Media Center.
>
> 11. In the spring of 2017, Minik heckled and harassed African Americans at the Independent Media Center in Urbana who were holding a reading group.

Plaintiffs argue these paragraphs are immaterial because there is "no connection between [their] conclusory and inflammatory allegations and Kahn," who, according to Plaintiffs, does not allege that he was present at the Independent Media Center at the time.

3

The Court will not strike language merely because it is immaterial. Instead, Plaintiffs must show that "the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Tektel*, 813 F. Supp. at 1334. Kahn's entire Counterclaim rests on Plaintiffs' alleged involvement in hate groups, publication of threatening information to those hate groups, and recruitment of other individuals to threaten Kahn.

Kahn's first claim is for intentional infliction of emotional distress. In Illinois, the following elements are required to establish intentional infliction of emotional distress: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Clamuet City*, 641 N.E. 2d 498, 506 (Ill. 1994).

His second claim is a violation of the Illinois Hate Crimes Act. Illinois law defines a "hate crime" as:

> A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, regardless of the existence of any other motivating factor or factors, he or she commits assault, battery, aggravated assault, intimidation, stalking, cyberstalking, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action, disorderly conduct, transmission of obscene messages, harassment by telephone, or harassment through electronic communications as these crimes are defined in Sections [of this Code].

720 ILCS 5/12-7.1. The statute creates a private right of action, authorizing damages for emotional distress and punitive damages. 720 ILCS 5/12-7.1(c).

Therefore, allegations that Minik "heckled and harassed African Americans at the Independent Media Center" are material to this case in that Defendant may use that information to prove that Minik acted "by reason" of Kahn's race, religion, or national

origin.² Plaintiffs, of course, may deny these allegations in their answer. The Court recommends that Plaintiffs' request to strike paragraphs 10 and 11 be denied.

Next, Plaintiffs ask the Court to strike paragraphs 25-31 of the Counterclaim as immaterial:

> 25. Following November 16, 2017, the University of Illinois put Kahn on conduct probation.
>
> 26. Following November 16, 2017, Khan attended and completed an anger management program and learned and grew through his attendance at the anger management program.
>
> 27. Following November 16, 2017, Khan communicated with Assistant Dean Rony Die several times regarding the University of Illinois Student Code and disciplinary measures.
>
> 28. On November 28, 2017, Die sent Kahn a Charge Notice stating in part: "The Office for Student Conflict Resolution has received information in which it is alleged that on November 16, 2017, you were involved in an incident which may violate the Student Code at the University of Illinois at Urbana-Champaign. It is alleged that you approached another student, chest bumped them and engaged in a verbal altercation. During this verbal altercation, you threatened to physically harm this student and you forcibly removed his phone from his hand. You refused to return the phone and then you spiked the phone on the ground causing damage to the screen. Such conduct, if proven, would fall within the jurisdiction of the student discipline system and would constitute a violation of our community standards."
>
> 29. On December 12, 2017, the University of Illinois issued a No Contact Directive to Khan, Minik, Valdez and Nelson. Khan received a No Contact Directive similar to the ones received by Valdez and Nelson and Minik attached as Exhibit E to the Complaint.
>
> 30. Following the University's issuance of its December 12, 2017 No Contact Directives, Khan followed the spirit and letter of the No Contact Directive conscientiously and carefully and without fail and he continues to follow the spirit and letter of the No Contact Directive conscientiously and carefully and without fail through this day.

---

² Whether evidence of this conduct is admissible at trial under Federal Rule of Evidence 404 is something that will be decided later.

31. On January 18, 2018, the University, through Die, disciplined Kahn.

Kahn's Counterclaims arise from the November 16, 2017 rally and the parties' subsequent actions. Kahn's Counterclaims allege that Plaintiffs' alleged actions, including threats and defamatory publications, after the November 16, 2017 incident caused Kahn severe emotional distress and constituted a hate crime. Paragraphs 25-31 recount the actions the University took against Kahn as a consequence of his role in the November 16, 2017 altercation. The Court will not strike material from the complaint unless it is "clearly prejudicial." While the relevance of these allegations is unclear, Plaintiffs have not shown any prejudice from these allegations, which appear to merely recite the timeline of resulting disciplinary action against Kahn. Because there is no apparent prejudice, the Court recommends that Plaintiffs' request to strike paragraphs 25-31 be denied.

