**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| **ANDREW MINIK et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 18-cv-2101** |
| ) | |
| **BOARD OF TRUSTEES OF THE** ) | |
| **UNIVERSITY OF ILLINOIS et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TARIQ KAHN,** ) | |
| ) | |
| **Counterclaimant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ANDREW MINIK et al.,** ) | |
| ) | |
| **Counter-Defendants.** ) | |

<u>**ORDER**</u>

Plaintiffs, Andrew Minik, Joel Valdez, and Blair Nelson filed a Complaint (#1) on

April 9, 2018.  On June 8, 2018, Defendant Board of Trustees of the University of Illinois,

including Ramon Cepeda, Donald J. Edwards, Patrick J. Fitzgerald, Stuart C. King,

Timothy Koritz, Edward L. McMillan, James D. Montgomery, Sr., Jill B. Smart,

Trayshawn M.W. Mitchell, Karina Reyes, Edwin Robles, and Governor Bruce Rauner,[1]

---

[1]The Governor of Illinois is an *ex officio* member of the Board of Trustees. 110 Ill.
Comp. Stat. 310/1.  Bruce Rauner is no longer the Governor of Illinois.

along with Defendant Timothy Killeen, President of the University of Illinois,

Defendant Robert J. Jones, Vice President of the University of Illinois and Chancellor for

the University of Illinois Urbana-Champaign, and Defendant Rony Die, Assistant Dean

of Students (collectively "University Defendants") filed a Motion to Dismiss Under

Rules 12(b)(1) and 12(b)(6) (#9).[2]  Plaintiffs filed a Response (#15) on July 10, 2018.

On October 3, 2018, the University Defendants filed a Motion to Dismiss Minik's

and Valdez's Claims for Prospective Relief Due to Mootness and Lack of Standing (#29).

Plaintiffs Minik and Valdez filed a Response (#34) on October 31, 2018.  After the court

ordered supplemental briefing in a January 23, 2019 Text Order, Plaintiffs Minik and

Valdez filed a Reply (#39) on February 6, 2019, and the University Defendants filed a

Supplemental Memorandum (#40) that same day.

For the reasons that follow, the University Defendants' Motion to Dismiss Under

Rules 12(b)(1) and 12(b)(6) (#9) is GRANTED in part and DENIED in part, and the

University Defendants' Motion to Dismiss Minik's and Valdez's Claims for Prospective

Relief Due to Mootness and Lack of Standing (#29) is GRANTED.

## I.  BACKGROUND

A.  *Factual Allegations*

According to the Complaint, the University of Illinois is a public university,

organized and existing under the laws of the State of Illinois and receiving funding

from the State.  The Board of Trustees governs the University, delegating some

---

[2]The only Defendant not included in the Motion to Dismiss is Tariq Khan.

authority and responsibilities to the individual Defendants.  Defendant Tariq Khan is a graduate student and instructor at the University.  Plaintiffs are current or former students at the University who hold "mainstream conservative views" and are correspondents for Campus Reform, a journalistic organization reporting on "bias and abuse in higher education."  The Complaint alleges the following events.

### 1. Incident at Rally

On November 17, 2017, Plaintiffs Valdez and Nelson attended an "anti-Trump" rally to observe and report on it.  Plaintiff Minik did not attend the rally, but two days later he published an article about it for Campus Reform.[3]

Defendant Khan, a member of the "extreme left-wing" Black Rose Anarchist Federation, spoke at the rally.  Addressing Valdez and Nelson, Khan remarked into a bullhorn, "Fuck you guys . . . I'm going to go tear down one of your flyers right now." Valdez responded: "No one is scared of you 50 year old man.  Don't you have kids to look after."  Khan then accused Valdez and Nelson of threatening his children.  Khan lunged at Nelson and screamed in Valdez's face, getting chest to chest with him.  Khan grabbed Valdez's phone, shattered it on the ground, then left the area.

### 2. Dean Die Issues No Contact Directives

The University had, and continues to have, a Student Code and Student Disciplinary Procedures.  Through those documents, the University authorizes a

---

[3]The article, attached to the Complaint, refers to Valdez as an executive board member and campus activism coordinator for Turning Point USA.

Disciplinary Officer to make findings of fact regarding Student Code violations.  The

Disciplinary Officer can impose discipline, sanctions, or restrictions (other than

suspension or dismissal), including restrictions from "contact with specific people or

physical locations."

At some point after the rally and Minik's article about it, Khan asked the

University to issue no contact directives.  On December 12, 2017, Dean Rony Die asked

each Plaintiff to make an appointment to discuss "a problem involving you and another

student."  Dean Die also directed each Plaintiff "to have NO CONTACT with Tariq

Khan (oral or written, directly or through any third party) until further notice."

According to Plaintiffs, the no contact orders remain in effect to this day, having never

been rescinded.