Finally, Plaintiffs argue that paragraphs 58-64 should be stricken as they relate to Kahn's wife, who is not a party to this case. These paragraphs read as follows:

> 58. On December 13, 2017, in violation of the No Contact Directive, Minik harassed and threatened Khan's wife. Khan was not present. Khan's wife is associated with multiple community organizations including the Channing Murray Foundation.
>
> 59. On December 13, 2017, Khan's wife was aware of the threats aimed at her husband including the November 16, 2017 threat published by Minik to @Tariq Khan that included the words "Get him out of here…Beat the shit out of him…I'll pay the legal fees."
>
> 60. On December 13, 2017, Khan's wife was aware of the No Contact Directive.
>
> 61. On December 13, 2017, Khan's wife was peacefully attending an activity at the Independent Media Center in Urbana related to her work on prisoners' rights issues.
>
> 62. On December 13, 2017, Khan's wife felt threatened and afraid when Minik and Valdez and two other men showed up at the Independent Media Center and interrupted her work on prisoners' rights issues.

63. On December 13, 2017, the Building Manager, Brian Dolinar, asked Minik and Valdez and two other men to leave the premises of the Independent Media Center.

64. On December 13, 2017, Khan reported the harassment of his wife to Die.

These particular paragraphs relate to Khan's claims for intentional infliction of emotional distress and a hate crime for harassment and intimidation. Plaintiffs' Motion includes a one sentence argument that these paragraphs "whether or not they might be relevant to some sort of claim by Khan's wife, they are clearly not relevant here where only Khan is a counter-plaintiff." Khan alleges that he suffered severe emotional distress in part due to concern for his family's safety. He also alleges that Plaintiffs harassed him by threatening injury to his family. Paragraphs 58-64 include the facts on which Khan is relying to support these claims, and there is no apparent prejudice. The Court recommends that Plaintiffs' request to strike paragraphs 58-64 be denied.

### ii. Impertinent and Scandalous Allegations

Plaintiffs also ask the Court to strike multiple paragraphs from Kahn's Counterclaim as impertinent and scandalous. The majority of these allegations relate to race and hate groups. Plaintiffs argue that these statements inflame the reader and are unsupported. Specifically, Plaintiffs point to paragraphs 3 and 4, alleging that Plaintiffs Valdez and Nelson were "associated with the hate group: Proud Boys;" paragraph 8, alleging that Turning Points USA is a group with a "troubling history of boosting its numbers with racists and Nazi sympathizers;" paragraph 10, alleging that Minik attempted to enter a public building "for the purpose of harassing African Americans;" paragraph 21, alleging Plaintiffs published "information about Kahn to hate groups and to known racists;" paragraphs 23 and 24, alleging that Plaintiffs published defamatory allegations against Kahn on internet sites known to be supported by racists; and paragraphs 34 – 50, including the alleged threatening electronic publications by Plaintiffs and unknown persons.

Plaintiffs argue that Kahn fails to support these allegations and that they are scandalous and aim only to inflame the reader. While these allegations are sensitive due to their nature, they are also material to Kahn's counterclaims. Each allegation relates to Plaintiffs' respective motivation in taking the alleged action against Kahn. Under the Illinois Hate Crimes Act, the actor's motivation, (that is, whether he acted "by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual") is the primary basis for liability. Without that motivation, there can be no liability under the Act. Therefore, it would be impossible for Kahn to make this claim without alleging that Plaintiffs were in fact racially motivated, which is what these allegations are intended to demonstrate. Whether these allegations can be proved will be determined later.[3] The Court recommends that Plaintiffs' Motion as it relates to paragraphs 3, 4, 8, 10, 21, 23, 24, 34-50 be denied.