No contact orders cannot be appealed or contested, and they are not preceded by

a hearing before going into effect.  Plaintiffs allege that the University and its President

and Vice President (Defendants Killeen and Jones) "grant unbridled discretion" and

"do not provide any criteria" to University officials to determine whether to issue a no

contact order.  They also allege that Killeen and Jones "knew or should have known of

the vague and overbroad nature of the policies, codes and practices of the University . . .

and nevertheless continued them in effect and permitted Die and other agents of the

University to enforce them" knowing or with reason to know Die was

unconstitutionally enforcing them.

3.  <u>Minik's Later Interactions with Dean Die</u>

On December 13, 2017, Minik went to a presentation at the Urbana Independent Media Center.[4]  Because of the no contact directive and because Khan's spouse was at another event in the same building, the building's director ordered Minik to leave. Minik left.

On December 14, 2017, Minik met with Die, who told him that Khan requested the no contact order because of the Campus Reform article Minik had written.  In a summary of his understanding of the meeting, Minik stated that the no contact order was "not a direct disciplinary charge, rather a probationary measure" to ensure he would not contact Khan, and that the order did not pertain to public events or prevent Minik from writing journalistic stories related to Khan.  Die recommended the second person to arrive at a public event should leave, or they should avoid each other, and he suggested that Minik not write about Khan if Minik hoped "for the situation to improve."  Minik now claims that Die's suggestion was actually a threat that Minik would be disciplined if he did not stop writing about Khan.

---

[4]According to Plaintiffs, this is a "campus building."  The court is somewhat familiar with the Urbana Independent Media Center and does not believe it is affiliated with the University.  However, in ruling on the Motion to Dismiss, the court assumes the truth of the facts alleged in the Complaint.  See *Corcoran v. Chi. Park Dist.*, 875 F.2d 609, 611 (7th Cir. 1989).

At some point before January 16, 2018, Minik posted on Facebook about Khan. Minik tagged Khan in the post, which was a meme of Donald Trump stating: "Get him out of here . . . beat the shit out of him . . . I'll pay the legal fees."  Minik claims the post was a sarcastic joke, but that is not how Khan perceived it.

On January 16, 2018, Dean Die emailed Minik about that post.  He stated that the student Minik tagged in the post (Khan) "strongly believes that this meme was posted to encourage violence towards" him.  Die asked Minik for his personal account on the allegation, and informed him that he was not being charged with a Student Code violation at that time.  Although he was never disciplined for the post, Plaintiffs view Die's email as "an attempt to further chill [their] expressive and journalistic activities."

### 4.  Nelson's Later Interactions with Dean Die

On February 22, 2018, Nelson, on behalf of Campus Reform, attended a basketball game at the State Farm Center to observe and film a protest.  Khan was also at the protest.  Khan's supporters approached Nelson as he filmed the protest, accusing him of violating the no contact order by being in the same public space as Khan.

On February 26, 2018, Die emailed Nelson.  Die stated that the Office for Student Conflict Resolution had "received information in which it is alleged" that Nelson violated a No Contact Directive on February 22, 2018, possibly violating the Student Code "if proven."  Die asked Nelson to meet with him "to discuss the nature of the incident and the appropriate University response."

6

Nelson met with Die at some unspecified later date. At the meeting, Die told Nelson that the no contact order did not apply to public places and that no discipline would follow. Nelson complains that Die did not "rescind" the February 26 email or apologize for sending it "without cause." Plaintiffs view the email as another warning and threat to chill their expressive and journalistic activities.

On February 27, 2018, the graduate teachers union held a protest in a public place. Khan is a member of that group and was at the protest. Nelson attended and reported on the protest. Khan's supporters again accused Nelson of violating the no contact order.

On April 4, 2018, Die told Nelson that he had "received information in which it is alleged" that Nelson violated a No Contact Directive by "deliberately following and filming the student at multiple events that occurred on February 22nd, 26th, and 27th of 2018," possibly violating the Student Code "if proven." A hearing was set for April 13, 2018. This hearing has not occurred, because the parties continued it generally after Plaintiffs filed this lawsuit.

Plaintiffs allege Die failed to make sure that Khan and his supporters knew of the limitations of the no contact order in public places. Nelson claims he has not had any contact with Khan since November 17, 2017.

5. <u>Valdez's Later Interactions with Dean Die</u>

On November 21, 2017, Valdez's friend (who was not a University student) wrote on Valdez's Facebook page, in reference to Khan: "I'll beat his ass for you bro." Valdez replied, "Do it ASAP," and he "liked" the post by using the Facebook heart icon.