### b. Rule 12(b)(6) Motion to Dismiss

Plaintiffs also move to dismiss the counterclaims for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss is to challenge the sufficiency of the complaint, not to decide its merits. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the court evaluates the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds

---

[3] Some of the allegations impugn the character of organizations and individuals who are not represented by counsel in these proceedings. The Court makes no comment on the accuracy or correctness of these allegations. However, in presenting these allegations, Kahn's counsel has certified that to the best of her knowledge, the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation. Fed. R. Civ. P. 11(b).

upon which it rests'"; and (2) "its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility requirement "does not impose a probability requirement on plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

### i. Intentional Infliction of Emotional Distress

Count I of Kahn's Counterclaim alleges that Plaintiffs caused Kahn's photo, name, and background to be published on the internet to persons Plaintiffs knew to be racists and members/supporters of hate groups. Count I further alleges that Plaintiffs' threats and actions against Kahn were extreme and outrageous and were intended to cause Kahn severe emotional distress. Kahn alleges that as a result of these threats and actions, Khan suffered severe emotional distress, including fear, anxiety, sleeplessness, and concern for his family's safety.

As previously stated, intentional infliction of emotional distress requires: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Doe v. Clamuet City*, 641 N.E. 2d 498, 506 (Ill. 1994).

Kahn has alleged each of the required elements. At this stage, the Court does not review the merits of Kahn's claims, it only considers the sufficiency of the complaint. Kahn described the complaint in sufficient detail to give Plaintiffs fair notice of what the claim is and the grounds upon which it rests. *See EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). Kahn specifically alleges the acts that he says constituted the extreme and outrageous conduct, Plaintiffs' intention to inflict severe emotional distress,

and the form of the severe emotional distress Kahn suffered. Kahn's allegations plausibly suggest that he has a right to relief. *Id*.

As Kahn's claim for intentional infliction of emotional distress states a claim upon which relief may be granted, the Court recommends that Plaintiffs' Motion to Dismiss as it relates to Count I be denied.

### ii. Hate Crime

Count II of Kahn's Counterclaim is titled Hate Crime for Harassment and Assault and Intimidation. Kahn again alleges that Plaintiffs caused Kahn's photo, name, and background to be published on the Internet to persons Plaintiffs knew to be racists and members/supporters of hate groups. Kahn alleges that these actions were by reason of Kahn's actual or perceived race, religion, ancestry, and/or national origin.

Plaintiffs, in a single paragraph, ask the Court to dismiss Count II. According to Plaintiffs this claim "appears to be a civil action pursuant to 720 Ill. Comp. Stat. Ann. 5/12-7(c), the Illinois hate crime law." But Plaintiffs argue that Kahn failed to allege one of the predicate crimes listed in the statute.

Illinois law creates a private right of action for damages from an injury caused by a "hate crime." The law specifically defines a hate crime, which the Court recited above, as any "assault, battery, aggravated assault, intimidation, stalking, cyberstalking, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action, disorderly conduct, transmission of obscene messages, harassment by telephone, or harassment through electronic communications" motivated by one of the enumerated reasons. 720 ILCS 5/12-7.1.

Kahn's Counterclaim alleges that by reason of his actual or perceived race, religion, ancestry, and/or national origin, Plaintiffs harassed, threatened, and intimated him. Kahn's Counterclaim further details acts of cyberstalking. These allegations fall within the definition of a hate crime under Illinois Law, as it includes acts of intimidation, stalking, cyberstalking, and harassment through electronic means.

As Kahn described the allegations of hate crime in sufficient detail to give Plaintiffs fair notice of the claim and the grounds upon which it rests, including the predicate acts upon which he relies, the Court recommends that Plaintiffs' Motion to Dismiss as it relates to Count II be denied.

**III.     Conclusion**

For the reasons provided above, the Court recommends that Plaintiffs' Motion to Strike and Dismiss Counterclaim of Tariq Kahn Under FRCP 12(b)(6) and 12(f) be denied. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 21st day of September, 2018.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