On January 30, 2018, Die met with Valdez about that Facebook situation. On February 26, 2018, Die informed Valdez of his finding that Valdez violated section 1-302.r of the Student Code. That section prohibits "[i]nciting, aiding, or encouraging others to engage in a behavior which violates the Student Code." Valdez was issued a University Censure, "an official communication that a student's behaviour is inappropriate for a member of the University community." While a censure remains in the Office for Student Conflict Resolution until a student graduates, it is not recorded on a student's transcript, nor is it released to others. Die directed Valdez to write a paper reflecting on his actions in the incident without justifying them. Die informed Valdez that Valdez had the right to appeal the decision.

Valdez did not write the paper, which he contends would compel him to make false admissions that could be used against him later. Because he did not write the paper, a disciplinary hold was placed on his account to prevent him from viewing grades, registering for classes, changing a class schedule, and graduating. No allegation is included regarding whether he appealed the discipline.

8

6. <u>Minik and Valdez Leave the University</u>

In their Motion to Dismiss Minik's and Valdez's Claims for Prospective Relief Due to Mootness and Lack of Standing (#29), the University Defendants state that "under the present circumstances," and "for reasons unrelated to the allegations in the Complaint," Minik and Valdez are not currently enrolled in or registered for any courses at the University and they are not eligible to enroll in or register for any courses at the University for any academic term. The University Defendants support their Motion with a Declaration of Megan Hazen, the Registrar for the University.

According to that Declaration, Minik was dismissed from the University at the end of the Spring 2018 term because he failed to maintain the necessary grade point average.

Valdez was last enrolled in courses at the University in the Fall 2017 term. Because he failed to provide required information on his immunizations, Valdez is currently unable to enroll in any courses due to an immunization hold. He is also unable to register for any courses due to a financial hold resulting from unpaid tuition. He has also been subject to a "college hold," related to academic performance, since January 5, 2018. That hold, too, prevents him from registering for classes. The issuance of a no contact directive is not recorded on academic records or transcripts.

In their Supplemental Memorandum (#40), the University Defendants assert that the University would be unable to impose sanctions for conduct that may constitute a violation of the Student Code against Minik and Valdez if they were to now engage in

such conduct, because Minik and Valdez are both non-registered, former students.  The University Defendants support their Supplemental Memorandum with a Supplemental Declaration of Hazen showing that the status of Minik and Valdez has not changed since the original Motion to Dismiss (#29) was filed in October 2018.  As of February 2019, they are not registered students, nor are they eligible to register.

Hazen states that Minik was dismissed from the University prior to the Spring 2018 academic term for academic reasons.  He appealed that decision, and was allowed to register for the Spring 2018 term on academic probation.  At the end of that term, he was dismissed from the University for failing to maintain the necessary grade point average.  Minik has no continuing relationship with the University.

Hazen states that Valdez last registered for classes for the Fall 2017 academic term, ending December 2017.  The University placed financial holds on him on February 6, 2018 and March 10, 2018 because he is indebted to the University for unpaid tuition.  Valdez has not addressed his debts to the University, so the financial holds remain in place, preventing him from registering for courses "until satisfactory arrangements about the indebtedness are made."  The immunization and academic holds also remain in effect, preventing Valdez from registering for any courses.  Valdez is not a currently enrolled student, and he has no continuing relationship with the University.

Plaintiffs' October 2018 Response (#34) includes Declarations from Minik and Valdez.  Minik states that he "will enroll into" a community college, the College of DuPage, in order to raise his grade point average and to eventually seek readmission to the University.  Valdez states that he is working on obtaining the necessary funds, and that once he does so, he plans to provide the required immunization documentation and enroll in classes.

Plaintiffs' February 2019 Reply (#39) and the attached Declarations from Minik and Valdez indicate that their situations have not materially changed since the Response was filed.  Minik states that he has "made plans to enroll at the College of DuPage."  Once there, he wants to raise his grade point average. He then intends to seek readmission to the University.  He has discussed his plans with University staff, and is "in the process of constructing a plan" for his readmission.  Valdez is still "working to raise the necessary funds to resolve the financial hold."  He states that he would take action to resolve the financial and immunization holds if the disciplinary hold were lifted.  Minik and Valdez both state that they have not been informed that the no-contact orders have been rescinded, and they believe they are still in effect and will continue to remain in effect.

B. *Plaintiffs' Legal Claims*

Plaintiffs allege that the University Defendants violated their First and Fourteenth Amendment rights to (1) freedom of the press, (2) freedom of speech, and (3) due process of law.

1. <u>Freedom of the Press</u>

Plaintiffs allege that "their freedom of the press activities include writing on, reporting on, or filming events of public interest around campus."  They allege that the University "chilled and restricted" their ability to do those activities by: placing a restraining order on Minik for reporting and publishing an article about Khan's assault on Nelson and Valdez, placing restraining orders on Valdez and Nelson who "merely attended a political rally to film and report on the event and were assaulted by Khan during the same," requiring Nelson to "confront allegations that he has violated his restraining order simply by attending and filming various other public protests around campus," and causing Plaintiffs to fear engaging in press activities lest they violate their restraining orders or be subject to other disciplinary actions.

2. <u>Freedom of Speech</u>

Plaintiffs allege that by imposing restraining orders on them and arranging for them to be investigated for alleged violations of the Student Code, the University Defendants retaliated against them because of their free expression and deprived them of their ability to express their views freely on campus.  Plaintiffs allege that the University Defendants knowingly and intentionally harassed and punished them for their protected expression, taking actions which would chill students of ordinary firmness from the future exercise of free speech rights and which have chilled, deterred, and restricted Plaintiffs from engaging in expressive conduct.  They further allege that

the University Defendants have given Die unbridled discretion in imposing restraining orders, violating the First Amendment by creating a standardless system that gives students no way to prove their speech rights were unconstitutionally violated.

### 3. Due Process of Law

Lastly, Plaintiffs allege that the University Defendants improperly deprived them of due process of law by depriving them of "journalistic and expressive liberties without notice or an opportunity to be heard" and because they cannot contest or appeal the imposition of the restraining orders.  They allege that certain Student Code provisions permit arbitrary, discriminatory, and overzealous enforcement and that "Killeen and Jones continue to impose and direct enforcement of the facially invalid provisions of the Student Code against all students of the University."

In their Response, Plaintiffs specify that they are making a procedural due process claim and not a substantive due process claim.

### 4. Relief Sought

Plaintiffs seek a declaration that Defendants violated their rights to freedom of the press, freedom of speech, and due process and a declaration that certain provisions of the Student Code are unconstitutional.  In addition, they seek an injunction prohibiting Defendants from enforcing the allegedly unconstitutional provisions of the Student Code and the no contact directives and from disciplining them for constitutionally protected activities.  They also seek actual and exemplary damages, and the reasonable costs of their lawsuit, including their reasonable attorneys' fees.

## II.  ANALYSIS

A.  *Motion to Dismiss Due to Mootness and Lack of Standing (#29)*

Because "mootness is a jurisdictional issue," *Moore v. Watson*, 838 F. Supp. 2d 735, 761 (N.D. Ill. 2012), the court will first consider the University Defendants' Motion to Dismiss Minik's and Valdez's Claims for Prospective Relief Due to Mootness and Lack of Standing (#29).  Because the University Defendants raise a factual challenge to the court's subject-matter jurisdiction, the court is not constrained by Plaintiffs' Complaint and can consider evidence proffered by the parties.  *Apex Dig. Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

The University Defendants do not dispute that Minik and Valdez have standing to seek damages for alleged past wrongs.  However, as noted by the University Defendants, "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  The University Defendants argue that Minik's and Valdez's claims for prospective relief became moot, and they lost standing, when they ceased attending the University for reasons unrelated to the litigation.

"[S]tanding must be present at all stages of the litigation[.]" *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010).  "When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of

14

mootness." *Id.* At issue here is whether the claims for prospective relief made by Minik and Valdez, who are no longer students at the University but desire to return to the University, have become moot.[5]

The Seventh Circuit recently addressed the standing doctrine, including the fact that "[t]he necessity of demonstrating and maintaining standing does not subside as litigation proceeds," in *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 622 (7th Cir. 2019). "Standing requires a threefold demonstration of (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court. The alleged injury must be not just concrete and particularized, but also actual and imminent, not conjectural or hypothetical." *Keep Chicago Livable*, 913 F.3d at 622-23 (internal quotations and citations omitted).

As particularly relevant in both *Keep Chicago Livable* and the present case, "the asserted injury in-fact (and thus the requirements of concreteness, particularity, actuality, and imminence) must remain throughout the litigation, lest a case or controversy cease to exist and become moot." *Id.* The plaintiff bears the burden "of demonstrating the requisite injury to invoke federal jurisdiction." *Id.*

In *Keep Chicago Livable*, the plaintiffs challenged the constitutionality of Chicago's Shared Housing Ordinance, which imposed a range of requirements and restrictions on short-term housing arrangements in Chicago. *Id.* at 621. However, at the

---

[5]The University Defendants do not argue that the claims for prospective relief by Nelson, who is enrolled in classes, are moot.

time the court reviewed the standing issue, none of the plaintiffs could demonstrate "the clear, requisite showing of an ongoing, concrete, and particularized injury caused by the Ordinance and capable of being redressed by a favorable ruling in these appeals." *Id.* at 622.

One plaintiff had sold his Chicago property, so his claims were moot. *Id.* at 623. Three plaintiffs alleged "with no particularity how the Ordinance (and not some other factor) is preventing or hampering any of their own home-sharing activities in Chicago." *Id.* at 623. The remaining two plaintiffs did "not convey with sufficient clarity or particularity whether they still wish to visit Chicago and, if so, how the Ordinance is chilling or inhibiting them from doing so." *Id.* at 623-24. In the absence of a clear indication that any plaintiff had an actual or imminent injury, the appellate court concluded that it lacked authority to proceed, remanding the case to the district court for a determination of standing. *Keep Chicago Livable*, 913 F.3d at 621.

The University Defendants argue that because they are no longer students, Minik and Valdez "no longer face any threat of injury under the University rules or Student Code" and the University cannot affect their rights because they departed from the University "for reasons unrelated to this litigation." Plaintiffs Minik and Valdez respond that their requests for prospective relief are not moot because they intend to re-enroll at the University and also because the Student Code currently applies to them even though they are not current students.

16

Minik has not been a student since the end of the Spring academic term, when he was dismissed for academic reasons.  He may *want to* re-enroll in classes, but appears to be no closer to actually doing so than when he was dismissed.  In October 2018, he stated in his Declaration that he "will enroll into" the College of DuPage.  As of February 2019, he apparently had not followed through with enrolling there—his updated Declaration states that he has "made plans to enroll at the College of DuPage." Having failed to enroll in community college in the Summer 2018, Fall 2018, or Spring 2019 semesters, it is speculative whether Minik will ever actually do so.  And, even if he does, it is speculative whether he would be able to raise his grade point average—he was unable to do so while on academic probation at the University.  Even if he did raise his grade point average at College of DuPage, it is still speculative that the University would allow him to reenroll.  He has stated that he wants the University to let him re-enroll, but he has not established a sufficient likelihood that the University will allow him to re-enroll.  Minik's alleged prospective injury is thus "conjectural or hypothetical," so he lacks standing to pursue prospective relief.  See *Keep Chicago Livable*, 913 F.3d at 622-23.

Valdez last enrolled in classes for the Fall 2017 semester.  According to Hazen, Valdez is subject to financial and immunization holds, and an academic hold.  As of October 2018, Valdez stated he was taking a semester off to work on getting funds to pay his debt to the University.  As of February 2019, he was still working to raise the funds.  At this point, it is speculative whether he will raise the necessary funds and then

17

pay his debts to the University. And, he does not indicate how he plans to resolve the academic hold discussed by Hazen. Nor has he resolved the immunization hold. Like Minik, Valdez states that he *wants* to return to the University and that he has plans to return. But, also like Minik, those desires and still unrealized plans are insufficient to establish the requisite "actual and imminent" injury to confer standing upon him to pursue prospective relief concerning the Student Code. See *Keep Chicago Livable*, 913 F.3d at 622-23.

Minik and Valdez argue that Dean Die's disciplining Valdez in February of 2018 shows that the University enforces the Student Code against non-students. However, the discipline was for actions taken by Valdez in November 2017–when he was still enrolled as a student. The court fails to see how the University would be able to discipline Minik and Valdez if they were to now take any action that would be a violation of the Student Code. The University confirms it would be unable to do so.

Minik and Valdez also argue that their claims for prospective relief are not moot because the no contact orders remain in effect. Apparently, the no contact orders directing Plaintiffs not to contact Khan have never been rescinded. But, neither Minik nor Valdez were ever sanctioned for violating the no contact orders. At this time, the University would be unable to impose any sanctions on Minik or Valdez for such a violation because they are not students and have no continuing relationship with the University. Further, when asked to explain the current effect of the no contact orders on their actions, neither Minik nor Valdez expressed any current desire to engage in

18

activity that would violate the no contact order.  Any injury stemming from the no-contact orders is therefore "speculative and conjectural," and insufficiently "actual and imminent" to confer standing upon Minik and Valdez to pursue prospective relief.  See *Keep Chicago Livable*, 913 F.3d at 622-23.

Under *Keep Chicago Livable*, the court concludes that Minik's and Valdez's claims for prospective relief are moot as neither has standing at this time.  The court thus GRANTS the University Defendants' Motion to Dismiss Minik's and Valdez's Claims for Prospective Relief Due to Mootness and Lack of Standing (#29).

B.  *Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (#9)*

The University Defendants also argue that the claims against them should be dismissed for three reasons: (1) the Eleventh Amendment bars Plaintiffs' suit against them in this court; (2) the University Defendants are not "persons" that can be sued under 42 U.S.C. § 1983; and (3) the Complaint fails to state any claim upon which relief can be sought against them.

Plaintiffs respond that their claims are not barred by the Eleventh Amendment.  They seek to amend their Complaint to sue the University Defendants in their individual capacities, arguing that they are "persons" that can be sued under § 1983.  They also argue that they have properly stated freedom of the press, freedom of speech, and procedural due process claims against the University Defendants.

19

1. <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although not explicitly provided for in the text, courts have found that the Eleventh Amendment protects unconsenting States from suits brought in federal courts by their own citizens as well as by citizens of another State. *Council 31 of the Am. Fed'n of State, Cty. and Mun. Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012).

If properly raised, the Eleventh Amendment "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities."  *Ind. Protection and Advocacy Serv. v. Ind. Family and Soc. Serv. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010).  It protects state universities and their governing bodies from suit.  See *Cannon v. Univ. of Health Sciences/The Chi. Med. Sch.*, 710 F.2d 351 (7th Cir. 1983); *Kaimowitz v. Bd. of Tr. of the Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991); *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757-58 (N.D. Ill. 2014).  Plaintiffs' Complaint sues the University Defendants in their official capacities only, so the Eleventh Amendment potentially applies to them.

However, Eleventh Amendment immunity is not absolute immunity.  *Council 31*, 680 F.3d at 882.  This means that states, their agencies, and their officials acting in their official capacities can be sued in federal court under some limited circumstances.  *Id.*

20

Specifically, there are three exceptions to the defense of sovereign immunity that may subject a state to an action in federal court: (1) where Congress, acting under its constitutional authority, abrogates immunity; (2) where a state consents to being sued in federal court; and (3) under the doctrine articulated by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). *Id.* In this case, the parties dispute the applicability of the third exception, the *Ex parte Young* exception.

The *Ex parte Young* doctrine allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law. *Id.* The doctrine bars actions for damages. *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 1998 WL 156678, at *9 (N.D. Ill. March 31, 1998).

To determine whether the *Ex parte Young* exception applies, a court must "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Council 31*, 680 F.3d at 882 (internal quotations and citations omitted).

Plaintiffs characterize their lawsuit as primarily seeking prospective relief from ongoing federal violations. However, the court has dismissed Minik's and Valdez's claims for prospective relief because of a lack of standing. Therefore, the court need only decide whether Nelson's claims are for prospective relief, and, if so, whether they are permissible under the Eleventh Amendment.

On the other hand, the University Defendants characterize Nelson's claims

against them as primarily pertaining to completed actions for which suit is barred.[6]

### a. *Nelson's Claims for Injunctive Relief*

The appropriate inquiry is whether the Complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as prospective.  The court finds

*Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 905 (C.D. Ill. 2012) to be

instructive.  In that case, the court concluded that *Ex parte Young* permitted a suit to

declare certain State agency regulations unconstitutional and to enjoin State officials

from imposing ongoing discipline, maintaining ongoing disciplinary proceedings, and

enforcing those regulations.  *Chester Bross*, 886 F. Supp. 2d at 905.  The court found that

such relief was "properly characterized as prospective."  *Id.* (quoting *Verizon Md., Inc. v.

Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

In this case, Nelson seeks an injunction prohibiting Defendants from enforcing

allegedly unconstitutional Student Code provisions and no contact directives.  Nelson

seeks to enjoin officials from disciplining him for constitutionally protected activities.

This relief is injunctive and prospective, concerning allegations of ongoing violations of

federal law.  Therefore, these claims are not barred by the Eleventh Amendment.

Nelson's claims for prospective, injunctive relief can therefore proceed against the

individual University Defendants in their official capacities.

---

[6]The University Defendants acknowledge that "[a]llegations of ongoing First Amendment violations [ ] are not barred," but they do not state which of Plaintiffs' claims meet that description.

### b.  All Plaintiffs'  Claims for Declaratory Judgment and Damages

However, Plaintiffs' other claims are barred by the Eleventh Amendment.
Plaintiffs seek a declaration that Defendants violated their rights to freedom of the
press, freedom of speech, and due process of law.  Such relief is not prospective.  *Harden
v. Bd. of Tr. E. Ill. Univ.*, 2013 WL 6248500, at *8 (C.D. Ill. Dec. 2, 2013).  The *Ex parte
Young* exception does not apply to Plaintiffs' claims seeking a declaratory judgment that
their rights were violated in the past.  *Id.*

Plaintiffs' Complaint also seeks damages from all Defendants.  However, the *Ex
parte Young* exception does not apply to claims for damages.  *MCI Telecomm.*, 1998 WL
156678, at *9.  Plaintiffs cannot pursue claims for damages for past, completed
violations.  See *Ameritech Corp. v. McCann*, 297 F.3d 582, 587–88 (7th Cir. 2002).
Thus, the claims for damages against the University and the University Defendants in
their official capacities must be dismissed.[7]

### c.  University Board of Trustees

While the *Ex parte Young* doctrine allows suits against individual state officers in
their official capacities for prospective, injunctive relief, it does not permit those claims
to be brought against the Board of Trustees as an entity.  *Peirick v. Ind. Univ.-Purdue*

---

[7] Plaintiffs' Complaint does not sue any of the individual University Defendants
in their individual capacities.

*Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 696 (7th Cir. 2007).  Plaintiffs may not

proceed against the Board, even on Nelson's claims for prospective injunctive relief.

The Board is therefore dismissed as a party.[8]

### d.  Summary as to Application of Eleventh Amendment

In sum, Nelson can continue to seek injunctive relief from the individual

University Defendants to remedy the continued existence of the allegedly

unconstitutional provisions of the Student Code, the no contact order, and the pending

disciplinary proceedings against him.[9]  However, Plaintiffs' other claims against the

University Defendants, seeking damages or redress for completed, past harms, must be

dismissed as the University Defendants are sued only in their official capacities.  The

Board, as an entity, is dismissed as a party.

### 2.  Whether Complaint Properly States a Claim

The University Defendants also argue that the Complaint must be dismissed

because it fails to state any claim against them upon which relief can be granted.

---

[8] Additionally, Plaintiffs bring their lawsuit pursuant to 42 U.S.C. § 1983 which "only permits an individual to sue a 'person' who deprives that individual of his or her federally-guaranteed rights under color of state law."  *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014). The Board of Trustees cannot be sued under § 1983 because it is not a "person" within the meaning of § 1983.  *Navarro v. UIC Med. Ctr.*, 165 F. Supp. 2d 785, 789 (N.D. Ill. 2001).  Thus, alternatively, the Board of Trustees must be dismissed as a party for this reason as well.

[9] Nelson's claims for prospective injunctive relief against the individual University Defendants in their official capacities may be maintained because they are "persons" when sued for injunctive relief. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71  n.10 (1989).

24

Plaintiffs respond that their Complaint properly alleges that the University

Defendants violated and continue to violate their First Amendment rights to freedom of

the press and freedom of speech as well as their procedural due process rights.  Because

the court has found that only Nelson's claims of ongoing violations, and not any claims

of past violations by any Plaintiff, may proceed against the University Defendants sued

in their official capacities, the court will only address the sufficiency of Nelson's claims

of ongoing violations.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint,

*not* to decide the merits of the case.  See *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th

Cir. 2011).  The complaint need only contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  *Huri v. Office of the Chief Judge of the*

*Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015) (quoting Fed. R. Civ. P.

8(a)(2)).  This requirement is meant to give the defendant fair notice of what the claim is

and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When ruling on a motion to dismiss, a court must accept, as true, all factual allegations

contained within the complaint.  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss for failure to state a claim, the complaint must

overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in

sufficient detail to give the defendant 'fair notice of what the . . . claim is and the

grounds upon which it rests'"; and (2) "its allegations must plausibly suggest that the

defendant has a right to relief, raising that possibility above a 'speculative level.'" *EEOC*

25

*v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at

555).  However, "[n]either conclusory legal statements nor abstract recitations of the

elements of a cause of action add to the notice that Rule 8 demands, so they do not help

a complaint survive a Rule 12(b)(6) motion." *Huri*, 804 F.3d at 832 (citing *Swanson v.

Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)).

The plausibility requirement "does not impose a probability requirement on

plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that

actual proof of those facts is improbable, and that a recovery is very remote and

unlikely.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Twombly*,

550 U.S. at 556).

### a.  First Amendment Retaliation

First, Nelson argues that the University Defendants violated his First

Amendment rights to freedom of the press and freedom of speech. In the appropriate

context, this is referred as a "First Amendment retaliation claim."

Such a claim requires the plaintiff to prove three elements.

> A First Amendment retaliation claim requires that the plaintiff show: "(1) he
> engaged in activity protected by the First Amendment; (2) he suffered a
> deprivation that would likely deter First Amendment activity in the future; and
> (3) the First Amendment activity was 'at least a motivating factor' in the
> Defendants' decision to take the retaliatory action."  *Gomez v. Randle*, 680 F.3d
> 859, 866 (7th Cir. 2012) citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009),
> quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).  Infringement on
> First Amendment rights occurs when future speech is deterred, and when past
> speech is punished.  *Kodish v. Oakbrook Terrace Fire Protection District*, 604 F.3d
> 490, 501 n.9 (7th Cir. 2010).

*Raymond v. Alexander*, 2012 WL 4388328, at *7 (S.D. Ill. Sept. 25, 2012).

Nelson has sufficiently alleged that his First Amendment rights to freedom of the press and freedom of speech are being violated. He alleges that he is a journalist who attended a rally to observe and report on it. He alleges that the University, through its agents, continues to threaten him with discipline because he undertook those journalistic endeavors. Nelson further alleges that the University Defendants "chilled and restricted" his First Amendment rights to freedom of the press and freedom of speech by imposing a no contact directive and by threatening or imposing discipline for alleged violations of that order, causing him to remain fearful of engaging in First Amendment activities. These allegations are sufficient to state a claim.

### b. Void for Vagueness

Relatedly, Nelson contends certain provisions of the Student Code are void for vagueness. The void-for-vagueness doctrine stems from substantive due process concerns, but it can touch on First Amendment concerns as well. *Brown v. Bd. of Edu. of City of Chi.*, 84 F. Supp. 3d 784, 791 (N.D. Ill. 2015). "A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both." *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012).

In the First Amendment context, a statute (or, in this case, a disciplinary rule) is overbroad where it regulates a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 304 (2008). A disciplinary rule is void for vagueness if it "fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is

27

prohibited,' or does not provide 'fair warning' of proscribed conduct." *Brown*, 84 F.
Supp. 3d at 791 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). "In an as-
applied challenge, if the context of the case leads one to guess at whether the rule
applies to the conduct, then the rule is void for vagueness." *Id.*

In this case, Nelson alleges that the University Defendants continue to threaten to
enforce unconstitutionally overbroad regulations in a manner that affords too much
discretion to a decision-maker.  He alleges that these regulations can be and are
enforced in a way that prohibits clearly protected First Amendment activities and that
the regulations leave him guessing as to what conduct is prohibited, further chilling his
First Amendment activities.  These allegations sufficiently state a claim that the
regulations are void for vagueness.

### c.  Procedural Due Process

Nelson also claims that the University Defendants deprived him of procedural
due process in the issuance of the no contact directive.

This claim requires a two-part analysis.

A procedural due process claim requires a two-part analysis: first, the Court
must determine whether Plaintiff was deprived of a constitutionally protected
interest in life, liberty or property; second, it must determine what process is due.
*Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004).
The hallmarks of procedural due process are notice and an opportunity to be
heard.  *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313, 70 S.Ct. 652, 94
L.Ed. 865 (1950).

*Raymond*, 2012 WL 4388328, at *5.

28

Nelson sufficiently alleges a due process violation.  He alleges that the issuance of the no contact directive deprived him of his constitutionally protected First Amendment rights without a pre-deprivation hearing, which he asserts is a requirement.  He also alleges that certain provisions of the Student Code are unconstitutionally vague or do not sufficiently allow for constitutionally required hearings, chilling the exercise of his First Amendment rights.  At this stage, these allegations are sufficient to state a claim.[10]

### 3. <u>Claims Against Defendants in Official or Personal Capacity</u>

The individual University Defendants note that they are only sued in their official capacities. Plaintiffs respond that Killeen, Jones, and the Board of Trustees can be sued in their individual capacities.  Plaintiffs seek to amend their Complaint to do so.

The court notes that Plaintiffs are not suing any of the University Defendants in their individual capacities. Although both sides address and argue issues surrounding the ability of some of the University Defendants to be sued in their individual capacities, these are issues not properly before the court. The court will not render an advisory opinion on these matters.

---

[10] While the court has concluded that Nelson's allegations are, at this early stage, sufficient to state claims of First and Fourteenth Amendment violations, Defendants' arguments may be "revisited, if and as appropriate, at a later stage in the litigation when an appropriate factual record has been assembled and when the applicable procedural rules permit more fulsome and searching analysis." See *Access 4 All, Inc. v. Chi. Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007).

Plaintiffs ask leave to file an amended complaint. This request is granted. Plaintiffs have 21 days from the entry of this order to file an amended complaint.

The court notes that all of the claims of Plaintiffs Minik and Valdez have been dismissed. Should Plaintiffs Minik and Valdez not file an amended complaint within 21 days from the entry of this order, they will be dismissed as plaintiffs.

IT IS THEREFORE ORDERED THAT:

(1)     The University Defendants' Motion to Dismiss Minik's and Valdez's Claims for Prospective Relief Due to Mootness and Lack of Standing (#29) is GRANTED. Minik's and Valdez's claims for prospective relief are dismissed.

(2)     The University Defendants' Motion to Dismiss (#9) is GRANTED in part and DENIED in part. Plaintiffs' claims against the Board of Trustees of the University of Illinois, as an entity, are DISMISSED and the Board is dismissed as a party. Plaintiffs' claims for damages against the individual Board Members, Killeen, Jones, and Die are DISMISSED. Nelson's claims for prospective, injunctive relief against the individual Board Members, Killeen, Jones, and Die may proceed.

(3)     Plaintiffs have 21 days from the entry of this order to file an amended complaint. If the University Defendants wish to fully brief any individual capacity issue presented by any amended complaint, the court will entertain a motion to dismiss if requested to do so after Plaintiffs file an

30

amended complaint.  If Plaintiffs Minik and Valdez do not file an

amended complaint, they will be dismissed as plaintiffs.

(5)     This case is referred to Magistrate Judge Eric I. Long for further

proceedings.

ENTERED this 25th day of February, 2019.

s/Colin S. Bruce
U.S. DISTRICT JUDGE